# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

MICHAEL S. ELKINS,

    Plaintiff,

      v.            Case No.  04-C-85

BELINDA SCHRUBBE, G.W. or G.N., Health Service Worker,
GEORGE KAEMERER, MR. CLEMENTS, DR. LARSON,
J. FUERSTENBERG, D. POLINSKI, T. NEHL,
JOHN DOE, Deputy Sheriff, J. RAY, J. MUENCHOW,
S. TONN, W. SCHULTZ, S. WALLINTIN,
CORRECTIONAL OFFICER LEBOUTON,
CORRECTIONAL OFFICER SPURGEON,
CORRECTIONAL OFFICER ROHKE,
OFFICER WEIGEL, SGT. MCCARTHY, CAPT. TETZLAFF,
N. WEBSTER, CAPTAIN O'DONOVAN, J. MCDONALD,
W. BORNER, SOCIAL WORKER DARRELL ALDRICH,
P. KNICK, D. BUSHWEILER, JANE DOE, Nurse,
G. WALTZ, CAPT. MURANSKI, LT. WRIENGAS,
LT. CLUGTH, SGT. HUELSMAN, SGT. SMITH,
and SGT. KNAPP,

    Defendants.

---

## ORDER GRANTING THE COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. #141), GRANTING THE STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. #144), AND ORDERING THAT THE CLERK OF COURT ENTER JUDGMENT DISMISSING THE PLAINTIFF'S CLAIMS AND THIS ACTION

Both the county defendants and the state defendants have filed motions for summary judgment seeking dismissal of this *pro se* § 1983 civil rights action filed by Michael S. Elkins, a former Wisconsin state prisoner.  The pending motions will be addressed herein.

### I. BACKGROUND OF THE CASE

On April 4, 2004, the court screened the March 3, 2004, amended complaint and granted Elkins' motion for leave to proceed *in forma pauperis* on claims that prison

officials have been deliberately indifferent to his serious medical needs, that they have failed to protect him, that they have retaliated against him, and that he has been denied equal protection. On October 17, 2004, the court granted Elkins' motion to amend the complaint to include charges of retaliation by Waupun Correctional Institution staff after he filed this lawsuit. Elkins also alleged denial of access to the courts and due process claims. The second amended complaint (complaint), which is attached to the September 10, 2004, motion to amend the complaint (Doc. #32), is the operative complaint in this action.

Defendants Dodge County Sheriff T. Nehl and John Doe Deputy Sheriff (county defendants) are represented by Attorneys Marianne Morris Belke and Raymond J. Pollen of Crivello, Carlson & Mentkowski, S.C. The remaining defendants (state defendants) are represented by Assistant Attorney General Corey F. Finkelmeyer of the Wisconsin Department of Justice.

On May 19, 2005, the county defendants filed a motion for summary judgment. This motion is fully briefed and ready for resolution.

On May 24, 2005, the state defendants filed a motion for summary judgment. On June 3, 2005, the court granted Elkins' motion for a temporary restraining order that the state defendants provide him with a copy of the case file. In addition, the court provided Elkins until July 13, 2005, to respond to the defendants' dispositive motions. On August 1, 2005, the court noted that the state defendants had complied with the June 3, 2005, order as Elkins was given the opportunity to review and to possess all of his documents related to this case. Also, the court granted Elkins until August 22, 2005, to respond to the state defendants' motion for summary judgment. No response has been filed and, therefore, the state defendants' motion will be decided unopposed.

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *McNeal v. Macht*, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those facts that, under the applicable substantive law, "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute of "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The burden of showing the needlessness of trial – (1) the absence of a genuine issue of material fact; and (2) an entitlement to judgment as a matter of law – is upon the movant. However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Anderson*, 477 U.S. at 267; *see also Celotex Corp.*, 477 U.S. at 324 ("proper" summary judgment motion may be "opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings . . ."). "Rule 56(c) *mandates* the entry of summary judgment, . . . upon motion, against a party who fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322 (emphasis added).

In evaluating a motion for summary judgment, courts draw all inferences in a light most favorable to the nonmoving party. *Johnson v. Pelker*, 891 F.2d 136, 138 (7th Cir. 1989). "However, we are not required to draw every conceivable inference from the record

– only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991) (citation omitted).

### III.   COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**A.    FACTS**

The county defendants are mentioned in the following two paragraphs of the complaint:

> After the Plaintiff was attacked in his sleep, he asked that outside criminal charges be filed. The Warden refused to even contact the Dodge County Sheriff to have a report made and forwarded to the District Attorney. Therefore the Plaintiff wrote the Sheriff himself and which time John Doe Deputy Sheriff sent a form letter back [sic], stating they would not look into it nor make a report because they didn't feel an investigation was needed, since it was a W.C.I. issue.

> The Plaintiff then wrote several letters which he sent to family and friends to mail certified to the Sheriff, asking that a report at least be made and allow the D.A. to decide if charges should be brought, Sheriff/Defendant Nehl has refused to respond to any correspondence.

(Compl. ¶¶ 34-35.)

**B.    ANALYSIS**

The county defendants contend that 1) Elkins' failure to identify the "John Doe" defendant requires dismissal of his claims as a matter of law; 2) Elkins has not alleged that the sheriff personally deprived Elkins of any constitutional rights; and 3) qualified immunity bars the individual capacity claims.

**1.    Failure to Identify John Doe Deputy Sheriff**

Elkins asserts that he identified the John Doe Deputy Sheriff as Brian Drumm timely and requested that service be effected on Drumm. The record reflects that Elkins

notified the court on January 18, 2005, and February 16, 2005, that the John Doe Deputy Sheriff was Brian Drumm. However, service was not completed upon Drumm.

Federal Rule of Civil Procedure 4(m) provides in part:

> (m) Time Limit for Service. If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

When a complaint is amended to add new parties, the plaintiff is given 120 days from the date of amendment to serve the new defendants. *Del Raine v. Carlson*, 153 F.R.D. 622, 628 (S.D. Ill. 1994), *rev'd in part on other grounds*, 77 F.3d 484 (7th Cir. 1996).

The Marshals Service is required to serve process on behalf of individuals proceeding *in forma pauperis*, *see* Fed. R. Civ. P. 4(c)(2), and an inmate proceeding *in forma pauperis* (as Elkins is) may rely on the Marshals to serve process. *Sellers v. United States*, 902 F.2d 598, 602 (7th Cir. 1990). The inmate need furnish "no more than the information necessary to identify the defendant." *Id.* The Marshal's failure to complete service, once furnished with the necessary information, is automatically "good cause" requiring an extension of time under Rule 4(m). *Id.*; *Graham v. Satkoski*, 51 F.3d 710, 713 (7th Cir. 1995); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1426 (7th Cir. 1996) (remanding inmate's § 1983 action for evaluation of whether inmate, proceeding *in forma pauperis*, provided insufficient information to allow marshals to serve process).

In this case, the court granted Elkins' motion to file his second amended complaint on October 17, 2004. Elkins' January 18, 2005, and February 16, 2005, notifications to the court of the John Doe Deputy's identity were timely and provided sufficient

information to allow the marshals to effect service. Hence, Elkins is not at fault for the lack of service of process upon Deputy Drumm and the John Doe Deputy Sheriff will not be dismissed pursuant to Rule 4(m). However, as explained below, service upon Drumm would be futile because Elkins fails to state a claim against the county defendants.

### 2. Failure to State a Claim

Elkins' allegations against the county defendants are set forth in the amended complaint under the caption "Access to the Courts." However, it appears that Elkins is suing these defendants for failure to investigate an alleged incident that occurred while he was incarcerated at Waupun Correctional Institution. Absent is any indication that Elkins was injured as a result of these defendants' failure to investigate.

To establish liability under § 1983, Elkins must show that a county policy, practice, or custom with respect to investigations and discipline proximately caused his constitutional deprivation. *Calusinksi v. Kruger*, 24 F.3d 931, 936 (7th Cir. 1994). Elkins argues:

> Within the Defendants very own compliance of the Plaintiff's motion for Discovery, the Defendants submitted a copy of the Plaintiff's June 11, 2004 Letter to the Dodge County sheriff, regarding the June 2, 2004 assault. On June 17, 2004 Defendant Drumm submitted a "Form Letter" response on the Dodge County Sheriff's Letter-Head, which displays Sheriff Nehls very name.

> The Defendant cannot rest on an "ostrich defense" of simply putting his head in the sand to avoid knowledge of misconduct and illegal acts within Dodge County community[.]

(Pl.'s Resp. to Def. Drumm and Nehl's Mot. for Summ. J. at 2.)

Regardless, Elkins has not presented evidence regarding a practice, custom or policy with respect to investigation of complaints. *See Baskin v. City of Des Plaines*, 138 F.3d 701, 705 (7th Cir. 1998) ("[a] plaintiff cannot establish a § 1983 claim against a municipality

by simply alleging that the municipality failed to investigate an incident or to take punitive action against the alleged wrongdoer"). Moreover, Elkins presents no evidence that the county defendants' alleged failure to investigate the assault caused him constitutional injury. Absent such evidence, Elkins' § 1983 claim against the county defendants cannot stand. *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Accordingly, their motion for summary judgment will be granted.

## IV. STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**A. FACTS: Background, the Inmate Complaint Review System, and the Defendants' Exhibits[1]**

### 1. Background

At all times relevant to this action, Elkins was a Wisconsin state prisoner. Recently, he was confined at the Waupun Correctional Institution (WCI), a maximum-security institution located in Waupun, Wisconsin. (Defendants' Proposed Findings of Fact [DPFOF] ¶¶ 1-2.) However, he is in federal custody at this time.

Defendants John Ray and Sandra J. Hautamaki are employed by the Wisconsin Department of Corrections (DOC) as Corrections Complaint Examiners (CCE). (DPFOF ¶¶ 3-4.) In Ray and Hautamaki's capacity, they receive and investigate appeals of adverse decisions on inmate complaints appealed to the Secretary of the DOC. (DPFOF ¶ 5.)

Defendants James Muenchow and Linda Alsum O'Donovan are Institution Complaint Examiners (ICE) at WCI. (DPFOF ¶ 6.) In Muenchow's and Alsum O'Donovan's capacity as ICEs, they help administer the Inmate Complaint Review System (ICRS). (DPFOF ¶ 7.) As ICEs, Muenchow and Alsum O'Donovan have access to institution staff, inmates, and any institution or department records required when investigating a complaint.

---

[1]The facts are taken from the Defendants' Proposed Findings of Fact.

(DPFOF ¶ 8.)  Alsum O'Donovan has been employed at WCI since August 2004, and has been handling patient and inmate complaints since October 1999.  (DPFOF ¶ 9.)  Muenchow has been employed at WCI since October 3, 1994, and has been an ICE since August 16, 1998.  (DPFOF ¶ 11.)

Stan R. Tonn was an ICE.  (DPFOF ¶ 13.)  In Tonn's former capacity as an ICE, he helped administer the ICRS.  (DPFOF ¶ 14.)  As an ICE, Tonn also had access to institution staff, inmates, and any institution or department records required when investigating a complaint.  (DPFOF ¶ 15.)  Tonn was employed at WCI as an ICE from September 8, 2002, to August 7, 2004.  (DPFOF ¶ 16.)

### 2.    The Inmate Complaint Review System

To exhaust an inmate's administrative remedies under the ICRS, an inmate must file an offender complaint, receive a decision on the offender complaint, have an adverse decision reviewed, and be advised of the decision.  (DPFOF ¶ 18.)  Upon receipt of an Offender Complaint form, the ICE may investigate the complaint, return the complaint forms that do not meet the filing requirement of the Wis. Admin. Code § DOC 310, and recommend a decision to the appropriate reviewing authority.  (DPFOF ¶ 19.)  The ICE may reject a complaint for the following reasons: 1) the inmate submitted the complaint solely for the purpose of harassing or causing malicious injury to one or more of the department's employees, agents, independent contractors, or any other person; 2) the inmate does not raise a significant issue regarding rules, living conditions, or staff actions affecting institution environment; 3) the inmate does not allege sufficient facts upon which redress may be made; 4) the inmate submitted the complaint beyond fourteen calendar days from the date of the occurrence giving rise to the complaint and provides no good cause for the ICE to extend the time limits; 5) the issue raised in the complaint does not personally affect the inmate; 6) the

issue is moot; 7) the issue has already been addressed through the inmate's prior use of the ICRS; and 8) the issue raised is not within the scope of the ICRS as defined in Wis. Admin. Code § DOC 310.08.  (DPFOF ¶ 20.)

An inmate may appeal a rejected complaint within ten calendar days only to the appropriate reviewing authority who reviews the basis for rejecting the complaint.  (DPFOF ¶ 21.)  The reviewing authority's decision is final.  (DPFOF ¶ 22.)  If an ICE determines that the procedure under Wis. Admin. Code § DOC 310 would subject the inmate to substantial risk of personal injury or cause other serious and irreparable harm, the ICE shall refer the complaint to the appropriate reviewing authority.  (DPFOF ¶ 23.)  The ICE shall either reject the complaint or send a recommendation to the appropriate reviewing authority within twenty working days from the date of acknowledgment.  (DPFOF ¶ 24.)  A complainant dissatisfied with a decision may, within ten calendar days after the decision, appeal that decision by filing a written request for review on forms supplied for that purpose.  (DPFOF ¶ 25.)

The institution shall provide a supply of appeal forms and make the forms accessible to inmates.  (DPFOF ¶ 26.)  Upon good cause, a CCE may accept for review an appeal filed later than ten calendar days after receipt of the decision.  (DPFOF ¶ 27.)  A CCE may not review a complaint rejected under Wis. Admin. Code § DOC 310.13(3).  (DPFOF ¶28.)  A CCE shall, within five working days after receiving an appeal, issue a written receipt of the appeal to the inmate.  (DPFOF ¶ 29.)  A CCE shall recommend a decision to the Secretary within thirty-five working days of receipt of the appeal.  (DPFOF ¶ 30.)  The "appropriate reviewing authority" means the warden, bureau director, administrator or designee who is authorized to review and decide an inmate complaint.  (DPFOF ¶ 31.)

As ICEs at WCI, Alsum O'Donovan and Muenchow make recommendations to the reviewing authority at the institution level.  (DPFOF ¶ 32.)  Alsum O'Donovan and

Muenchow do not have authority to correct a violation or instruct that a certain act be done. (DPFOF ¶ 33.) As an ICE at WCI, Tonn made recommendations to the reviewing authority at the institution level. (DPFOF ¶ 34.) He did not have authority to correct a violation or instruct that a certain act be done. (DPFOF ¶ 35.)

As CCEs, Ray and Hautamaki only make recommendations regarding the outcome of an appeal of an inmate complaint. (DPFOF ¶ 36.) They too, do not have authority to correct a violation or instruct that a certain act be done. (DPFOF ¶ 37.)

### 3. The Defendants' Affidavits and Exhibits

The defendants submitted six affidavits and seventy-three exhibits in support of their motion for summary judgment. The affiants are ICEs James Muenchow and Linda Alsum O'Donovan; former ICE Stanley Tonn; and CCEs John Ray and Sandra Hautamaki. As ICEs, Muenchow, Alsum O'Donovan, and Tonn made their affidavits "on the basis of [their] personal knowledge and a review of the regularly conducted business records in the possession of the Waupun Correctional Institution." (Muenchow Aff. ¶ 1; Alsum O'Donovan Aff. ¶ 1; Tonn Aff. ¶ 1.) CCEs Hautamaki and Ray made their affidavits "on the basis of [their] personal knowledge and a review of the regularly conducted business records of [their] office, of which [they are] custodian[s]." (Hautamaki Aff. ¶ 1; Ray Aff. ¶ 1.)

The defendants' affidavits and exhibits document the plaintiff's use of the ICRS as it relates to the claims involved in this lawsuit. The exhibits "comprise true and exact copies of the documents related to the matter or matters which are the subject of *Elkins v. McCaughtry, et al.*, Case Number 04-C-0085[.]" (Muenchow Aff. ¶ 6.) The exhibits are numbered 1001 through 1073 and each exhibit corresponds to a separate offender complaint filed by the plaintiff. Each exhibit contains multiple pages and follows the inmate complaint through the administrative steps set forth by the ICRS.

Some of the documents described above are cited to by the defendants in their proposed findings of fact to report "what happened" with respect to the plaintiff's various claims. In that regard, some of the proposed facts are not based on first-hand knowledge and therefore, constitute hearsay. *See* Fed. R. Evid. 801(c). For example, proposed findings of fact 38 through 45 relate to offender complaint WCI-2003-37682 in which the plaintiff alleged that the Health Services Unit was refusing to refill his medications. (Muenchow Aff. ¶ 16, Ex. 1001 at 00001-00002.) ICE Muenchow contacted defendant Health Services Manager (HSM) Schrubbe to investigate this offender complaint. (*Id.* at 00003.) In his ICE Report, Muenchow summarized the facts as follows:

> The Rx for Propoxy expired on 10/19/03. The Rx was not renewed in a timely fashion. The Rx was renewed and issued on 11/13/03. HSM Schrubbe is aware of the situation and took appropriate action to correct the error in the script. With respect to the Betasept, HSU is not aware of a request from inmate Elkins for Betasept. HSM Schrubbe is sending the Betasept to inmate Elkins per notification through the filing of this complaint.

*Id.*

The Federal Rules of Evidence contain several hearsay exceptions, including the following business records exception:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> ***
>
> (6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnosis, made at or near the time by or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of the business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of the information or the method or circumstances of preparation indicate lack of trustworthiness.

-11-

> The term 'business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Fed. R. Evid. 803(6). In *Wheeler v. Sims*, 951 F.2d 796 (7th Cir. 1992), the court applied a five-part test for admissibility under the exception. A document is admissible in evidence if (1) the acts recorded therein were reported by a person with knowledge; (2) it was the regular practice of the prison as a regularly conducted business activity to record such acts; (3) the acts were recorded at or near the time of their occurrence; (4) the documents are properly authenticated; and (5) "unless the source of information or the method or circumstances or preparation indicate lack of trustworthiness." *Id.* at 802 (quoting Fed. R. Evid. 803(6)).

The documents in this case satisfy the first four parts of the test. However, there is question over the fifth part since affiants Muenchow, Tonn, and Ray are also defendants in this case. *See Bracey v. Herringa*, 466 F.2d 702, 705 (7th Cir. 1972) (documents held inadmissible were "prison records which included the self-serving statements of the defendants themselves as well as statements of other prison guards who were subject to possible Civil Rights Act liability"). But, the documents at issue here do not contain self-serving statements as much as they report what happened.

It is not clear whether the business records exception applies here since the issue has not been briefed. Regardless, the defendants' affidavits purport to comply with Federal Rule of Civil Procedure 56(e). Moreover, the plaintiff has not filed any response opposing the defendants' motion for summary judgment. *See* Civil L.R. 56(e) (E.D. Wis.) ("In deciding a motion for summary judgment, the Court must conclude that there is no genuine material issue as to any proposed finding of fact to which no response is set out.")

B.    FACTS:  CLAIMS IDENTIFIED IN SCREENING ORDER[2]

    1.    **Issue A – Medication**

Elkins submitted an offender complaint form, dated November 13, 2003, alleging that the Health Services Unit (HSU) was refusing to refill his medications.  (DPFOF  ¶ 38.) This submission was accepted by the ICE on November 14, 2003, and assigned the number WCI-2003-37682.  (DPFOF ¶ 39.)  The prescription for Propoxy expired on October 19, 2003. (DPFOF ¶ 40.)  This prescription was not renewed in a timely fashion.  *Id.*  The prescription was renewed and issued on November 13, 2003.  *Id.*

Health Services Manager Belinda Schrubbe was aware of the situation and took appropriate action to correct the error with the prescription.  (DPFOF ¶ 41.)  HSU is not aware of a request from Elkins for Betasept.  (DPFOF ¶ 42.)  HSM Schrubbe sent  Betasept to Elkins per notification through the filing of this complaint.  *Id.*  A copy of Offender Complaint WCI-2003-27682 was sent to Schrubbe for continued follow up purposes.  (DPFOF ¶ 43.)

---

[2]This section from the defendants' Proposed Findings of Fact is headed "Complaint" and contains seven claims or "issues."  The claims from this section were identified in the April 12, 2004, Screening Order. However, the Screening Order is based on the March 3, 2004, amended complaint.  As noted above, the September 10, 2004, second amended complaint is the operative complaint in this action.  The second amended complaint, which consists of a document titled "Amended Complaint" and an Amended Memorandum of Law, for the most part alleges "additional facts and defendants" concerning retaliatory conduct since this lawsuit was filed.  (Motion to Amend Complaint, Sept. 10, 2004, at 1.)  It does not incorporate all of the allegations from the March 3, 2004, amended complaint.

The second section of the defendants' Proposed Findings of Fact is headed "Offender Complaints Identified in Plaintiff's Proposed Findings of Fact and Conclusions of Law." This section, containing many "issues," addresses the remainder of Elkins' claims.

If a motion to file an amended complaint is granted, the amended complaint supersedes the prior complaint.  *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056 (7th Cir. 1998).  In *Duda*, the court emphasized that in such instances, the "prior pleading is in effect withdrawn as to all matters not restated in the amended pleading."  *Id.*  (citations omitted).

Elkins is an experienced and frequent litigator.  Despite this, it is possible that he did not know that his second amended complaint was not incorporating his previous complaint.  Therefore, the court will address all of the claims set forth in the Defendants' Proposed Findings of Fact, which include claims from both the amended complaint and the second amended complaint.

Muenchow affirmed with modification Offender Complaint WCI-2003-37682. (DPFOF ¶ 44.) The record reflects that the reviewing authority, DOC BHS Nursing Coordinator Cynthia Thorpe accepted Muenchow's recommendation and affirmed with modification Offender Complaint WCI-2003-27682 on November 20, 2003. (DPFOF ¶ 45.)

### 2. Issue B – Single Cell

Elkins submitted an offender complaint form, dated December 21, 2003, stating that he has a medical restriction not to be housed with a smoker and also is red tagged for a single cell. (DPFOF ¶ 49.) However, on December 12, 2003, he was moved from his single cell (NCH-D-40) to a double cell (NWCH-I-37) with a smoker. *Id.* On December 23, 2003, Tonn sent correspondence to Elkins indicating that, before this complaint would be accepted, he was directed to resolve the issue by contacting Belinda Schrubbe. (DPFOF ¶ 50.) Elkins was directed to submit an information request form to this staff member including specific information. (DPFOF ¶ 51.) If the issue was not resolved, Elkins was directed to submit the original complaint and the staff member's response to show their answer when/if resubmitting his complaint. (DPFOF ¶ 52.) Elkins responded to Tonn's December 23, 2003, correspondence by stating, "Try reading my complaint, I clearly typed in English, that I wrote H.S.U. no less than six (6) times & only received one (1) response, that means you need to do your job & file this complaint." (DPFOF ¶ 53.)

Elkins resubmitted his complaint on December 29, 2003. (DPFOF ¶ 54.) This submission was accepted by the ICE Office on December 29, 2003, and assigned the number WCI-2004-400. (DPFOF ¶ 55.) Elkins submitted an offender complaint form, dated January 4, 2004, complaining about a single cell medical restriction and his restriction not to be near a smoker. (DPFOF ¶ 56.)

Additionally, on December 16, 2003, Elkins stated that somebody from HSU with the initials "G.W." told him he was not eligible. (DPFOF ¶ 57.) This offender complaint was not assigned a number, but was addressed in the ICE Report for Offender Complaint WCI-2004-400. (DPFOF ¶ 58.) Elkins contended that he wrote HSU many times, yet failed to offer any copies as evidence. (DPFOF ¶ 59.) Moreover, he claimed he should be celled with a nonsmoker because he does not smoke. (DPFOF ¶ 60.) WCI does its best to cell nonsmokers with nonsmokers. (DPFOF ¶ 61.) However, that is not always possible due to the number of smokers versus nonsmokers. (DPFOF ¶ 62.) Elkins' comments and concerns were noted. (DPFOF ¶ 63.) Nevertheless, he was reminded that he was responsible for his own behavior and actions. (DPFOF ¶ 64.)

Tonn discovered that as of January 19, 2004, Elkins was moved to I-24 and celled with a nonsmoker as he requested. (DPFOF ¶ 65.) However, an inmate's housing location is an administrative decision. (DPFOF ¶ 66.) There are several elements taken into consideration when deciding where an inmate is to be housed. (DPFOF ¶ 67.) If Elkins has future issues requiring this or other administrative decisions, he should write to the Security Director, M. Clements, with this request. (DPFOF ¶ 68.)

Elkins' cell met all requirements mandated by the Wis. Admin. Code § DOC 309 and the air exchange system has not malfunctioned. (DPFOF ¶ 69.) The institution must have the capability to manage its cells and inmates in the best interest of the institution and population as a whole. (DPFOF ¶ 70.)

HSM Schrubbe was contacted and it was revealed that Elkins was seen by the nurse on January 26, 2004, and the single cell issue was discussed briefly, as well as other medical issues, and an appointment would be made to follow up with the nurse practitioner, M. Gorske. (DPFOF ¶ 71.) HSM Schrubbe stated that there was nothing in Elkins' medical

chart that warranted a single cell placement at that time. (DPFOF ¶ 72.) It was also revealed to Elkins that according to Dr. G. Ankarlo, Clinical Services Supervisor, there was no clinical need for Elkins to be housed in a single cell. (DPFOF ¶ 73.) HSM Schrubbe added that HSU routinely answers requests and at times checks the appropriate boxes and returns them back to the inmates. (DPFOF ¶ 74.)

Nurse G. Waltz was the nurse that corresponded with Elkins initially as to his request for a single cell stating that he was not eligible. (DPFOF ¶ 75.) No violations occurred. (DPFOF ¶ 76.) If Elkins' situation would warrant a cell reassignment, this is an administrative issue that is not within the purview of the ICRS. (DPFOF ¶ 77.) Based on this information, Tonn recommended that this complaint be dismissed, that a follow up appointment be made with the nurse practitioner to evaluate Elkins' needs, and that a copy of this complaint go to HSM Schrubbe, Dr. G. Ankarlo, and Security Director M. Clements. (DPFOF ¶ 78.)

The record reflects that the reviewing authority, DOC BHS Nursing Coordinator Cynthia Thorpe, accepted Tonn's recommendation and dismissed with modification Offender Complaint WCI-2004-400 on February 13, 2004. (DPFOF ¶ 79.) Thorpe noted that Elkins was then housed with a nonsmoker and that his request to be housed with a nonsmoker was reasonable. (DPFOF ¶ 80.) According to the record, WCI indicated that every effort is made to accommodate this type of request since it is well documented that there are negative health effects from second hand smoking. (DPFOF ¶ 81.) Also, the record indicates that the HSM should instruct all staff to sign their name and title when signing and communicating with inmates. (DPFOF ¶ 82.)

Elkins appealed Offender Complaint WCI-2004-400 to the CCE on February 6, 2004. (DPFOF ¶ 83.) On February 9, 2004, Offender Complaint WCI-2004-400 was returned

to Elkins because the appeal was premature pursuant to Wis. Admin. Code § DOC 310.12(3). (DPFOF ¶ 84; Ray Aff. at ¶ 12.) Elkins replied that our office was unable to count working days. (DPFOF ¶ 85; Ray Aff. at ¶ 12.) In agreement with the report of the ICE, and as Ray noted the complaint had been reviewed and decided by the Bureau of Health Services regional nursing coordinator, Ray recommended that this complaint be dismissed. (DPFOF ¶ 86.) Ray also cautioned Elkins that future submissions with disrespectful or inappropriate language would be cause for rejection of the complaint and potential disciplinary action. (DPFOF ¶ 87.) Lastly, Ray advised Elkins that thirty working days from December 29, 2003, was February 12, 2004, and that the assessment of the first appeal as premature on February 9, 2004, was accurate. (DPFOF ¶ 88.) The Deputy Secretary of the DOC accepted Ray's recommendation and dismissed Offender Complaint WCI-2004-400 on February 28, 2004. (DPFOF ¶ 89.)

3. **Issue C – Property**

Elkins submitted an offender complaint form, dated September 3, 2003, regarding various property items deemed contraband or missing since his transfer from Racine Correctional Institution. (DPFOF ¶ 90.) On September 5, 2003, Tonn sent correspondence to Elkins indicating that, before this complaint was accepted, he was directed to resolve the issue by contacting Sergeant McCarthy in Property pursuant to Wis. Admin. Code § DOC 310.09(4). (DPFOF ¶ 91.) Elkins was advised to submit an information request form to this staff member including specific information. (DPFOF ¶ 92.) If the issue was not resolved, Elkins was told to submit the original complaint and the staff member's response to show their answer when/if resubmitting his complaint. (DPFOF ¶ 93.)

Elkins responded to Tonn's September 5, 2003, correspondence, indicating that he had written several requests to Sergeant McCarthy, but had thrown them out and he had

"never been required to submit them with I.C. before." (DPFOF ¶ 94.) The September 3, 2003, complaint was accepted by the ICE Office on September 8, 2003, and assigned the number WCI-2003-30333. (DPFOF ¶ 95.)

Elkins also filed two additional offender complaints, dated September 3, 2003, and September 9, 2003, making the same allegations as Offender Complaint WCI-2003-30333. (DPFOF ¶ 96.) These two additional offender complaints were not assigned numbers, but are addressed in the ICE Report for Offender Complaint WCI-2003-30333. (DPFOF ¶ 97.)

Elkins' television failed to come on immediately after it was plugged in by the ICE. (DPFOF ¶ 98.) A short in the electrical cord was discovered. (DPFOF ¶ 99.) Also, the jack for the earplug/headphones did not work correctly, indicating a bad connection. (DPFOF ¶ 100.) The television was deemed contraband. (DPFOF ¶ 101.) Moreover, Elkins' television was more than seven years old. (DPFOF ¶ 103.) Elkins received a new RCA color television on September 23, 2003. (DPFOF ¶ 106.)

WCI rules and the Information Handbook bar transferring inmates from moving opened cosmetic-type materials, felt pens or markers. (DPFOF ¶ 107.) Medical products belonging to transferring inmates must be sealed or clear. (DPFOF ¶ 108.) The handbook also states that items that may be purchased in the canteen may not be obtained from other sources. (DPFOF ¶ 109.) Security issues concern all products and dozens of products contain contraband. (DPFOF ¶ 110.) Due to concern regarding the health and welfare of staff and inmates the ICRS may not second guess whether certain items may be allowed. (DPFOF ¶ 111.)

Elkins' issues regarding his sunglasses and hat go back to May 2003, and were addressed in complaint RCI-2003-16000, which was dismissed and considered moot.

(DPFOF ¶ 112.)  Normally, those items would have been sent out, returned to the vendor, or destroyed.  (DPFOF ¶ 113.)  Further, an inmate's property is subject to inventory at any time.  (DPFOF ¶ 114.)  When an inventory is conducted, and it is determined that the inmate has exceeded the total allowable property limit, as stated in DOC 309 IMP 1, or the individual item limit, staff may bring the inmate's property in compliance with allowable limits.  (DPFOF ¶ 115.)  At that time, items that are seized as contraband may be brought into compliance at the discretion of staff, a decision that is final.  (DPFOF ¶ 116.)

        An incident report was written at Green Bay Correctional Institution after another inmate took Elkins' book.  Elkins' name was scratched off the book and Elkins could not provide a copy of any documentation showing ownership.  (DPFOF ¶¶ 117-118.)  The Green Bay Correctional Institution was contacted, and, according to the ICE, G. Ripley, the Security PA at Green Bay Correctional Institution was unable to find any evidence of this incident report or any evidence that Elkins possessed this law book.  *Id.*

        In accordance with DOC 309 IMP 1, it is the inmate's responsibility to keep his property within established guidelines.  (DPFOF ¶ 119.)  Further, it is the responsibility of the institution, as noted in Wis. Admin. Code § DOC 309.20, to monitor and control an inmate's property.  (DPFOF ¶ 120.)  When any inmate does not adhere to personal property limits and regulations, staff may bring that inmate's property into compliance.  (DPFOF ¶ 121.)  Moreover, there is no obligation for staff to allow inmates to review, swap, or choose which items will be deemed contraband.  (DPFOF ¶ 122.)

        With regard to Elkins' claim of September 2, 2003, that two of his T-shirts were missing when he returned to WCI, it was determined that he left with three T-shirts and returned with three T-shirts.  (DPFOF ¶ 123.)  Tonn made no recommendation regarding that determination.  (DPFOF ¶ 124.)  As for Elkins' complaint regarding a missing new sweatshirt,

it appeared that he had two in Racine Correctional Institution and one upon arrival at WCI. (DPFOF ¶ 125.) Elkins produced a receipt, dated December 20, 2002, signed by Elkins on January 20, 2003, showing one sweatshirt was purchased for $11.50. (DPFOF ¶ 126.) Because Elkins stated that the missing sweatshirt was only a month old, Tonn recommended reimbursement of $8.00 after applying the DOC Depreciation Schedule to the documented sweatshirt, even though he was unable to substantiate which sweatshirt was missing. (DPFOF ¶ 127.) A copy of this complaint was sent to Business Administrator L. Oestreich for reimbursement purposes. (DPFOF ¶ 128.)

As a consequence, Tonn recommended that Offender Complaint WCI-2003-30333 be dismissed with modification. (DPFOF ¶ 129.) On October 22, 2003, the reviewing authority, former WCI Warden Gary McCaughtry accepted Tonn's recommendation and dismissed Offender Complaint WCI-2003-30333. (DPFOF ¶ 132.)

Elkins appealed Warden McCaughtry's dismissal with modification of Offender Complaint WCI-2003-30333 to the CCE on October 28, 2003. (DPFOF ¶ 133.) Ray agreed with the report of the ICE, and recommended that Offender Complaint WCI-2003-30333 be dismissed on November 3, 2003. (DPFOF ¶ 134.) The Deputy Secretary of the DOC accepted Ray's recommendation and dismissed Offender Complaint WCI-2003-30333 on November 28, 2003. (DPFOF ¶ 135.)

Elkins submitted an offender complaint form, dated November 20, 2003, alleging that the designation of several pieces of property as contraband was upheld. (DPFOF ¶ 136.) However, the contraband was destroyed before Elkins could send out his offender complaint. (DPFOF ¶ 137.) This submission was accepted by the ICE on November 21, 2003, and assigned the number WCI-2003-38472. (DPFOF ¶ 138.) The incident, as described by Elkins, stems from a previous complaint and subsequent appeal of Offender Complaint WCI-

-20-

2003-30333, where the subject law book discussed was not proven to belong to Elkins and there was no incident report found at Green Bay Correctional Institution verifying that the book belonged to Elkins. (DPFOF ¶ 139.) However, Elkins seeks reimbursement for two law books even though he failed to prove in an earlier complaint and the appeal process that one of the subject books was his. (DPFOF ¶ 140.)

In Offender Complaint WCI-2003-30333, Elkins stated that he had no funds and yet asked that his property be mailed out. (DPFOF ¶ 141.) Sergeant McCarthy was asked about this incident, and there was no evidence that Elkins submitted a DOC-643 form on October 24, 2003, before his contraband property was destroyed on November 11, 2003. (DPFOF ¶ 142.)

The Property Room staff and Sergeant McCarthy keep records and notes on forms regarding when and how contraband is handled and destroyed as well as who the property is to be released to if information is supplied. (DPFOF ¶ 143.) The forms note when there is not money in the specific inmate's account to cover items being sent out by mail. (DPFOF ¶ 144.) For example, the items listed on Elkins' DOC-237A form that were sent to the visiting room on October 28, 2003, were returned to the property room on December 1, 2003, then destroyed on December 2, 2003, because there was no money in Elkins' account. (DPFOF ¶ 145.) Sergeant McCarthy stated that the property was destroyed on November 11, 2003, because staff had not been given proper notification within the seven days from October 22, 2003. (DPFOF ¶ 146.)

The Property Room does not need permission or written consent to destroy contraband after the original deadline has passed and inmates have failed to notify the Property Room where the contraband should be mailed. (DPFOF ¶ 147.) At that point, disposal options are in the hands of the institution. *Id.* Consequently, Tonn recommended

Offender Complaint WCI-2003-38472 be dismissed because staff actions were in accordance with the Wis. Admin. Code § DOC 309 and DOC 309 IMP 1. (DPFOF ¶ 148.) The correctional records reflect that on December 16, 2003, the reviewing authority, McCaughtry, accepted Tonn's recommendation and dismissed Offender Complaint WCI-2003-38472. (DPFOF ¶ 149.)

Elkins appealed the reviewing authority's dismissal of Offender Complaint WCI-2003-38472 to the CCE on January 2, 2004. (DPFOF ¶ 150.) Wis. Admin. Code. § 310.13(1) requires appeals to be filed within ten days of the complaint decision. (DPFOF ¶ 151.) This complaint was decided on December 16, 2003, and printed on December 17, 2003. (DPFOF ¶ 152.) Elkins' appeal was not received until January 2, 2004, and offered no good cause for the late appeal. (*Id.*) Thus, it was recommended that Elkins' appeal be dismissed as untimely. *(Id.)* The Deputy Secretary of the DOC accepted Hautamaki's recommendation and dismissed Offender Complaint WCI-2003-38472 on February 1, 2004. (DPFOF ¶ 153.)

Elkins submitted an offender complaint form, dated December 13, 2003, stating that his Warning Card shows that he was given a warning in September 9, 2003 for having a loud radio/TV. (DPFOF ¶ 154.) On December 19, 2003, Tonn sent correspondence to Elkins indicating that, before this complaint was accepted, he should resolve the issue by contacting Captain Muraski pursuant to Wis. Admin. Code § DOC 310.09(4). (DPFOF ¶ 156.) Elkins was directed to submit an information request form to this staff member including specific information. *Id.* If the issue was not resolved, Elkins was directed to submit the original complaint and the staff member's response to show their answer when/if resubmitting his complaint. (DPFOF ¶ 157.) Elkins wrote at the bottom of a December 19, 2003, memo by Tonn that he had written to Muraski as Tonn requested and that Muraski had failed to respond. (DPFOF ¶ 158, Ex. 1005, p 00002.) Elkins added that "Therefore, I have a right to

have <u>all</u> my complaints filed.  I am preparing federal lawsuit & you will be the first defendant, since you continually violate my right on filing complaints!!!" (DPFOF ¶ 159.)  This submission was accepted by the ICE Office on December 29, 2003, and assigned the number WCI-2004-439.  (DPFOF ¶ 160.)

Written warnings are not part of the formally defined disciplinary system as found in the Wis. Admin. Code § DOC 303.  (DPFOF ¶ 161.)  Entries on Warning Cards are, therefore, not subject to review.  (DPFOF ¶ 162.)  If such entries are used to provide information to support charges on a conduct report, the inmate charged has the opportunity to challenge that information at a disciplinary hearing.  (DPFOF ¶ 163.)  The outcomes of such challenges are not able to be reviewed through the ICRS.  (DPFOF ¶ 164.)  Further, a written warning is only documentation of a rule and Elkins has nothing to worry about, as long as he abides by the rules in the future.  (DPFOF ¶ 165.)

Tonn recommended that Offender Complaint WCI-2004-439 be dismissed.  (DPFOF ¶ 168.)  The record reflects that the reviewing authority, McCaughtry, accepted Tonn's recommendation and dismissed Offender Complaint WCI-2004-439 on January 30, 2004.  (DPFOF ¶ 169.)

Elkins appealed WCI Warden McCaughtry's dismissal of Offender Complaint WCI-2004-439 to the CCE on February 6, 2004.  (DPFOF ¶ 170.)  Ray was advised that the warning in question was removed from Elkins' Warning Card.  (DPFOF ¶ 171.)  Therefore, the complaint was moot and dismissal of Offender Complaint WCI-2004-439 was recommended on appeal.  (DPFOF ¶ 172.)  The Deputy Secretary of the DOC accepted Ray's recommendation and dismissed Offender Complaint WCI-2004-439 on February 14, 2004.  (DPFOF ¶ 173.)

### 4.    Issue D – Property

Elkins submitted an offender complaint form, dated January 11, 2004, claiming that WCI returned his order for headphones and boxers to J.L. Marcus for no reason and that he would like to receive his order.  (DPFOF ¶ 174.)  On January 20, 2004, Muenchow sent correspondence to Elkins indicating that, before his offender complaint would be accepted, he should attempt to resolve the issue by submitting an information request form to Lieutenant Wierenga pursuant to Wis. Admin. Code § DOC 310.09(4).  (DPFOF ¶ 175.)  If the issue was not resolved, Elkins was directed to submit the original complaint and the staff member's response to show their answer when/if resubmitting his complaint. (DPFOF ¶ 177.) Elkins responded to Muenchow's correspondence on January 27, 2004, indicating that he had written to the lieutenant on January 21, 2004, but had not received a response.  (DPFOF ¶ 178.)  Therefore, he asked to have his complaint filed.  *Id.*

This submission was accepted by the ICE Office on January 28, 2004, and assigned the number WCI-2004-3574.  (DPFOF ¶ 179.)  Sergeant McCarthy reported that, after contacting J.L. Marcus staff, the package sent to Central Receiving for Elkins was delivered inappropriately as Elkins' name was misspelled and, as a result, the package was not accepted for delivery.  (DPFOF ¶ 180.)  J.L. Marcus issued credit for the mistake it made. (DPFOF ¶ 181.)  In addition, Sergeant McCarthy advised that the items that were included in the prior order were received as of February 3, 2004.  (DPFOF ¶ 182.)  Considering that the error was on the part of J.L. Marcus, and that the items arrived at WCI, Muenchow found the issue of the complaint moot and the complaint was rejected on that basis.  (DPFOF ¶ 183.)

5. **Issue E – Refusal to File & Assign a Filing Number to all Properly Submitted Complaints**

Elkins submitted an offender complaint form, dated January 4, 2004, complaining that the Inmate Complaints Department was not accepting/acknowledging his complaint. (DPFOF ¶ 184.) On January 12, 2004, ICE Muenchow sent correspondence to Elkins indicating that, before his complaint would be accepted, he should attempt to resolve the issue by contacting Michael McNeil, Institution Administration, pursuant to Wis. Admin. Code § DOC 310.09(4). (DPFOF ¶ 185.) Elkins responded to Muenchow's correspondence indicating that he had written to "Clements, McCaughtry & Frank, [stating] nobody responds, so I want an I.C.I. number & I plan to file a federal lawsuit against all I.C.E.'s for constitutional rights violations." (DPFOF ¶ 188.) This submission was accepted by the ICE Office on January 14, 2004, and assigned the number WCI-2004-2605. (DPFOF ¶ 189.)

At times, complaints are returned to an inmate, stating that the inmate must try to resolve the issue by contacting a certain staff member. (DPFOF ¶ 190.) The inmate is required to submit the original complaint and the staff member's response before the complaint is accepted, in an effort to resolve the issue. (DPFOF ¶ 191.) If Elkins would include a copy of that attempt, it could speed up the complaint process, and in some cases make the complaint completely unnecessary. (DPFOF ¶ 192.) Elkins either disregards by stating that it makes no sense to him to write the staff member or simply states he did write, but offers no evidence that he did actually try to resolve the issue at hand by including a copy as requested. (DPFOF ¶ 193.)

The Wis. Admin. Code § DOC 310.09(4) states, "Prior to accepting the complaint, the ICE may direct the inmate to attempt to resolve the issue." (DPFOF ¶ 194.) If a complaint is returned, it is officially not accepted until the inmate sends back his response

after trying to resolve the issue as directed.  (DPFOF ¶ 195.)  In the cases cited by Elkins, it was clear he received an acknowledgment regarding each of his listed complaints within five working days.  (DPFOF ¶ 196.)

Once a complaint is accepted, the inmate receives a receipt and acknowledgment within the time limits in accordance with Wis. Admin. Code § DOC 310. (DPFOF ¶ 198.)  If Elkins did not believe that his complaint was investigated properly and/or was dissatisfied with the response he received, he had the option of appealing that decision to the CCE within ten calendar days.  (DPFOF ¶ 199.)  Filing another complaint at the institution level addressing the same issue is not appropriate.  (DPFOF ¶ 200.)

Rejected complaints can only be appealed within ten calendar days to the appropriate reviewing authority pursuant to Wis. Admin. Code § DOC 310.11(6).  (DPFOF ¶ 201.)  Tonn recommended that Offender Complaint WCI-2004-2605 be dismissed inasmuch as the issues mentioned in this complaint had been addressed by Elkins previously.  (DPFOF ¶ 203.)  The reviewing authority, former WCI Deputy Warden Cathy Jess, accepted Tonn's recommendation and dismissed Offender Complaint WCI-2004-2605 on February 18, 2004. (DPFOF ¶ 204.)

Elkins appealed the reviewing authority's dismissal of Offender Complaint WCI-2004-2605 to the CCE on March 2, 2004.  (DPFOF ¶ 205.)  In agreement with and based on the report of the ICE, Ray recommended that Offender Complaint WCI-2004-2605 be dismissed on March 2, 2004.  (DPFOF ¶ 206.)  No violation of Wis. Admin. Code § 310 was noted.  (DPFOF ¶ 207.)  The Deputy Secretary of the DOC accepted Ray's recommendation and dismissed Offender Complaint WCI-2004-2605 on March 27, 2005.  (DPFOF ¶ 208.)

### 6. Issue F – Denial of Special Placement Need

Elkins submitted an offender complaint form, dated September 9, 2003, indicating that he wished to be transferred to Dodge Correctional Institution because he felt threatened by an inmate housed at WCI. (DPFOF ¶ 209.) On September 12, 2003, Muenchow sent correspondence to Elkins indicating that, before his complaint would be accepted, he should attempt to resolve the issue by contacting Program Review Committee (PRC) Coordinator Dick Polinske pursuant to Wis Admin. Code § DOC 310.09(4). (DPFOF ¶ 210.) This submission was accepted by the ICE Office on September 15, 2003, and assigned the number WCI-2003-31289. (DPFOF ¶ 220.)

Elkins was reviewed by the PRC on July 28, 2003. (DPFOF ¶ 221.) As the result of that review, he was classified as maximum custody and subsequently transferred to WCI on August 28, 2003. *Id.* Elkins opposed his transfer to WCI, a component of the PRC decision, and cited reasons why he should not be housed here. (DPFOF ¶ 222.) The decision of the PRC is not within the scope of the ICRS, and the complaint was rejected on that basis. (DPFOF ¶ 223.) Muenchow noted correspondence from Security Director Clements which addressed Elkins' safety issues, a separate issue that would not be addressed in this complaint. (DPFOF ¶ 224.) Therefore, Muenchow rejected Offender Complaint WCI-2003-31289 on September 22, 2003. (DPFOF ¶ 225.)

Elkins submitted a Request for Review of Rejected Complaint dated September 24, 2003. (DPFOF ¶ 226.) On September 29, 2003, the reviewing authority, former WCI Warden Gary McCaughtry, noted that Offender Complaint WCI-2003-31289 was appropriately rejected by the ICE in accordance with Wis. Admin. Code § DOC 310.11(5). (DPFOF ¶ 227.)

Elkins submitted an offender complaint form, dated October 27, 2003, asserting that he was being threatened by another inmate and could not obtain a special placement need (SPN). (DPFOF ¶ 228.) This submission was accepted by the ICE Office on October 28, 2003, and assigned the number WCI-2003-35870. (DPFOF ¶ 229.) Security Director Clements, in a September 18, 2003, correspondence, addressed this issue with Elkins. (DPFOF ¶ 230.) Clements directed Elkins to relay his concerns to Captain O'Donovan. (DPFOF ¶ 230.) Whether or not an SPN placement is made is determined by Clements, based on investigatory findings. (DPFOF ¶ 231.) The ICRS has no authority pertaining to SPN placement decisions. (DPFOF ¶ 232.) Accordingly, Muenchow recommended that Offender Complaint WCI-2003-35870 be dismissed. (DPFOF ¶ 235.) The reviewing authority, Jess, accepted Muenchow's recommendation and dismissed Offender Complaint WCI-2003-35870 on November 17, 2003. (DPFOF ¶ 236.)

Elkins appealed the reviewing authority's dismissal of Offender Complaint WCI-2003-35870 to the CCE on December 2003. (DPFOF ¶ 237.) Wis. Admin. Code § DOC 310.13(1) requires appeals to be filed within ten days of the complaint decision. (DPFOF ¶ 238.) Noting the complaint was decided and printed on November 17, 2003, yet the appeal was not received until December 11, 2003, and further noting the complainant offered no good cause for the late appeal, it was recommended that the appeal be dismissed as untimely. (DPFOF ¶ 239.) The Deputy Secretary of the DOC accepted Hautamaki's recommendation and dismissed Offender Complaint WCI-2003-35870 on December 20, 2003. (DPFOF ¶ 240.)

**7.      Issue G – Red Tag & Voluntary Confinement**

Elkins submitted an undated offender complaint form claiming that the security director was not answering correspondence. (DPFOF ¶ 241.) This submission was accepted

by the ICE Office on January 12, 2004, and assigned the number WCI-2004-2171. (DPFOF ¶ 242.) Pursuant to the Wis. Admin. Code § DOC 310.11(5)(f), it was recommended that this complaint be considered moot. (DPFOF ¶ 244.)

The Wis. Admin. Code § DOC 310.03(13) defines "moot" as "the issue or complaint is one which seeks to determine an abstract question which does not arise upon existing facts or rights, or where there would be no practical effect to any remedy because the issue or complaint is already resolved." (DPFOF ¶ 243.) Elkins had this issue addressed in Offender Complaints WCI-2004-400, WCI-2003-37682, WCI-2003-35870, and WCI-2003-31289. (DPFOF ¶ 245.) Furthermore, regarding Security Director Clements ignoring Elkins' request, the Interview/Information Request dated September 18, 2003, and correspondence to/from Security Director M. Clements on January 21, 2004, documents consideration of this issue. (DPFOF ¶ 246.) Accordingly, Tonn rejected Offender Complaint WCI-2004-2171 as moot. (DPFOF ¶ 247.)

Elkins submitted a Request for Review of Rejected Complaint dated February 15, 2004. (DPFOF ¶ 248.) The reviewing authority, Jess, noted that Offender Complaint WCI-2004-2171 was appropriately rejected by the ICE in accordance with Wis. Admin. Code § DOC 310.11(5) on February 18, 2004. (DPFOF ¶ 249.)

## C.    FACTS: OFFENDER COMPLAINTS IDENTIFIED IN PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW[3]

### 1.    ISSUE 11

Elkins submitted an offender complaint form, dated January 26, 2004, contending that he requested to be placed in voluntary confinement but that his requests were

---

[3]Elkins submitted proposed findings of fact in support of his February 17, 2005, motion for summary judgment, which the court denied on April 20, 2005.

ignored. (DPFOF ¶ 250.) Elkins maintained that according to page ten of WCI's Problem Solving Guide, he should be granted voluntary confinement simply for asking for it. (DPFOF ¶ 251.) This submission was accepted by the ICE Office on January 26, 2004, and assigned the number WCI-2004-3561. (DPFOF ¶ 252.) The Wis. Admin. Code § DOC 306.05 states that the security director may place an inmate in protective confinement, however, it does not require that Elkins be placed in this status just because he requested to be placed there. (DPFOF ¶ 253.) Security Director M. Clements wrote Elkins and explained that no further action would be taken on that request. (DPFOF ¶ 254.) Also, it was noted that on page ten of the Problem Solving Guide, it does not authorize protective confinement for anyone who wants it. (DPFOF ¶ 255.) Accordingly, Tonn recommended that Offender Complaint WCI-2004-3561 be dismissed. (DPFOF ¶ 256.) The reviewing authority, McCaughtry, accepted Tonn's recommendation and dismissed Offender Complaint WCI-2004-3561 on March 4, 2004. (DPFOF ¶ 257.)

Elkins appealed the reviewing authority's dismissal of Offender Complaint WCI-2004-3561 to the CCE on March 10, 2004. (DPFOF ¶ 258.) In agreement with the ICE Report, and as Hautamaki noted, no violation of Wis. Admin. Code § DOC 306.05, Hautamaki recommended that this complaint be dismissed. (DPFOF ¶ 259.) The Deputy Secretary of the DOC accepted Hautamaki's recommendation and dismissed Offender Complaint WCI-2004-3561 on March 27, 2004. (DPFOF ¶ 260.)

## 2. ISSUE 12

Elkins submitted an offender complaint form, dated February 11, 2004, claiming that Dr. Larson did not adequately address his health concerns. (DPFOF ¶ 261.) This submission was accepted by the ICE Office on February 12, 2004, and assigned the number WCI-2004-5248. (DPFOF ¶ 262.) The issues raised in this complaint had been addressed

previously through prior use of the ICRS. (DPFOF ¶ 263.) It was further revealed after talking to HSM Schrubbe that Elkins' medical appointment was terminated because he refused to cooperate with the doctor, refused to answer further questions, and became argumentative. (DPFOF ¶ 264.) Hence, Tonn rejected Offender Complaint WCI-2004-5248. (DPFOF ¶ 265.) Elkins submitted a Request for Review of Rejected Complaint dated March 22, 2004. (DPFOF ¶ 266.) The reviewing authority, Jess, noted that Offender Complaint WCI-2004-5248 was appropriately rejected by the ICE in accordance with Wis. Admin. Code § DOC 310.11(5) on March 26, 2004. (DPFOF ¶ 267.)

3.    **ISSUE 13**

Elkins submitted an offender complaint form, dated February 22, 2004, asserting that he wished to review his medical chart, but was told that one volume was lost. (DPFOF ¶ 268.) This submission was accepted by the ICE Office on February 23, 2004, and assigned the number WCI-2004-6685. (DPFOF ¶ 269.) HSM Schrubbe was contacted regarding this issue and records were reviewed. (DPFOF ¶ 270.) Although one file was missing, Elkins' assertions regarding the reasons as to why it was missing were not established. (DPFOF ¶ 271.) The HSM notified Central Medical Records, but the missing file was not located. (DPFOF ¶ 272.) The HSU at WCI has communicated and continues to communicate with Central Medical Records in an attempt to locate the missing file. *Id.* Tonn recommended that Offender Complaint WCI-2004-6685 be affirmed with modification that the search for these records continue, that a copy of Elkins' complaint go to HSM Schrubbe and Deputy Warden Jess, and that it be reviewed by the Bureau of Health Services. (DPFOF ¶ 273.) The reviewing authority, Thorpe, accepted Tonn's recommendation and affirmed with modification Offender Complaint WCI-2004-6685 on March 19, 2004. (DPFOF ¶ 274.)

###### 4.   ISSUE 14

Elkins submitted an offender complaint form, dated March 2, 2004, protesting that G. Kaemmerer would not address his red-tag with him. (DPFOF ¶ 275.) This submission was accepted by the ICE Office on March 3, 2004, and assigned the number WCI-2004-7686. (DPFOF ¶ 276.) Elkins was notified by Dr. Ankarlo on January 28, 2004, that he did not qualify for single cell status. (DPFOF ¶ 277.) Moreover, consultations had already been made with Crisis Intervention Worker Kaemmerer. (DPFOF ¶ 278.) Further, Elkins was not entitled to make assessments regarding the PSU staff's job performance. (DPFOF ¶¶ 280-81.) Elkins was advised that future submissions to this office that contained abusive language pointed at staff would not be accepted. (DPFOF ¶ 282.) Muenchow recommended that Offender Complaint WCI-2004-7686 be dismissed, and the reviewing authority, Jess, accepted the recommendation and dismissed Offender Complaint WCI-2004-7686 on March 26, 2004. (DPFOF ¶¶ 283-284.)

Elkins appealed the reviewing authority's dismissal of Offender Complaint WCI-2004-7686 to the CCE on May 17, 2004. (DPFOF ¶ 285.) The Wis. Admin. Code § DOC 310.13 requires appeals to be filed within ten days of a complaint decision. (DPFOF ¶ 286.) Noting this complaint was decided on March 26, 2004, and that Elkins' appeal was not received until May 17, 2004, Ray recommended that Offender Complaint WCI-2004-7686 be dismissed as untimely. (DPFOF ¶ 288.) The Deputy Secretary of the DOC accepted Ray's recommendation and dismissed Offender Complaint WCI-2004-7686 on May 20, 2004. (DPFOF ¶ 289.)

###### 5.   ISSUE 15

Elkins submitted an offender complaint form, dated February 27, 2004, stating that Nevin Webster continually denied his right for legal document copies. (DPFOF ¶ 290.)

On March 8, 2004, Angelia Kroll, ICE Program Assistant, sent correspondence to Elkins indicating that his complaint materials were received on March 1, 2004, and were being returned to him for failure to meet the filing requirements as stated in Wis. Admin. Code § DOC 310, and that he needed to attempt to resolve the issue by contacting Education Director Mark Meicher before the complaint would be accepted. (DPFOF ¶ 291.) Elkins responded to Kroll by indicating that he had contacted Webster, both verbally and in writing, and that Webster failed to follow Elkins' rights under the "farce that his 'policy' supersedes the U.S. Constitutional of 'due process.'" (DPFOF ¶ 292.) Elkins continued stating, "Therefore, I've filed the attached complaint, thereby allowing me to seek federal action against Webster & several other W.C.I. employees. You have violated the 5-day notice rule, whether you chose to file it (assign a number) or tell me to contact the party involved, you still have a duty to do it in 5 days." (DPFOF ¶ 293.) This submission was accepted by the ICE Office on March 10, 2004, and assigned the number WCI-2004-8179. (DPFOF ¶ 294.)

In accordance with WCI Policy and Procedure 775.00, legal loan photocopies must include the applicable case number and jurisdiction on the Disbursement Request. (DPFOF ¶ 295.) Further, if requested photocopies are to be used as exhibits, attachments, etc., the document in which they are referenced must accompany the request. (DPFOF ¶ 296.) The policy was created in accordance with DOC 309 IMP 29. (DPFOF ¶ 298.)

The department provides an opportunity for Elkins to pursue civil claims through the legal loan provisions in Wis. Admin. Code § DOC 309.51. (DPFOF ¶ 301.) Elkins exhausted his annual legal loan limit of $200 for 2004. Muenchow recommended that Offender Complaint WCI-2004-8179 be dismissed and copies of the complaint to be sent to Mr. Melcher, Mr. Webster, Ms. Wallintin and Ms. Knick (now Ms. Fuller) for informational purposes. (DPFOF ¶ 305.) The reviewing authority, McCaughtry, accepted Muenchow's

recommendation and dismissed Offender Complaint WCI-2004-8179 on April 1, 2004. (DPFOF ¶ 306.)

Elkins appealed the reviewing authority's dismissal of Offender Complaint WCI-2004-8179 to the CCE on May 17, 2004. (DPFOF ¶ 307.) Wis. Admin. Code § DOC 310.13(1) requires appeals to be filed within ten days of a complaint decision. (DPFOF ¶ 308.) This complaint was decided on April 1, 2004, and Elkins' appeal was not received until May 17, 2004. (DPFOF ¶ 309.) Therefore, Ray recommended that Offender Complaint WCI-2004-8179 be dismissed as untimely when filed on May 17, 2004. (DPFOF ¶ 310.) The Deputy Secretary of the DOC accepted Ray's recommendation and dismissed Offender Complaint WCI-2004-8179 on May 20, 2004. (DPFOF ¶ 311.)

### 6.    ISSUE 16

Elkins submitted an offender complaint form, dated March 14, 2004, complaining that his legal mail was being opened before it got to him. (DPFOF ¶ 312.) This submission was accepted by the ICE Office on March 15, 2004, and assigned the number WCI-2004-9386. (DPFOF ¶ 313.)

Mail room staff opens and inspects mail in accordance with Wis. Admin. Code § DOC 309.04. (DPFOF ¶ 314.) The only information staff has to determine if mail is exempt is the information on the envelope. (DPFOF ¶ 315.) The Wis. Admin. Code § DOC 309.04(3) states in part: "This subsection applies to mail clearly identifiable as being from one or more of the following parties: (g) the attorney general or assistant attorney general." (DPFOF ¶ 316.) If the envelope provided in this case by Elkins was the one that arrived opened, it did qualify under the categories dictated by this chapter of the administrative code. (DPFOF ¶ 317.) Staff is expected to open mail in accordance with established policies and procedures and not open mail from the attorney general. (DPFOF ¶ 318.) The envelope was not

stamped in red-exempt correspondence, and there was no evidence that Elkins was harmed in any way as a result. (DPFOF ¶ 319.) Tonn recommended that this complaint be affirmed with the modification that copies of this complaint be forwarded to the Security Director, M. Clement and Property Room Sergeant, T. McCarthy and Officer H. Van Buren. (DPFOF ¶ 320.) The reviewing authority, McCaughtry, accepted Tonn's recommendation and affirmed with modification Offender Complaint WCI-2004-9386 on May 5, 2004. (DPFOF ¶ 321.)

Elkins appealed the reviewing authority's dismissal of Offender Complaint WCI-2004-9386 to the CCE. (DPFOF ¶ 322.) Noting that the complaint was affirmed and the error had been acknowledged with copies to the appropriate supervisory authority and staff involved for corrective action, no further action was undertaken by the CCE. (DPFOF ¶ 323.) Thereafter, Hautamaki recommended that this complaint be dismissed on appeal. (DPFOF ¶ 324.) The Deputy Secretary of the DOC accepted Hautamaki's recommendation and dismissed Offender Complaint WCI-2004-9386 on May 14, 2004. (DPFOF ¶ 325.)

Elkins submitted an offender complaint form, dated April 1, 2004, contending that Sergeant Mittelsteadt wrote him a note which stated that he could not use legal envelopes to send mail to the warden. (DPFOF ¶ 326.) This submission was accepted by the ICE Office on April 2, 2004, and assigned the number WCI-2004-12069. (DPFOF ¶ 327.) Elkins was correct when he stated that he should have been allowed to send his legal loan envelope to the warden to get approval of postage, since he had exceeded the yearly $200.00 limit and may not have had any other means to get the correspondence to the warden for approval. (DPFOF ¶ 328.) There was no documentation other than the post-it note, signed by Mittelsteadt, clearly showing what took place or what was on the envelope, however, mail identified clearly as listed in the Wis. Admin. Code § DOC 309.04(3), should not be opened. (DPFOF ¶ 329.) Elkins and staff were reminded that Wis. Admin. Code § DOC 309.04

governs inmate mail and should be followed. (DPFOF ¶ 330.) Accordingly, Tonn recommended that this complaint be dismissed with the modification that a copy of this complaint be forwarded to the Security Director, M. Clement, for follow up as needed to ensure that legal mail be routed according to the aforementioned rules. (DPFOF ¶ 334.) The reviewing authority, McCaughtry, accepted Tonn's recommendation and dismissed with modification Offender Complaint WCI-2004-12069 on May 18, 2004. (DPFOF ¶ 335.)

Elkins appealed the reviewing authority's dismissal of Offender Complaint WCI-2004-12069 to the CCE on June 7, 2004. (DPFOF ¶ 336.) The Wis. Admin. Code § DOC 310.13(1) requires appeals to be filed within ten days of a complaint decision. (DPFOF ¶ 337.) This complaint was decided on May 18, 2004, and Elkins' appeal was not received until June 7, 2004. Hence, Ray recommended that Offender Complaint WCI-2004-12069 be dismissed as untimely on June 8, 2004. (DPFOF ¶¶ 338-339.) The Deputy Secretary of the DOC accepted Ray's recommendation and dismissed Offender Complaint WCI-2004-12069 on June 10, 2004. (DPFOF ¶ 340.)

Elkins submitted an offender complaint form, dated May 21, 2004, claiming that Sergeant Hilbert was not authorized to open his legal mail. (DPFOF ¶ 341.) Elkins further alleged Hilbert lied about opening the mail and that the legal mail was being held as contraband. (DPFOF ¶ 342.) This submission was accepted by the ICE Office on May 24, 2004, and assigned the number WCI-2004-16811. (DPFOF ¶ 343.)

Once a conduct report is issued, the disciplinary process is invoked. (DPFOF ¶ 344.) Complaints which argue substantive issues regarding the conduct report are outside the scope of the ICRS, as noted under Wis. Admin. Code § DOC 310. (DPFOF ¶ 345.) After receiving the disciplinary paperwork, an appeal may be sent directly to the warden. (DPFOF ¶ 346.) The ICE may only address procedurally based allegations of error contained in

complaints filed after the warden's decision is made on appeal, following Wis. Admin. Code § DOC 310.08(3). (DPFOF ¶ 347.) The warden had not yet rendered a decision on appeal of the conduct report. (DPFOF ¶ 348.) Consequently, this complaint fell out of the scope of the ICRS. (DPFOF ¶ 349.) Consequently, Tonn rejected Offender Complaint WCI-2004-16811. *Id.*

Elkins submitted a Request for Review of Rejected Complaint dated June 15, 2004. (DPFOF ¶ 350.) The reviewing authority, McCaughtry, noted that Offender Complaint WCI-2004-16811 was appropriately rejected by the ICE in accordance with Wis. Admin. Code § DOC 310.11(5) on June 25, 2004. (DPFOF ¶ 351.)

Elkins submitted an offender complaint form, dated June 21, 2004, claiming that he received legal mail that was opened. (DPFOF ¶ 352.) This submission was accepted by the ICE Office on June 28, 2004, and assigned the number WCI-2004-21088. (DPFOF ¶ 353.) The sender of the legal mail, "Dodge County Sheriff's Dept.," was not a party listed under the Wis. Admin. Code § DOC 309.04(3)a-j. (DPFOF ¶¶ 354-55.) It appeared that the letter was opened in accordance with Wis. Admin. Code § DOC 309. (DPFOF ¶ 356.) Hence, Muenchow recommended that Offender Complaint WCI-2004-21088 be dismissed. (DPFOF ¶ 357.) The reviewing authority, McCaughtry, accepted Muenchow's recommendation and dismissed Offender Complaint WCI-2004-21088 on July 30, 2004. (DPFOF ¶ 358.)

Elkins appealed the reviewing authority's dismissal of Offender Complaint WCI-2004-21088 to the CCE on September 20, 2004. (DPFOF ¶ 359.) The Wis. Admin. Code § DOC 310.1(1) requires appeals to be filed within ten days of a complaint decision. (DPFOF ¶ 360.) This complaint was decided on July 30, 2004, was printed on August 3, 2004, Elkins' appeal was not received until September 20, 2004, and Elkins offered no good cause for the

late appeal, (DPFOF ¶ 361.)  Hautamaki recommended that Offender Complaint WCI-2004-21088 be dismissed as untimely on September 20, 2004.  *Id.*  The Deputy Secretary of the DOC accepted Hautamaki's recommendation and dismissed Offender Complaint WCI-2004-21088 on September 20, 2004.  (DPFOF ¶ 362.)

### 7.    ISSUE 17

Elkins submitted an offender complaint form, dated March 24, 2004, arguing that McCaughtry would not respond to his correspondence regarding a legal loan extension. (DPFOF ¶ 363.)  This submission was accepted by the ICE Office on March 25, 2004, and assigned the number WCI-2004-9920.  (DPFOF ¶ 364.)  The Wis. Admin. Code § DOC 309.51, states that once an inmate has reached the yearly limit, as Elkins had, he must supply proof of need from the court.  (DPFOF ¶ 367.)  Elkins alleged that McCaughtry would not respond to requests regarding a legal loan extension for two court cases.  (DPFOF ¶ 368.) McCaughtry responded regarding the two cases cited, and three additional cases as well. (DPFOF ¶ 369.)  Pursuant to Wis. Admin. Code § DOC 310.11(5)(f), this issue was moot. (DPFOF ¶ 371.)  As a result, Tonn rejected Offender Complaint WCI-2004-9920.  *Id.*

Elkins submitted a Request for Review of Rejected Complaint dated May 1, 2004.  (DPFOF ¶ 372.)  The reviewing authority, McCaughtry, noted that Offender Complaint WCI-2004-9920 was appropriately rejected by the ICE in accordance with Wis. Admin. Code § DOC 310.11(5) on May 4, 2004.  (DPFOF ¶ 373.)

### 8.    ISSUE 20

Elkins submitted two offender complaint forms, both dated April 5, 2004, charging that his controlled medications were being mishandled.  (DPFOF ¶ 374.)  These complaints were accepted by the ICE Office on April 6, 2004, and assigned the number WCI-2004-12089.  (DPFOF ¶ 375.)  Schrubbe was contacted and it was revealed that Dr. Larson

-38-

had tried to interview Elkins and that on February 11, 2004, and April 12, 2004, Elkins became resistant to the interviews, threatening, and/or would not cooperate. (DPFOF ¶ 376.) Schrubbe stated that on April 2, 2004, it was reported that Elkins was not taking his Gabapentin as directed. (DPFOF ¶ 377.) Elkins was also seen by the registered nurse on April 8, 2004. (DPFOF ¶ 378.) Dr. Larson is currently Elkins' physician and needed full cooperation to make an accurate assessment. (DPFOF ¶ 379.) Moreover, medication must be handled properly for accounting purposes. *Id.* Schrubbe stated that both prescriptions, Gabapentin and Propoxy, had run out and that the doctor was hesitant to refill them without an exam or reassessment. (DPFOF ¶ 380.) Therefore, Tonn recommended that this complaint be dismissed with the modification that Elkins make an attempt to cooperate with HSU staff so that they could determine what medication Elkins should be on and that Elkins take his prescriptions as directed. (DPFOF ¶ 381.) Copies of this complaint were to be sent to Schrubbe and Security Director M. Clements for informational purposes. (DPFOF ¶ 382.) The reviewing authority, Thorpe, accepted Tonn's recommendation and dismissed with modification Offender Complaint WCI-2004-12089 on April 30, 2004. (DPFOF ¶ 383.)

Elkins appealed the reviewing authority's dismissal of Offender Complaint WCI-2004-12089 to the CCE on June 7, 2004. (DPFOF ¶ 384.) The Wis. Admin. Code § DOC 310.13(1) requires appeals to be filed within ten days of a complaint decision. (DPFOF ¶ 385.) This complaint was decided on April 30, 2004, printed May 4, 2004, and received on June 7, 2004. Therefore, Ray recommended that Offender Complaint WCI-2004-12089 be dismissed as untimely on June 8, 2004. (DPFOF ¶ 387.) The Deputy Secretary of the DOC accepted Ray's recommendation and dismissed Offender Complaint WCI-2004-12089 on June 10, 2004. (DPFOF ¶ 388.)

9.    **ISSUE 22**

Elkins submitted an offender complaint form, dated April 7, 2004, stating that in a previous complaint (WCI-2004-400), Thorpe directed Schrubbe to tell her staff to sign their full names and titles when corresponding with inmates and that this was still not being done. (DPFOF ¶ 389.) This submission was accepted by the ICE Office on April 12, 2004, and assigned the number WCI-2004-12119. (DPFOF ¶ 390.) Schrubbe was contacted and it was learned that the physician involved is Dr. Charles E. Larson whose number is 28821-010. (DPFOF ¶ 391.)

Tonn recommended that this complaint be dismissed with the modification. (DPFOF ¶ 406.) The reviewing authority, McCaughtry, accepted Tonn's recommendation and dismissed with modification Offender Complaint WCI-2004-12119 on May 25, 2004. (DPFOF ¶ 407.)

Elkins appealed the reviewing authority's dismissal of Offender Complaint WCI-2004-12119 to the CCE on June 7, 2004. (DPFOF ¶ 408.) On June 8, 2004, Ray recommended that Offender Complaint WCI-2004-12119 be dismissed with the modification that all staff be reminded to legibly sign their full name when responding to interview requests. (DPFOF ¶ 409.) The Deputy Secretary of the DOC accepted Ray's recommendation and dismissed Offender Complaint WCI-2004-12119 on June 15, 2004. (DPFOF ¶ 410.)

10.    **ISSUE 23**

Elkins submitted an offender complaint form, dated April 16, 2004, charging that his issues were not being responded to in a timely fashion. (DPFOF ¶ 411.) This submission was accepted by the ICE Office on April 19, 2004, and assigned the number WCI-2004-12924. (DPFOF ¶ 412.) Elkins submitted that it took too long to get a complaint acknowledged. (DPFOF ¶ 413.) He used WCI-2004-12069 as an example. *Id.* He dated

his complaint April 1 and the Complaint Department acknowledged it as received by stamping it 4/02/04. *Id.* On WCI-2004-12089, Elkins dated his complaint April 5 and it was acknowledged April 6, again stamped accordingly. (DPFOF ¶ 414.) WCI-2004-12119 was also stamped as received on April 12. (DPFOF ¶ 415.) There are times when a backlog of complaints may prevent the receipts from being delivered within a day or two. (DPFOF ¶ 416.)

Elkins retained the option to file appeals to the CCE (with the exception of complaints that are rejected) whenever he received an adverse decision on a complaint. (DPFOF ¶ 418.) Further, Elkins' complaints were not ignored. (DPFOF ¶ 419.)

The Wis. Admin. Code § DOC 310.03(16) defines "significant issue" as a serious or important defect or omission. (DPFOF ¶ 421.) The Wis. Admin. Code § DOC 310.11(5)(b) states the inmate does not raise a significant issue regarding rules, living conditions, or staff actions affecting institution environment. (DPFOF ¶ 422.) Tonn did not identify the issue presented by Elkins to be significant or to contain sufficient meaning to necessitate intervention by the ICRS or the warden's office. (DPFOF ¶ 423.) Therefore, no further action would be taken through the ICRS. (DPFOF ¶ 424.) Accordingly, Tonn rejected Offender Complaint WCI-2004-12924. (DPFOF ¶ 425.)

Elkins submitted a Request for Review of Rejected Complaint dated May 27, 2004. (DPFOF ¶ 426.) The reviewing authority, McCaughtry, noted that Offender Complaint WCI-2004-12924 was appropriately rejected by the ICE in accordance with Wis. Admin. Code § DOC 310.11(5) on June 1, 2004. (DPFOF ¶ 427.)

**11.    ISSUE 24**

Elkins submitted an offender complaint, dated April 22, 2004, stating that Dr. Larson discontinued all his pain medications and there was prior documentation in his chart

showing why he needed the medications. (DPFOF ¶ 428.) This submission was accepted by the ICE Office on April 23, 2004, and assigned the number WCI-2004-13102. (DPFOF ¶ 429.) Schrubbe was contacted regarding this complaint and it was determined that Dr. Larson's, as Elkins' primary physician, could determine what course of treatment to pursue. (DPFOF ¶ 430.)

Tonn was not in the position to either question or judge the merits, opinions, or treatments offered by the trained professional HSU staff. (DPFOF ¶ 432.) Through the filing of this complaint, the issues had also been reviewed by others in the BHS. (DPFOF ¶ 434.) Under these circumstances, Tonn had no reason to believe the care and treatment offered was not adequate to the demonstrated need. (DPFOF ¶ 435.) Accordingly, Tonn recommended that this complaint be dismissed. (DPFOF ¶ 436.) The reviewing authority, Thorpe, accepted Tonn's recommendation and dismissed Offender Complaint WCI-2004-13102 on May 28, 2004. (DPFOF ¶ 438.)

Elkins appealed the reviewing authority's dismissal of Offender Complaint WCI-2004-13102 to the CCE on June 14, 2004. (DPFOF ¶ 439.) In agreement with the report of the ICE, and as Ray noted that the complaint had been reviewed and decided by the BHS regional nursing coordinator, Ray recommended that Offender Complaint WCI-2004-13102 be dismissed on June 14, 2004. (DPFOF ¶ 440.) The Deputy Secretary of the DOC accepted Ray's recommendation and dismissed Offender Complaint WCI-2004-13102. (DPFOF ¶ 441.)

### 12. ISSUE 25

Elkins submitted an offender complaint form, dated April 28, 2004, contending that he felt he was being denied a job in metal stamping because he was seeking legal action against the DOC. (DPFOF ¶ 442.) This submission was accepted by the ICE Office on April

30, 2004, and assigned the number WCI-2004-13793.  (DPFOF ¶ 443.)  Elkins did not state

what date the conversation he referenced took place, where he was denied employment, or

present related written correspondence.  (DPFOF ¶ 444.)  He gave a two-week period of time,

but did not state when he was to be hired by a civilian.  (DPFOF ¶ 445.)  Elkins did not give

any evidence justifying his accusation of retaliation.  (DPFOF ¶ 446.)  In accordance with Wis.

Admin. Code § DOC 310, it was recommended that this complaint be rejected pursuant to

Wis. Admin. Code § DOC 310.11(5)(c) because Elkins did not allege sufficient facts upon

which redress may be made.  (DPFOF ¶ 447.)  Tonn searched his records concerning

appeals of inmate complaints and found that Elkins did not file an appeal to the appropriate

reviewing authority concerning Offender Complaint WCI-2004-13793 alleging that he felt that

he was being denied a job in metal stamping because he was seeking legal action against

the DOC.  (DPFOF ¶ 448.)

###     13.    ISSUE 26

Elkins submitted an offender complaint form, dated April 20, 2004, alleging that

there was a misuse of his account funds, and that he had written Sue Wallintin and the

warden, but nothing had been done.  (DPFOF ¶ 449.)  On April 28, 2004, Angelia Kroll, ICE

Program Assistant, sent correspondence to Elkins indicating that his complaint materials were

received on April 21, 2004, and were being returned to him because of failure to meet the

filing requirements in Wis. Admin. Code § DOC 310, which provides that complaints shall

contain only one issue and that the issue shall be clearly identified.  (DPFOF ¶ 450.)  On April

30, 2004, Elkins responded to Kroll stating that his April 20, 2004, complaint clearly

addressed one issue, and that the WCI was violating Wis. Admin. Code § DOC 309.51.

(DPFOF ¶ 451.)  Elkins further stated that by violating Wis. Admin. Code § DOC 309.51, WCI

was denying the items he clearly stated in his supporting facts.  (DPFOF ¶ 452.)  Elkins added

that all other statements are supporting facts that he had raised in WCI-2004-41398 since "I'm always told I'm to [sic] vague!" (DPFOF ¶ 453.) Lastly, Elkins wrote that "It took you 9 days & spilled coffee on my complaint to find an excuse to hide from a clear case of W.C.I. violating WI. Admin. Code § DOC 309.51, that's why I sue the D.O.C. so much!! This is retaliation for my filing #2004-2605 & #2004-12924." (DPFOF ¶ 454.)

This submission was accepted by the ICE Office on April 21, 2004, and assigned the number WCI-2004-13798. (DPFOF ¶ 455.) The Financial Program Supervisor was contacted and it was determined that answers to Elkins' multiple questions were provided in writing to Elkins on April 28, 2004, by the warden. (DPFOF ¶ 456.) The past complaint, 2004-41398 to which Elkins referred in this complaint was actually WCI-2003-41398, and was rejected previously. (DPFOF ¶ 458.) Thus, Tonn recommended that Offender Complaint WCI-2004-13798 be dismissed. (DPFOF ¶ 460.) The reviewing authority, McCaughtry, accepted Tonn's recommendation and dismissed Offender Complaint WCI-2004-13798 on June 25, 2004. (DPFOF ¶ 461.)

Elkins appealed the reviewing authority's dismissal of Offender Complaint WCI-2004-13798 to the CCE on September 20, 2004. (DPFOF ¶ 462.) The Wis. Admin. Code § DOC 310.13(1) requires appeals to be filed within ten days of a complaint decision. (DPFOF ¶ 463.) This complaint was decided on June 25, 2004, printed June 28, 2004, and the appeal was received on September 20, 2004. (DPFOF ¶ 464). Also, Elkins provided no good cause to accept this appeal late. (DPFOF ¶ 464.) Therefore, Ray recommended that Offender Complaint WCI-2004-13798 be dismissed as untimely on September 20, 2004. (DPFOF ¶ 465.) The Deputy Secretary of the DOC accepted Ray's recommendation and dismissed Offender Complaint WCI-2004-13798 on September 20, 2004. (DPFOF ¶ 466.)

## 14.    ISSUE 27

Elkins submitted an offender complaint form, dated May 6, 2004, indicating that he needed medical care, but did not want WCI HSU staff attending to these issues because of pending lawsuits.  (DPFOF ¶ 467.)  This submission was accepted by the ICE Office on May 7, 2004, and assigned the number WCI-2004-14611.  (DPFOF ¶ 468.)  Dr. Larson, Elkins' primary physician, was responsible for determining Elkins' course of treatment to pursue.  (DPFOF ¶ 469.)  HSM Schrubbe was consulted and stated that she was not even sure she would recognize Elkins and did not recall giving Elkins an "evil eye" look as Elkins stated in his complaint.  (DPFOF ¶ 472.)  Tonn did not, at that point, have the ability to help Elkins pick and choose who would provide his treatment.  (DPFOF ¶ 474.)  Therefore, Tonn recommended that the complaint be dismissed.  (DPFOF ¶ 475.)  The reviewing authority, Thorpe, accepted Tonn's recommendation and dismissed Offender Complaint WCI-2004-14611 on June 10, 2004.  (DPFOF ¶ 476.)

Elkins appealed the reviewing authority's dismissal of Offender Complaint WCI-2004-14611 to the CCE on September 20, 2004.  (DPFOF ¶ 477.)  The Wis. Admin. Code § DOC 310.13(1) requires appeals to be filed within ten days of a complaint decision.  (DPFOF ¶ 478.)  This complaint was decided and printed June 10, 2004, the appeal was not received until September 20, 2004, and Elkins provided no good cause to accept the appeal late.  (DPFOF ¶ 479.)  Therefore, Ray recommended that Offender Complaint WCI-2004-14611 be dismissed as untimely on September 20, 2004.  (DPFOF ¶ 480.)  The Deputy Secretary of the DOC accepted Ray's recommendation and dismissed Offender Complaint WCI-2004-14611 on September 20, 2004.  (DPFOF ¶ 481.)

### 15.    ISSUE 28

Elkins submitted an offender complaint form, dated May 7, 2004, claiming that Ms. Bushweiler refused to send out mail to the CCE because it contained two complaints, not just the one that the warden approved for a legal loan. (DPFOF ¶ 482.) This submission was accepted by the ICE Office on May 10, 2004, and assigned the number WCI-2004-14898. (DPFOF ¶ 483.) Elkins had reached his legal loan limit of $200.00 and needed to prove an extraordinary need to receive funds under DOC 309 IMP 29 and Wis. Admin. Code § DOC 309.51. (DPFOF ¶ 484.) The Wis. Admin. Code § DOC 309.51 indicates, in part, that an extraordinary need may be shown by "a court order requiring submission of specified documents." (DPFOF ¶ 485.)

The Business Office and the Warden's Office were contacted and concluded that when Elkins stated he was trying to save postage, save time, and not overwork the warden, he was in fact attempting to get two complaints under his legal loan to the CCE with the approval that he received for only one. (DPFOF ¶ 486.) The Warden's Office gave Elkins a one-time exemption for a specific complaint, WCI-2004-7686 on April 1, 2004, but said nothing about WCI-2004-8179. (DPFOF ¶ 487.) Ms. Bushweiler denied the disbursement request on April 6, 2004. (DPFOF ¶ 488.) Accordingly, Tonn recommended that this complaint be dismissed. (DPFOF ¶ 492.) The reviewing authority, McCaughtry, accepted Tonn's recommendation and dismissed Offender Complaint WCI-2004-14898 on June 25, 2004. (DPFOF ¶ 493.)

Elkins appealed the reviewing authority's dismissal of Offender Complaint WCI-2004-14898 to the CCE on September 20, 2004. (DPFOF ¶ 494.) The Wis. Admin. Code § DOC 310.13(1) requires appeals to be filed within ten days of a complaint decision. (DPFOF ¶ 495.) This complaint was decided on June 25, 2004, printed on June 28, 2004,

and this appeal was not received until September 20, 2004, and further noting Elkins provided no good cause to accept this appeal late, this appeal did not conform to the filing requirements. (DPFOF ¶ 496.) Therefore, Ray recommended that Offender Complaint WCI-2004-14898 be dismissed as untimely on September 20, 2004. (DPFOF ¶ 497.) The Deputy Secretary of the DOC accepted Ray's recommendation and dismissed Offender Complaint WCI-2004-14898 on September 20, 2004. (DPFOF ¶ 498.)

Elkins submitted an offender complaint form, dated April 11, 2004, asserting that his legal mail was not being approved and sent out appropriately. (DPFOF ¶ 499.) This submission was accepted by the ICE Office on April 12, 2004, and assigned the number WCI-2004-12114. (DPFOF ¶ 500.) Elkins stated a conduct report had been written, and was complaining of matters involved with the incident. (DPFOF ¶ 501.) He was challenging the factual basis of the conduct report, and stated that the conduct report was based on lies by staff. (DPFOF ¶¶ 502-03.)

Once a conduct report is issued, the disciplinary process is initiated, and the complaints are outside the scope of the ICRS pursuant to Wis. Admin. Code § DOC 310.08(2)(a). (DPFOF ¶ 505.) The April 11, 2004, conduct report was dismissed and Elkins' offender complaint did not mention another issue. (DPFOF ¶ 506.) Hence, it was considered moot. *Id.* Accordingly, Tonn rejected Offender Complaint WCI-2004-12114. (DPFOF ¶ 509.)

Elkins submitted a Request for Review of Rejected Complaint dated May 28, 2004. (DPFOF ¶ 510.) The reviewing authority, McCaughtry, noted that Offender Complaint WCI-2004-12114 was rejected by the ICE in accordance with Wis. Admin. Code § DOC 310.11(5) on June 15, 2004. (DPFOF ¶ 511.) Elkins appealed the reviewing authority's dismissal of Offender Complaint WCI-2004-12114 to the CCE on June 7, 2004. (DPFOF ¶ 512.) On June 8, 2004, Elkins was notified that his ICRS correspondence had been

received on June 7, 2004, but was being returned because the CCE shall not review a rejected complaint pursuant to Wis. Admin. Code § DOC 310.13(3). (DPFOF ¶ 513.)

**16.    ISSUE 29**

Elkins submitted an offender complaint form, dated May 14, 2004, claiming that his legal mail was being held illegally by WCI. (DPFOF ¶ 514.) Elkins also stated that when he asked for the legal work to be returned, an excuse was given and he did not receive it back. (DPFOF ¶ 515.) This submission was accepted by the ICE Office on May 17, 2004, and assigned the number WCI-2004-15680. (DPFOF ¶ 516.) Elkins was answered regarding court case number 03-C-919 on April 29, 2004, in a Memorandum from the warden. (DPFOF ¶ 517.) The memo stated that the original document and envelopes were returned to Elkins. (DPFOF ¶ 518.) Elkins had reached his $200.00 legal loan limit and, therefore, needed to prove extraordinary need to continue to receive funds in accordance with DOC 309 IMP 29 and Wis. Admin. Code § DOC 309.51. (DPFOF ¶ 519.)

Registrar P. Knick (a/k/a P. Fuller) and D. Poortenga, from the warden's office, were contacted and it was concluded that the issues expressed by Elkins had been addressed. (DPFOF ¶ 520.) Therefore, Tonn recommended that the complaint be dismissed. (DPFOF ¶ 528.) The reviewing authority, McCaughtry, accepted Tonn's recommendation and dismissed Offender Complaint WCI-2004-15680 on July 2, 2004. (DPFOF ¶ 529.)

Elkins appealed the reviewing authority's dismissal of Offender Complaint WCI-2004-15680 to the CCE on September 20, 2004. (DPFOF ¶ 530.) The Wis. Admin. Code § DOC 310.13(1) requires appeals to be filed within ten days of a complaint decision. (DPFOF ¶ 531.) This complaint was decided on July 2, 2004, the appeal was not received until September 20, 2004, and Elkins provided no good cause to accept this appeal late.

(DPFOF ¶ 532.)  Therefore, Ray recommended that Offender Complaint WCI-2004-15680 be dismissed as untimely on September 20, 2004.  (DPFOF ¶ 533.)  The Deputy Secretary of the DOC accepted Ray's recommendation and dismissed Offender Complaint WCI-2004-15680 on September 20, 2004.  (DPFOF ¶ 534.)

### 17.    ISSUE 30

Elkins submitted an offender complaint form, dated May 18, 2004, contending that Warden McCaughtry was denying him legal copies/postage on the basis that someone at the Department of Justice (DOJ) advised the warden to discontinue this practice.  (DPFOF ¶ 535.)  Elkins wanted the name of the individual at the DOJ, however, attorney/client privilege was being claimed, and the information was not released.  (DPFOF ¶ 536.)  This submission was accepted by the ICE Office on May 19, 2004 and assigned the number WCI-2004-15971.  (DPFOF ¶ 537.)  Elkins wanted the names of the DOJ staff members from whom the warden obtains advice.  (DPFOF ¶ 538.)  Elkins stated that the warden had answered him regarding this request.  (DPFOF ¶ 539.)  Elkins also stated that he was denied legal loans after he had exceeded the legal loan limit.  (DPFOF ¶ 540.)

Elkins' request for a loan above the limit did not list facts about a specific extraordinary need or significant issue that Tonn could address.  (DPFOF ¶ 542.)  The Wis. Admin. Code § DOC 310.03(16) defines "significant issue" as a serious important defect or omission.  (DPFOF ¶ 543.)  The Wis. Admin. Code § DOC 310.11(5)(b) states, "The inmate does not raise a significant issue regarding rules, living conditions, or staff actions affecting institution environment."  (DPFOF ¶ 544.)  Tonn did not identify the issue presented by Elkins to be significant or contain sufficient meaning to necessitate ICRS or the warden's office intervention.  (DPFOF ¶ 545.)  Accordingly, Tonn rejected Offender Complaint WCI-2004-15971.  (DPFOF ¶ 546.)

Elkins submitted a Request for Review of Rejected Complaint dated August 11, 2004. (DPFOF ¶ 547.) The reviewing authority, McCaughtry, noted that Offender Complaint WCI-2004-15971 was rejected by the ICE in accordance with Wis. Admin. Code § DOC 310.11(5) on August 17, 2004. (DPFOF ¶ 548.) Elkins appealed the reviewing authority's dismissal of Offender Complaint WCI-2004-15971 to the CCE on September 20, 2004. (DPFOF ¶ 549.) On September 20, 2004, Elkins was notified that his ICRS correspondence had been received on September 20, 2004, but was being returned because the CCE shall not review a rejected complaint pursuant to Wis. Admin. Code § DOC 310.13(3). (DPFOF ¶ 550.)

18.    ISSUE 32

Elkins submitted an offender complaint form, dated May 19, 2004, complaining of procedural errors pertaining to Adult Conduct Report #919846-528. (DPFOF ¶ 551.) On May 20, 2004, Angelia Kroll, ICE Program Assistant, sent correspondence to Elkins indicating that his complaint materials were received on May 20, 2004 and were being returned to him because of failure to meet the filing requirements as stated in Wis. Admin. Code § DOC 310, and that before his complaint would be accepted, he should attempt to resolve the issue by contacting Darrell Aldrich, Social Services Director. (DPFOF ¶ 552.) Elkins responded to Kroll by advising that he had spoken with Aldrich on May 24, 2004, and that he still wanted his complaint filed and McDonald's conduct addressed. (DPFOF ¶ 553.) Elkins also indicated that this would allow the federal court jurisdiction on McDonald for "violating my civil rights of 'due process.'" (DPFOF ¶ 554.)

This submission was accepted by the ICE Office on May 26, 2004, and assigned the number WCI-2004-17603. (DPFOF ¶ 555.) The Wis. Admin. Code § DOC 310.08(2)(a) prohibits complaints on conduct reports "that have not been resolved through

the disciplinary process in accordance with ch. DOC 303." (DPFOF ¶ 556.) On this basis, Tonn rejected Offender Complaint WCI-2004-17603. (DPFOF ¶ 557.)

Elkins submitted a Request for Review of Rejected Complaint dated June 18, 2004. (DPFOF ¶ 558.) The reviewing authority, McCaughtry, noted that Offender Complaint WCI-2004-17603 was rejected by the ICE in accordance with Wis. Admin. Code § DOC 310.11(5) on June 25, 2004. (DPFOF ¶ 559.)

19.    ISSUE 33

Elkins submitted an offender complaint form, dated May 26, 2004, contesting his PRC review. (DPFOF ¶ 560.) This submission was accepted by the ICE Office on May 28, 2004, and assigned the number WCI-2004-17645. (DPFOF ¶ 561.) Elkins noted that a PRC review record identified certain items listed regarding his programming needs and failed to include his positive accomplishments. (DPFOF ¶ 562.) This concern had been addressed by Elkins' social worker and the PRC coordinator at WCI. (DPFOF ¶ 563.) Social Worker J. Fuerstenberg had answered this concern and had stated that Elkins should bring this issue to the scheduled PRC worksheet meeting with the social worker so it could be brought before the PRC at WCI. (DPFOF ¶ 564.) R. Polinski stated in his reply to Elkins that this would be the appropriate way to bring up these issues. (DPFOF ¶ 565.)

Tonn declined to address these issues regarding Elkins' PRC record because Wis. Admin. Code § DOC 310.08(2)(e) prohibits complaints dealing with a "decision on a challenge to an inmate record." (DPFOF ¶ 566.) Complaints of this nature are rejected pursuant to Wis. Admin. Code § DOC 310.08(2)(b) because decisions made by the PRC are not appealable through the ICRS. (DPFOF ¶ 567.) In view of that, Tonn rejected Offender Complaint WCI-2004-17645. (DPFOF ¶ 568.)

Elkins submitted a Request for Review of Rejected Complaint dated June 20, 2004. (DPFOF ¶ 569.) The reviewing authority, McCaughtry, noted that Offender Complaint WCI-2004-17645 was rejected by the ICE in accordance with Wis. Admin. Code § DOC 310.11(5) on June 25, 2004. (DPFOF ¶ 570.)

**20.    ISSUE 35**

Elkins submitted an offender complaint form, dated June 2, 2004, arguing that he requested to be relocated to a different cell because of his cell mate's unstable condition. (DPFOF ¶ 571.) Elkins claims that one night his cell mate attacked him and staff did nothing except ignore his requests. *Id.* On June 4, 2004, Kroll sent correspondence to Elkins indicating that his complaint materials were received on June 3, 2004, and were being returned to him for failure to meet the filing requirement as stated in Wis. Admin. Code § DOC 310, and that complaints shall contain only one issue which has been clearly identified. (DPFOF ¶ 572.) Kroll also requested that Elkins provide more exact data, i.e., times, witnesses, etc. (DPFOF ¶ 573.)

Elkins responded to Kroll and stated that this issue was now in Lieutenant Thomas' report of him being attacked at 4:35 a.m. on June 2, 2004, and that Thomas was investigating. (DPFOF ¶ 574.) Elkins told Kroll to contact Thomas for the lieutenants' names. (DPFOF ¶ 575.) Elkins went on to state that he told Thomas he forgot the two lieutenants' names, but Thomas knew who they were. (DPFOF ¶ 576.) Elkins said that he also spoke with Knapp numerous times and he was called by Moranski after he wrote Moranski, stating his cell mate was violent and came from Mendota after attacking staff (for which he was convicted of "battery by a prisoner"). (DPFOF ¶ 577.) Elkins alleged that "he claimed I was lying & refused to move either of us." *Id.* Elkins stated that less than a week later, he was attacked in his sleep and now he had serious damage to his right eye. (DPFOF ¶ 578.)

Lastly, Elkins wrote that his "sole issue is" he told "5 staff members that my cellmate was violent & I wanted one of us to be moved, I was ignored & even told I was lying & I was later attacked in my sleep, which these 5 guards allowed!"  (DPFOF ¶ 579.)

This submission was accepted by the ICE Office on June 7, 2004, and assigned the number WCI-2004-18636.  (DPFOF ¶ 580.)  Security staff has the capability to manage its cells and inmates in the best interest of the unit and institution as a whole.  (DPFOF ¶ 581.)  Simply because an inmate has a criminal record of violence does not necessarily require that he or his cell mate be moved.  (DPFOF ¶ 582.)  The decision to grant a SPN is a decision made by the security director based upon an investigation.  (DPFOF ¶ 583.)  Security Director Clements, in a September 18, 2003, correspondence, addressed a different SPN related issue with Elkins, and Mr. Clements directed Elkins to relay his concerns to Captain O'Donovan.  (DPFOF ¶ 584.)

On January 21, 2004, the security director addressed a protective confinement issue with Elkins, stating that Elkins' concerns had been investigated and no further action would be taken at that time.  (DPFOF ¶ 585.)

Neither of these complaints had anything to do with Inmate Blaszczyk.  (DPFOF ¶ 587.)  On June 2, 2004, Elkins' cell mate, Blaszczyk, was issued a conduct report for battery which injured Elkins.  (DPFOF ¶ 588.)  Any time there was an issue regarding a move, the sergeant directs the inmate to contact Captain Muraski.  (DPFOF ¶ 589.)  Elkins spoke with Muraski and his request to be moved was denied.  (DPFOF ¶ 590.)  There was no documentation regarding Blaszczyk or an SPN in Elkins' social service file prior to June 2, 2004.  (DPFOF ¶ 591.)  Captain O'Donovan stated that he was not aware of any correspondence from Elkins regarding an SPN pertaining to Blaszczyk, prior to the incident of June 2, 2004.  (DPFOF ¶ 592.)  SPNs and the issues that lead to them are security and

-53-

administrative matters which are not within the purview of the ICRS. (DPFOF ¶ 593.) Elkins and Blaszczyk were housed in HSC (Health and Segregation Complex). (DPFOF ¶ 594.) Hence, Tonn recommended that Offender Complaint WCI-2004-18636 be dismissed with the modification that a copy of the complaint go to Security Director M. Clements, Muraski, HSC Manager C. Janssen, and Captain O'Donovan for follow up regarding the incident on June 2, 2004, as deemed necessary. (DPFOF ¶ 595.) The reviewing authority, McCaughtry, accepted Tonn's recommendation and dismissed Offender Complaint WCI-2004-18636 with modification on August 23, 2004. (DPFOF ¶ 596.)

Elkins appealed the reviewing authority's dismissal of Offender Complaint WCI-2004-18636 to the CCE on September 20, 2004. (DPFOF ¶ 597.) The Wis. Admin. Code § DOC 310.13(1) requires appeals to be filed within ten days of a complaint decision. (DPFOF ¶ 598.) Hautamaki recommended that Offender Complaint WCI-2004-18636 be dismissed as untimely on September 20, 2004, after noting this complaint was decided on August 23, 2004, was printed on August 25, 2004, that appeal was not received until September 20, 2004, and that Elkins did not offer good cause for the late appeal. (DPFOF ¶ 599.) The Deputy Secretary of the DOC accepted Hautamaki's recommendation and dismissed Offender Complaint WCI-2004-18636 on September 20, 2004. (DPFOF ¶ 600.)

21.    **ISSUE 36**

Elkins submitted an offender complaint form, dated June 9, 2004, regarding possible procedural errors pertaining to Adult Conduct Report #919846-528. (DPFOF ¶ 601.) On June 11, 2004, Kroll sent correspondence to Elkins indicating that his complaint materials were received on June 11, 2004, and were being returned to him because of his failure to meet the filing requirements stated in Wis. Admin. Code § DOC 310, and the requirement that

-54-

inmates may file no more than two complaints per calendar week, with few exceptions. (DPFOF ¶ 602.) This complaint did not meet either exception (DOC 310.09(2)). *Id.*

Elkins submitted an offender complaint form, dated as "refiled" on June 13, 2004, directed to possible procedural errors pertaining to Adult Conduct Report #919846-528. (DPFOF ¶ 603.) This submission was accepted by the ICE Office on June 14, 2004, and assigned the number WCI-2004-19300. (DPFOF ¶ 604.) The Wis. Admin. Code § DOC 310.08(2)(a) prohibits complaints on conduct reports "that have not been resolved through the disciplinary process in accordance with ch. DOC 303." (DPFOF ¶ 605.) Once a conduct report is issued, the disciplinary process regarding the conduct report is outside the scope of the ICRS as noted under Wis. Admin. Code § DOC 310. (DPFOF ¶ 606.) An appeal may be sent directly to the warden after the disciplinary hearing paperwork is received by ICE. (DPFOF ¶ 607.) The ICE may only address procedurally based allegations of error contained in complaints filed after the warden's decision is made on appeal, following Wis. Admin. Code § DOC 310.08(3). (DPFOF ¶ 608.) The warden had not rendered a decision on Elkins' appeal of his conduct report when WCI-2004-19300 was filed. (DPFOF ¶ 609.) Consequently, this complaint fell out of the scope of the ICRS. *Id.* Accordingly, Muenchow rejected Offender Complaint WCI-2004-19300. (DPFOF ¶ 610.)

On June 18, 2004, Kroll advised Elkins that because the investigation on Offender Complaint WCI-2004-18300 had been completed and the complaint had been rejected for scope, additional information could not be accepted and added to this complaint. (DPFOF ¶ 611.) It was for this reason that the information supplied by Elkins on June 16 and 17, 2004, was being returned to him. (DPFOF ¶ 612.) Elkins was advised that if upon reviewing the ICE Rejection he was not satisfied with the outcome, he could appeal to the warden by submitting a DOC-2182 "Request for Review of Rejected Complaint" within ten

calendar days of receiving the rejection notice. (DPFOF ¶ 613.) Elkins was further advised that it would be appropriate for him to provide the additional information to the warden at that time. (DPFOF ¶ 614.)

Elkins submitted a Request for Review of Rejected Complaint dated June 18, 2004. (DPFOF ¶ 615.) The reviewing authority, McCaughtry, noted that Offender Complaint WCI-2004-19300 was rejected by the ICE in accordance with Wis. Admin. Code § DOC 310.11(5) on June 25, 2004. (DPFOF ¶ 616.)

Elkins submitted an offender complaint form, dated July 11, 2004, alleging procedural errors pertaining to Adult Conduct Report #919846-528. (DPFOF ¶ 617.) This submission was accepted by the ICE Office on July 13, 2004, and assigned the number WCI-2004-22765. (DPFOF ¶ 618.) Complaints which argue any issue related to a conduct report are not within the scope of the ICRS. (DPFOF ¶ 619.) The Wis. Admin. Code § DOC 310.08(3) does allow for an inmate to challenge the procedure used in the disciplinary process, but only after the appeal process has been completed. (DPFOF ¶ 620.) The appeal process had not been completed in the matter of Adult Conduct Report #919846-528. (DPFOF ¶ 621.) As such, this complaint fell from the scope of the ICRS. (DPFOF ¶ 622.) Accordingly, Muenchow rejected Offender Complaint WCI-2004-22765. *Id.*

Elkins submitted a Request for Review of Rejected Complaint dated July 20, 2004. (DPFOF ¶ 623.) The reviewing authority, McCaughtry, noted that Offender Complaint WCI-2004-22765 was rejected by the ICE in accordance with Wis. Admin. Code § DOC 310.11(5) on July 30, 2004. (DPFOF ¶ 624.)

### 22. ISSUE 37

Elkins submitted an offender complaint form, dated June 7, 2004, stating that while in HSC, he received a list of items that were considered contraband. (DPFOF ¶ 640.)

Elkins advised that this was nothing short of retaliation and theft by WCI. *Id.* On June 11, 2004, Angelia Kroll, ICE Program Assistant, sent correspondence to Elkins indicating that his complaint materials were received on June 8, 2004, and were being returned to him because of his failure to meet the filing requirements stated in Wis. Admin. Code § DOC 310, and because complaints shall contain only one issue which shall be clearly identified (DOC 310.09(1)(e)). (DPFOF ¶ 641.)

Elkins responded to Kroll and stated that his sole issue was contraband property that was "oked" previously by Sergeant McCarthy in August 2003 including: "1) radio, gym shoes, law books, magazines and law work in 2 expanding folders; 2) missing 2 deodorants (speedstick) & 1 shampoo (VO5); 3) claiming I had (and was given 12 "loose stamps") as over limit (I only have 44 stamped envelopes, I've never had loose stamps (since I'm on legal loan (no canteen)); 4) staff ripped my bag of soap in May N.W. Cell-Hall all out search, staff gave me a bag to put soap in still it was used up. Now 'staff' claim contraband." (DPFOF ¶ 642.) Elkins' submission was accepted by the ICE Office on June 14, 2004 and assigned the number WCI-2004-19345. (DPFOF ¶ 643.)

Elkins submitted an offender complaint, dated July 4, 2004, claiming "additional facts for 2004-19345." (DPFOF ¶ 644.) This offender complaint form was not assigned a separate complaint number but was added as an addendum to complaint WCI-2004-19345. (DPFOF ¶ 645.) Alsum O'Donovan noted that Elkins filed a lengthy complaint about property issues subsequent to his June 4, 2004, placement in TLU (temporary lock up). (DPFOF ¶ 646.) Elkins claimed that his VO-5 shampoo and two Speedstick deodorants were stolen as retaliation. (DPFOF ¶ 647.) The TLU inventory did not show that staff found these items when Elkins' room was packed. (DPFOF ¶ 648.) Moreover, Elkins provided no evidence of owning these items, and his claim was not substantiated. (DPFOF ¶ 649.)

Elkins contested that he was told that he needed to bring his legal work within limits even after he reported to staff that all of his legal work was for active cases. (DPFOF ¶ 650.) Officer Yunto went through all legal work with Elkins. (DPFOF ¶ 651.) Elkins chose a bag of papers as things he did not need. (DPFOF ¶ 652.) These items were stored awaiting Elkins' instructions for disposition after this complaint decision was made. (DPFOF ¶ 653.) Some of the papers were bound with folders containing metal clips which are not allowed. (DPFOF ¶ 654.) Elkins made no request to have his papers removed from the folders. (DPFOF ¶ 655.) Elkins was advised that under DOC 309 IMP 1 the warden has the authority to make exceptions for inmates to store excess legal work on open cases. (DPFOF ¶ 656.) Elkins' statement to staff that all of his cases are active is not sufficient to request an exception authorizing him to possess property considered contraband. (DPFOF ¶ 657.) It would be Elkins' responsibility to prove that all of the papers in his possession relate to active cases. (DPFOF ¶ 658.) Elkins would need to inform property of his wishes for disposition of the excess legal material that was held in property. (DPFOF ¶ 659.)

Elkins claimed that his conduct reports regarding contraband had been written in retaliation for filing a federal lawsuit. (DPFOF ¶ 660.) Offender complaints may only contain one issue, whereas conduct reports are a separate issue. (DPFOF ¶ 661.) Therefore, the conduct reports would not be addressed. *Id.*

Elkins claimed that he did not have loose stamps. (DPFOF ¶ 662.) The TLU inventory showed that Elkins had twelve stamps and thirty-eight stamped envelopes. (DPFOF ¶ 663.) There was no reason to believe that Elkins' stamps and envelopes were not inventoried accurately. (DPFOF ¶ 664.) Elkins indicated that he never bought loose stamps. (DPFOF ¶ 665.) Obtaining property through other sources is not uncommon. (DPFOF ¶ 666.) In addition, Elkins received thirty stamped envelopes and seventy envelopes on June

8, 2004, and then requested and received twenty-five more envelopes on July 14, 2004. (DPFOF ¶ 667.) He wrote on the DOC-237 from June 4, 2004, that he had forty-four envelopes and when he filed this complaint he reported that he had only thirty-eight. (DPFOF ¶ 668.) No evidence was found that proved that Elkins was not given the stamps and stamped envelopes found in his room when his property was packed. (DPFOF ¶ 670.)

Elkins claimed that staff was counting two used typewriter cartridges that he had not thrown away. (DPFOF ¶ 671.) It is Elkins' responsibility to maintain his property within DOC limits and to throw away items that are no longer of use to him. (DPFOF ¶ 672.)

Elkins claimed that the condition of his radio did not change after it arrived at WCI and that Sergeant McCarthy allowed him to have it. (DPFOF ¶ 675.) Alsum O'Donovan looked at the radio and observed a hole in the back of the case. (DPFOF ¶ 676.) The DOC-237 from September 2, 2003, did not show that the radio was in this condition when Elkins arrived at WCI. (DPFOF ¶ 677.) Property staff reported that the radio was received on June 4, 2004, with stickers covering the hole. (DPFOF ¶ 678.) McCarthy was contacted and could not confirm that he told Elkins in September 2003 that he could have a radio with a hole in it. (DPFOF ¶ 679.) Moreover, it is not the practice of property staff to make exceptions and allow contraband property into the facility. (DPFOF ¶ 680.) The radio was deemed contraband. (DPFOF ¶ 681.)

Elkins claimed that staff had broken the original packaging for his laundry soap during a cell search and had given him permission to keep the soap in a plastic bag. (DPFOF ¶ 682.) Elkins did not provide details of this claim in order to verify his contention. (DPFOF ¶ 683.) The Wis. Admin. Code § DOC 303.34 provides the rule that must be followed regarding storage. (DPFOF ¶ 685.) The soap was deemed contraband as it was not in its original container. (DPFOF ¶¶ 684-686.)

Elkins claimed that his law book was not altered. (DPFOF ¶ 687.) This book was destroyed as a result of Elkins' instruction to property on June 10, 2004. *Id.* Consequently, Elkins' complaint regarding the book was deemed moot. (DPFOF ¶ 688.)

Elkins claimed that his black boots were allowed pursuant to a medical order and that he should be allowed his tennis shoes. (DPFOF ¶ 690.) However, he provided no evidence of a medical order. (DPFOF ¶ 691.) Health Services Manager Belinda Schrubbe checked Elkins' medical record back to 1999 and found no medical order regarding the boots. (DPFOF ¶ 692.) Elkins' black boots were stored for him until his release from HSC. (DPFOF ¶ 693.) Also, Elkins' tennis shoes were deemed contraband. (DPFOF ¶ 694.) WCI policy allows one pair of state shoes and one pair of personal shoes. (DPFOF ¶ 695.) Elkins was at his limit. (DPFOF ¶ 696.) No recommendation to allow him to keep his over-the-limit shoes would be made. *Id.*

Elkins claimed that the handwritten word "destroy" on his DOC-237 was harassment. (DPFOF ¶ 697.) This was a note that property staff used to mark packages that should be held for thirty days pending grievance and then disposed of in accordance with the inmate's instructions. (DPFOF ¶ 698.) Elkins had put the package out to be picked up on a visit, however, no one picked up the package. (DPFOF ¶ 699) Although Elkins never provided property staff a complaint number, and did not ask to have the property held for his complaint, Elkins' property was held pending a decision on his complaint. (DPFOF ¶ 700.) No evidence of harassment or retaliation was found. (DPFOF ¶ 701.)

Elkins claimed that he was missing a new pair of sweat pants. (DPFOF ¶ 702.) However, he provided no evidence that he owned a new pair of sweat pants. (DPFOF ¶ 703.) His property file revealed no DOC-237 showing that a new pair of sweat pants was received. (DPFOF ¶ 704.)

Elkins claimed that he was not over the property limit for publications.  (DPFOF ¶ 706.)  His stored property was checked and he had the limit of twenty-five publications.  (DPFOF ¶¶ 707-708.)  Elkins claimed that he was not over the limit on expandable folders.  (DPFOF ¶ 709.)  Although his folders were not over the limit, the legal material in them was over the property limit.  (DPFOF ¶ 710.)  Elkins had the opportunity to review all of his legal material.  (DPFOF ¶ 711.)

Elkins claimed that he was being treated unfairly with regard to his property.  (DPFOF ¶ 713.)  After review it was concluded that he was treated fairly within the rules of the DOC and the institution.  (DPFOF ¶ 715.)  Therefore, Alsum O'Donovan recommended that Offender Complaint WCI-2004-19345 be dismissed.  (DPFOF ¶ 716.)  The reviewing authority, McCaughtry, accepted Alsum O'Donovan's recommendation and dismissed with modification Offender Complaint WCI-2004-19345 on October 12, 2004.  (DPFOF ¶ 718.)

Elkins appealed the reviewing authority's dismissal of Offender Complaint WCI-2004-19345 to the CCE on September 20, 2004.  (DPFOF ¶ 719.)  Hautamaki found the ICE report to be reasonable and adequate.  (DPFOF ¶ 720.)  Accordingly, Hautamaki recommended that this complaint be dismissed.  (DPFOF ¶ 721.)  The Deputy Secretary of the DOC accepted Hautamaki's recommendation and dismissed Offender Complaint WCI-2004-19345 on October 13, 2004.  (DPFOF ¶ 722.)

### 23.    ISSUE 39

Elkins submitted an offender complaint form, dated June 19, 2004, stating that he did not get his free stamped envelope and paper and that this was a form of punishment without due process.  (DPFOF ¶ 723.)  This submission was accepted by the ICE Office on June 21, 2004, and assigned the number WCI-2004-20427.  (DPFOF ¶ 724.)  The distribution list for each date indicated that Elkins received his free envelope.  (DPFOF ¶ 725.)  It was

concluded that Elkins received his free stamped envelope because Elkins was found in possession of thirty-seven such envelopes on June 9, 2004. (DPFOF ¶ 726.)

As to the distribution of free stamped envelopes on June 16, 2004, the distribution list indicated Elkins received his envelope. (DPFOF ¶ 727.) Consequently, Muenchow recommended that Offender Complaint WCI-2004-20427 be dismissed. (DPFOF ¶ 730.) The reviewing authority, McCaughtry, accepted Muenchow's recommendation and dismissed Offender Complaint WCI-2004-20427 on July 8, 2004. (DPFOF ¶ 731.)

Elkins appealed the reviewing authority's dismissal of Offender Complaint WCI-2004-20427 to the CCE on September 20, 2004. (DPFOF ¶ 732.) The Wis. Admin. Code § DOC 310.13(1) requires appeals to be filed within ten days of a complaint decision. (DPFOF ¶ 733.) This complaint was decided on July 9, 2004, printed on July 14, 2004, and received on September 20, 2004. (DPFOF ¶ 734.) However, because Elkins provided no good cause to accept this appeal late, Ray recommended that Offender Complaint WCI-2004-20427 be dismissed as untimely on September 20, 2004. (DPFOF ¶ 735.) The Deputy Secretary of the DOC accepted Ray's recommendation and dismissed Offender Complaint WCI-2004-20427 on September 20, 2004. (DPFOF ¶ 736.)

### 24.     ISSUE 40

Elkins submitted an offender complaint form, dated June 21, 2004, claiming that he received legal mail that was opened. (DPFOF ¶ 737.) This submission was accepted by the ICE Office on June 28, 2004, and assigned the number WCI-2004-21088. (DPFOF ¶ 738.) The legal mail sender, "Dodge County Sheriff's Dept.," was not a party listed under the Wis. Admin. Code § DOC 309.04(3)a-j and the institution concluded that there was no requirement that the mail be opened in Elkins' presence. (DPFOF ¶ 739.) Consequently, Muenchow recommended that Offender Complaint WCI-2004-21088 be dismissed. (DPFOF

¶ 741.)  The reviewing authority, McCaughtry, accepted Muenchow's recommendation and dismissed with modification Offender Complaint WCI-2004-21088 on July 30, 2004.  (DPFOF ¶ 742.)

Elkins appealed the reviewing authority's dismissal of Offender Complaint WCI-2004-21088 to the CCE on September 20, 2004.  (DPFOF ¶ 743.)  The Wis. Admin. Code § DOC 310.13(1) requires appeals to be filed within ten days of a complaint decision.  (DPFOF ¶ 744.)  This complaint was decided on July 30, 2004, printed on August 3, 2004, yet the appeal was not received until September 20, 2004.  (DPFOF ¶ 745.)  However, because Elkins offered no good cause for the late appeal, Hautamaki recommended that Offender Complaint WCI-2004-21088 be dismissed as untimely on September 20, 2004.  (DPFOF ¶ 745.)  The Deputy Secretary of the DOC accepted Hautamaki's recommendation and dismissed Offender Complaint WCI-2004-21088 on September 20, 2004.  (DPFOF ¶ 746.)

25.    ISSUE 41

Elkins submitted an offender complaint form, dated June 27, 2004, charging that the HSU refused to provide him with copies of all documents in his medical file for discovery in federal case 03-C-950.  (DPFOF ¶ 747.)  This submission was accepted by the ICE Office on June 28, 2004, and assigned the number WCI-2004-21102.  (DPFOF ¶ 748.)  HSM Schrubbe was contacted for information relevant to the issue raised by Elkins.  (DPFOF ¶ 749.)

Inmates can request copies from their file.  (DPFOF ¶ 750.)  Copy requests are processed when the inmate is present to ensure that the proper documents and amounts are copied.  (DPFOF ¶ 751.)  HSM Schrubbe stated that on June 9, 2004, Elkins was scheduled for a file review and he refused the pass.  (DPFOF ¶ 752.)  Therefore, Muenchow

recommended that Offender Complaint WCI-2004-21102 be dismissed. (DPFOF ¶ 754.) The reviewing authority, McCaughtry, accepted Muenchow's recommendation and dismissed with modification Offender Complaint WCI-2004-21102 on July 30, 2004. (DPFOF ¶ 755.)

Elkins appealed the reviewing authority's dismissal of Offender Complaint WCI-2004-21102 to the CCE on September 20, 2004. (DPFOF ¶ 756.) The Wis. Admin. Code § DOC 310.13(1) requires appeals to be filed within ten days of a complaint decision. (DPFOF ¶ 757.) This complaint was decided on July 30, 2004, printed on August 3, 2004, yet the appeal was not received until September 20, 2004. (DPFOF ¶ 758.) However, because Elkins offered no good cause for the late appeal, Hautamaki recommended that Offender Complaint WCI-2004-21102 be dismissed as untimely on September 20, 2004. (DPFOF ¶ 758.) The Deputy Secretary of the DOC accepted Hautamaki's recommendation and dismissed Offender Complaint WCI-2004-21102 on September 20, 2004. (DPFOF ¶ 759.)

26.  **ISSUE 43**

Elkins submitted an offender complaint form, dated July 4, 2004, stating that there were inconsistencies with the policies and procedures regarding his TLU placement. (DPFOF ¶ 760.) He submitted additional offender complaints, dated July 5, 2004 and July 7, 2004 respectively. (DPFOF ¶ 761.) The additional offender complaints were not assigned separate complaint numbers. *Id.* Instead, they were accepted by the ICE Office on July 13, 2004 and assigned the number WCI-2004-22879. (DPFOF ¶ 762.)

On June 30, 2004, Elkins received sixty days disciplinary separation as a result of the Adult Conduct Report #919846-528. (DPFOF ¶ 763.) Elkins could have been released prior to that expiration, as a matter of the warden's discretion, in accordance with Wis. Admin. Code § DOC 303.70. (DPFOF ¶ 764.) However, Elkins was not released on his projected

-64-

early release date.  (DPFOF ¶ 765.)  Elkins was merely being held in disciplinary separation status pursuant to the imposed sentence.  (DPFOF ¶ 766.)  As the result of another Adult Conduct Report, #1621159-601, Elkins received five days adjustment segregation and ninety days disciplinary separation on July 13, 2004.  (DPFOF ¶ 767.)  Elkins' complaint regarding his release from Conduct Report #919846-528 was deemed moot by virtue of Conduct Report #1621159-601 as the dispositions were concurrent.  (DPFOF ¶ 768.)  Therefore, Muenchow rejected Offender Complaint WCI-2004-22879.  (DPFOF ¶ 769.)

Elkins submitted a Request for Review of Rejected Complaint dated August 15, 2004.  (DPFOF ¶ 770.)  The reviewing authority, McCaughtry, noted that Offender Complaint WCI-2004-22879 was appropriately rejected by the ICE in accordance with Wis. Admin. Code § DOC 310.11(5) on August 18, 2004.  (DPFOF ¶ 771.)

## 27.  ISSUE 44

Elkins submitted an offender complaint form, dated July 13, 2004, complaining of possible procedural errors pertaining to Adult Conduct Report #1621159-601.  (DPFOF ¶ 772.)  This submission was accepted by the ICE Office on July 14, 2004, and assigned the number WCI-2004-22922.  (DPFOF ¶ 773.)  Complaints which argue any issue related to a conduct report are not within the scope of the ICRS.  (DPFOF ¶ 774.)  The Wis. Admin. Code § DOC 310.08(3) allows an inmate to challenge the procedure used in the disciplinary process, after the appeal process has been completed.  (DPFOF ¶ 775.)  The appeal process had not been completed in the matter of Adult Conduct Report #1621159-601 when Elkins filed his offender complaint on July 13, 2004.  (DPFOF ¶ 776.)  On that basis, Muenchow rejected Offender Complaint WCI-2004-22922.  *Id.*

Elkins submitted a Request for Review of Rejected Complaint dated August 12, 2004.  (DPFOF ¶ 778.)  The reviewing authority, McCaughtry, noted that Offender Complaint

WCI-2004-22922 was rejected by the ICE in accordance with Wis. Admin. Code § DOC 310.11(5) on August 18, 2004. (DPFOF ¶ 779.)

28. **ISSUE 45**

Elkins submitted an offender complaint form, dated July 19, 2004, citing procedural errors pertaining to Adult Conduct Report #1621159-601. (DPFOF ¶ 780.) This submission was accepted by the ICE Office on July 19, 2004 and assigned the number WCI-2004-23574. (DPFOF ¶ 781.) Once a conduct report is issued, the disciplinary process is invoked. (DPFOF ¶ 782.) The ICE may only address procedurally based allegations of error contained in complaints filed after the warden's decision is made on appeal, following Wis. Admin. Code § DOC 310.08(3). (DPFOF ¶ 784.) Because the warden had not rendered a decision on the appeal of Conduct Report 1621159-601 when the offender complaint was filed, this complaint was deemed to be outside the scope of the ICRS. (DPFOF ¶ 785.)

Elkins submitted a Request for Review of Rejected Complaint dated July 23, 2004. (DPFOF ¶ 786.) The reviewing authority, McCaughtry, concluded that Offender Complaint WCI-2004-23574 was rejected by the ICE in accordance with Wis. Admin. Code § DOC 310.11(5) on July 30, 2004. (DPFOF ¶ 787.)

29. **ISSUE 46**

Elkins submitted an offender complaint form, dated July 4, 2004, claiming that since the HSU failed to provide care givers' names and adequate follow-up care for an injury sustained on June 2, 2004, they were violating their own policies and procedures. (DPFOF ¶ 788.) On July 19, 2004, Kroll, ICE Program Assistant, sent correspondence to Elkins indicating that his complaint materials were received on July 13, 2004, and were being returned to him because of failure to meet the filing requirements as stated in Wis. Admin. Code § DOC 310, and that before this complaint would be accepted, Elkins needed to attempt

-66-

to resolve the issue by contacting HSM Belinda Schrubbe. (DPFOF ¶ 789.) Elkins responded to Kroll by stating that "I've written her 6 separate times! All ignored, as with 2004-21102 since she & 2 other H.S.U. staff named in my federal lawsuit." (DPFOF ¶ 790.)

This submission was accepted by the ICE Office on July 20, 2004, and assigned the number WCI-2004-23620. (DPFOF ¶ 791.) HSM Schrubbe was contacted regarding the claims made by Elkins. (DPFOF ¶ 792.) Schrubbe reviewed Elkins' file and found no record of a Health Service Request (HSR) submitted by Elkins. (DPFOF ¶ 793.) Schrubbe indicated that if Elkins was still in need of a face-to-face contact with HSU staff, he should submit that request to her. (DPFOF ¶ 794.) Elkins was also directed to submit with his new appointment request the HSR reading "R. N. Appointment" that he earlier claimed had been signed. (DPFOF ¶ 795.) In the absence of a record of an HSR, Muenchow recommended that Offender Complaint WCI-2004-23620 be dismissed with modification and that a copy of the complaint be sent to Schrubbe for follow-up purposes. (DPFOF ¶ 796.) The reviewing authority, Thorpe, accepted Muenchow's recommendation and dismissed with modification Offender Complaint WCI-2004-23620 on August 20, 2004. (DPFOF ¶ 797.)

Thorpe encouraged Elkins to submit the signed HSR to Schrubbe for follow-up. (DPFOF ¶ 798.) Elkins appealed the reviewing authority's dismissal of Offender Complaint WCI-2004-23620 to the CCE on September 20, 2004. (DPFOF ¶ 799.) The Wis. Admin. Code § DOC 310.13(1) requires appeals to be filed within ten days of a complaint decision. (DPFOF ¶ 800.) This complaint was decided and printed on August 20, 2004, but this appeal was not received until September 20, 2004. (DPFOF ¶ 801.) Because Elkins offered no good cause for the late appeal, Hautamaki recommended that Offender Complaint WCI-2004-23629 be dismissed as untimely on September 20, 2004. *Id.* The Deputy Secretary of the

DOC accepted Hautamaki's recommendation and dismissed Offender Complaint WCI-2004-23620 on September 20, 2004. (DPFOF ¶ 802.)

30.     **ISSUE 47**

Elkins submitted an offender complaint form, dated July 25, 2004, claiming that he was not receiving medical care, such as prescription refills, in a timely manner. (DPFOF ¶ 803.) This submission was accepted by the ICE Office on July 29, 2004, and assigned the number WCI-2004-24824. (DPFOF ¶ 804.)

Elkins received Nasacort and Azmacort on July 23, 2004. (DPFOF ¶ 805.) On July 22, 2004, Elkins received Pseudoephedrine and Chlorpheniramine. (DPFOF ¶ 806.) Schrubbe reviewed the chain of events. (DPFOF ¶ 807.) She surmised that the initial review and response of the medical chart by HSU staff was in error. *Id.* Also, it was concluded that the issues raised by Elkins had been rectified considering the numerous medications Elkins received after he spoke with staff on July 22, 2004, and his failure to cite any adverse effects resulting from the events outlined. (DPFOF ¶ 808.) However, Muenchow recommended that Offender Complaint WCI-2004-24824 be affirmed with modification that a copy of the complaint be sent to Schrubbe for follow-up with staff on record review practice. (DPFOF ¶ 809.) The reviewing authority, Thorpe, accepted Muenchow's recommendation and affirmed with modification Offender Complaint WCI-2004-24824. (DPFOF ¶ 810.)

31.     **ISSUE 48**

Elkins submitted an offender complaint form, dated July 18, 2004, contending that he was not receiving requested legal loan envelopes. (DPFOF ¶ 811.) On July 28, 2004, Kroll, ICE Program Assistant, sent correspondence to Elkins indicating that his complaint materials were received on July 19, 2004, and were being returned to him because of his failure to meet the filing requirements as stated in Wis. Admin. Code § DOC 310, and that

before this complaint would be accepted, Elkins needed to attempt to resolve the issue by contacting Captain Schueler. (DPFOF ¶ 812.) Elkins responded to Kroll by stating, "I already did on 204-20427 & it was denied by you & him. Now he's ignoring me on this issue!" (DPFOF ¶ 813.) This submission was accepted by the ICE Office on July 30, 2004, and assigned the number WCI-2004-24852. (DPFOF ¶ 814.)

Captain Schueler was contacted regarding this situation. (DPFOF ¶ 815.) He stated that, due to prior occasions when Elkins hoarded in excess of the 300 stamped envelopes in his cell, the number of envelopes that Elkins was allowed to possess in his cell was closely monitored. *Id.*

Inmates housed in the segregation complex may possess fifty stamps and one box of envelopes. (DPFOF ¶ 816.) Any excess envelopes and others that were obtained by Elkins since the original reduction were stored in his property. (DPFOF ¶ 817.) Arrangements were made so that Elkins could gain access to these envelopes simply by writing the Property Department. (DPFOF ¶ 818.) Elkins was not charged for materials he did not receive. (DPFOF ¶ 819.) However, the institution controlled the amount of materials in Elkins' possession. (DPFOF ¶ 820.) Elkins did not cite an adverse effect suffered due to this situation. (DPFOF ¶ 822.) Consequently, Muenchow recommended that Offender Complaint WCI-2004-24852 be dismissed. (DPFOF ¶ 823.) The reviewing authority, McCaughtry, accepted Muenchow's recommendation and dismissed Offender Complaint WCI-2004-24852 on August 31, 2004. (DPFOF ¶ 824.)

Elkins appealed the reviewing authority's dismissal of Offender Complaint WCI-2004-24852 to the CCE on September 20, 2004. (DPFOF ¶ 825.) The Wis. Admin. Code § DOC 310.13(1) requires appeals to be filed within ten days of a complaint decision. (DPFOF ¶ 826.) This complaint was decided on August 31, 2004, printed on September 1,

2004, and the appeal was received on September 20, 2004. Inasmuch as Elkins offered no good cause for the late appeal, Hautamaki recommended that Offender Complaint WCI-2004-24852 be dismissed as untimely on September 20, 2004. (DPFOF ¶ 827.) The Deputy Secretary of the DOC accepted Hautamaki's recommendation and dismissed Offender Complaint WCI-2004-24852 on September 20, 2004. (DPFOF ¶ 828.)

### 32. ISSUE 49

Elkins submitted an offender complaint form, dated August 1, 2004, complaining of possible procedural errors pertaining to Adult Conduct Report #1621584-712. (DPFOF ¶ 829.) This submission was accepted by the ICE Office on August 3, 2004, and assigned the number WCI-2004-25259. (DPFOF ¶ 830.) The ICE may only address procedurally based allegations of error contained in complaints filed after the warden's decision is made on appeal, following Wis. Admin. Code § DOC 310.08(3). (DPFOF ¶ 833.) Also, the warden had not rendered a decision on the appeal of Conduct Report 1621584-712 when Elkins filed his offender complaint which was, therefore, rejected. (DPFOF ¶¶ 834-835.)

Elkins submitted a Request for Review of Rejected Complaint dated August 19, 2004. (DPFOF ¶ 836.) The reviewing authority, McCaughtry, concluded that Offender Complaint WCI-2004-25259 was rejected by the ICE in accordance with Wis. Admin. Code § DOC 310.11(5) on August 23, 2004. (DPFOF ¶ 837.)

### 33. ISSUE 51

Elkins submitted an offender complaint form, dated August 8, 2004, complaining of procedural errors pertaining to Adult Conduct Report #1651268-563. (DPFOF ¶ 838.) This submission was accepted by the ICE Office on August 9, 2004, and assigned the number WCI-2004-25651. (DPFOF ¶ 839.) In accordance with Wis. Admin. Code § DOC 310.11(3), the investigation of a complaint filed under DOC 310.08(3) is limited to review of the record.

(DPFOF ¶ 840.)  In addition, the ICRS may be used to challenge the procedure used in the disciplinary process.  (DPFOF ¶ 841.)  Therefore, arbitrary issues, matters involving acts of discretion on the part of the adjustment committee, and elements outside of the official hearing record cannot be addressed.  (DPFOF ¶ 842.)  Furthermore, the warden's decision regarding the sufficiency of evidence is final pursuant to Wis. Admin. Code § DOC 303.76(7)(d).  (DPFOF ¶ 843.)

Review of the record concerning the matter of Adult Conduct Report #1651268-563 shows that notice was provided (DOC-71), that the committee outlined the reason for its decision and listed the evidence relied upon for its findings, and that the disposition did not exceed the maximum listed in the table under Wis. Admin. Code § DOC 303.84.  (DPFOF ¶ 844.)  An advocate was assigned to Elkins, and the record shows that the advocate was present at the hearing.  (DPFOF ¶ 845.)  After review of the record, Muenchow found no procedural errors and recommended that Offender Complaint WCI-2004-25651 be dismissed. (DPFOF ¶¶ 846-847.)   The reviewing authority, McCaughtry, accepted Muenchow's recommendation and dismissed Offender Complaint WCI-2004-25651 on September 23, 2004.  (DPFOF ¶ 848.)

Elkins appealed the reviewing authority's dismissal of Offender Complaint WCI-2004-25651 to the CCE on October 1, 2004.  (DPFOF ¶ 849.)  In accordance with Wis. Admin. Code § DOC 310.11(3), investigation of complaints filed under 310.08(3) is limited to review of the record.  (DPFOF ¶ 850.)  Hautamaki reviewed the record concerning this matter and found no procedural error or consequence therein.  (DPFOF ¶ 851.)  Accordingly, Hautamaki recommended that this complaint be dismissed.  *Id.*  The Deputy Secretary of the DOC accepted Hautamaki's recommendation and dismissed Offender Complaint WCI-2004-25651 on October 8, 2004.  (DPFOF ¶ 852.)

-71-

## 34.    ISSUE 52

Elkins submitted an offender complaint form, dated July 28, 2004, complaining of procedural errors in the disciplinary process pertaining to Adult Conduct Report #919846-528.  (DPFOF ¶ 853.)  On August 9, 2004, Kroll advised Elkins that since the investigation on Offender Complaints WCI-2004-19300 and WCI-2004-22765 had been completed and the complaint had been rejected for "scope," additional information could not be accepted and added to this complaint.  (DPFOF ¶ 854.)  Consequently, the information supplied by Elkins on July 28, 2004, and received on July 29, 2004, was being returned to him.  *Id.*  Elkins was advised that, if upon reviewing the ICE Rejection he was not satisfied with the outcome, he could appeal to the warden by submitting a DOC-2182 "Request for Review of Rejected Complaint" within ten calendar days of receiving the rejection notice.  (DPFOF ¶ 855.)  Elkins was further advised that it would be appropriate for him to provide the additional information to the warden at that time.  (DPFOF ¶ 856.)

Elkins responded to Kroll by indicating that this was not an "add-on."  (DPFOF ¶ 857.)  He added that this was his appeal of the warden's decision on "C.R. 919846-528, I simply made you aware that 2004-19300 & 2004-22765 have similar issues if you needed additional facts.  This complaint is in fact independent, appeal of 7/16 appeal decision by warden."  *Id.*  This submission was accepted by the ICE Office on August 10, 2004, and assigned the number WCI-2004-25960.  (DPFOF ¶ 858.)

The record concerning the matter of Adult Conduct Report #919846-528 shows that appropriate notice was provided (DOC-71), that the committee outlined the reason for its decision and lists the evidence relied upon for its findings, and that the disposition does not exceed the maximum listed in the table under Wis. Admin. Code § DOC 303.84.  (DPFOF ¶ 863.)  Muenchow concluded that the warden acted in accordance with Wis. Admin. Code

§ DOC 303.76(7)(e) when the disposition was adjusted to a reprimand.  (DPFOF ¶ 864.)  An advocate was assigned to Elkins, and the record showed that the advocate was present at the hearing.  (DPFOF ¶ 865.)  After review of the record, Muenchow found no procedural errors. (DPFOF ¶ 866.) Thus, Muenchow recommended that Offender Complaint WCI-2004-25651 be dismissed.  (DPFOF ¶ 867.)  The reviewing authority, McCaughtry, accepted Muenchow's recommendation and dismissed Offender Complaint WCI-2004-25960 on September 23, 2004.  (DPFOF ¶ 868.)

Elkins appealed the reviewing authority's dismissal of Offender Complaint WCI-2004-25960 to the CCE on October 1, 2004.  (DPFOF ¶ 869.)  In agreement with the ICE Report, Hautamaki recommended that this complaint be dismissed.  (DPFOF ¶ 870.)  Also, no further procedural errors are noted.  (DPFOF ¶ 871.)  The Deputy Secretary of the DOC accepted Hautamaki's recommendation and dismissed Offender Complaint WCI-2004-25960 on November 17, 2004.  (DPFOF ¶ 872.)

35.    **ISSUE 53**

Elkins submitted an offender complaint form, dated August 8, 2004, alleging that Schrubbe provided false information when questioned about Offender Complaint WCI-2004-21102.  (DPFOF ¶ 873.)  On August 11, 2004, Kroll, ICE Program Assistant, sent correspondence to Elkins indicating that his complaint materials were received on August 9, 2004, and were being returned to him for failure to meet the filing requirements stated in Wis. Admin. Code § DOC 310, and because complaints shall contain only one clearly identified issue.  (DPFOF ¶ 874.)  Correspondence containing mere statements of dissatisfaction or a list of various issues are not accepted under the Wis. Admin. Code § DOC 310.  (DPFOF ¶ 876.)  Elkins was instructed to include in his offender complaints pertinent information such as dates, times, places, and people.  (DPFOF ¶ 878.)

Elkins responded to Kroll by stating that his sole issue was that Schrubbe lied to "your" department regarding 2004-21102. (DPFOF ¶ 879.) Elkins stated, "She claims I refused a 'pass' to review & copy my medical file. This complaint is she's a liar & my 5 attached documents & your investigation of seg. log will prove it (in you're willing to help an inmate). Read this complaint & 5 documents Schrubbe blatantly lied in 2004-21102, this complaint is to expose that 'lie' and nothing else." (DPFOF ¶ 880.) This submission was accepted by the ICE Office on August 12, 2004, and assigned the number WCI-2004-26547. (DPFOF ¶ 881.)

Elkins submitted this complaint in response to the Reviewing Authority's decision on complaint WCI-2004-21102. (DPFOF ¶ 882.) It was concluded that the matter of complaint WCI-2004-21102 had been exhausted at the institution level. (DPFOF ¶ 884.) Therefore, Muenchow rejected Offender Complaint WCI-2004-26547. (DPFOF ¶ 886.)

Elkins submitted a Request for Review of Rejected Complaint dated August 25, 2004. (DPFOF ¶ 887.) The reviewing authority, McCaughtry, noted that Offender Complaint WCI-2004-26547 was rejected by the ICE in accordance with Wis. Admin. Code § DOC 310.11(5) on August 31, 2004. (DPFOF ¶ 888.)

36.    ISSUE 54

Elkins submitted an offender complaint form, dated August 15, 2004, alleging that he was refused postage to send legal work to the courts. (DPFOF ¶ 889.) This submission was accepted by the ICE Office on August 16, 2004, and assigned the number WCI-2004-26863. (DPFOF ¶ 890.) The Wis. Admin. Code § DOC 310.09(6) states that an inmate shall file a complaint within fourteen calendar days after the occurrence giving rise to the complaint, except that the ICE may accept a late complaint for good cause. (DPFOF ¶ 891.) Muenchow rejected Offender Complaint WCI-2004-26863 because it failed to adhere

to the filing requirement because it was submitted beyond the fourteen calendar day filing limit. (DPFOF ¶ 896.)

Elkins submitted a Request for Review of Rejected Complaint dated September 22, 2004. (DPFOF ¶ 897.) The reviewing authority, McCaughtry, noted that Offender Complaint WCI-2004-26863 was rejected by the ICE in accordance with Wis. Admin. Code § DOC 310.11(5) on September 24, 2004. (DPFOF ¶ 898.) Elkins appealed the reviewing authority's dismissal of Offender Complaint WCI-2004-26863 to the CCE on October 1, 2004. (DPFOF ¶ 899.) On October 1, 2004, Elkins was notified that his ICRS correspondence had been received on October 1, 2004, but was being returned because the CCE shall not review a rejected complaint pursuant to Wis. Admin. Code § DOC 310.13(3). (DPFOF ¶ 900.)

### 37.   ISSUE 55

Elkins submitted an offender complaint form, dated August 15, 2004, asserting that staff members in various areas of the institution were not responding to his request for information or his requests to return papers to him. (DPFOF ¶ 901.) This submission was accepted by the ICE Office on August 16, 2004, and assigned the number WCI-2004-26866. (DPFOF ¶ 902.) The matters contained within this complaint had been previously addressed. (DPFOF ¶ 906.) As a consequence, Muenchow rejected Offender Complaint WCI-2004-26866. *Id.*

Elkins submitted a Request for Review of Rejected Complaint dated October 16, 2004. (DPFOF ¶ 907.) The reviewing authority, Thurmer, noted that Offender Complaint WCI-2004-26866 was rejected by the ICE in accordance with Wis. Admin. Code § DOC 310.11(5) on October 27, 2004. (DPFOF ¶ 908.) Elkins appealed the reviewing authority's dismissal of Offender Complaint WCI-2004-26866 to the CCE on October 1, 2004. (DPFOF ¶ 909.) On October 1, 2004, Elkins was notified that his ICRS correspondence had been

received on October 1, 2004, and that it was being returned because the appeal was premature pursuant to Wis. Admin. Code § DOC 310.13(3). (DPFOF ¶ 910.) Elkins was also advised that if he did not receive the decision on complaint WCI-2004-26866 within thirty working days after the ICE acknowledges receipt of the complaint under Wis. Admin. Code § DOC 310.11(2), he could appeal to the CCE. (DPFOF ¶ 911.)

Elkins again appealed the reviewing authority's dismissal of Offender Complaint WCI-2004-26866 to the CCE on October 18, 2004. (DPFOF ¶ 912.) On October 20, 2004, Elkins was notified that his ICRS correspondence had been received on October 18, 2004, but was being returned because the CCE shall not review a rejected complaint pursuant to Wis. Admin. Code § DOC 310.13(3). (DPFOF ¶ 913.)

### 38. ISSUE 56

Elkins submitted an offender complaint form, dated August 21, 2004, claiming that four correctional officers entered his room during recreation and destroyed his legal work. (DPFOF ¶ 914.) This submission was accepted by the ICE Office on August 23, 2004, and assigned the number WCI-2004-27540. (DPFOF ¶ 915.) Elkins was contacted in the "NWCH" regarding the allegations of staff misconduct raised in this complaint. (DPFOF ¶ 916.) Elkins was advised of the provisions in Wis. Admin. Code § DOC 303.271, and informed that pursuant to Administrative Directive 11.6, he must submit to the Complaint Department a signed detailed statement that provided information about the incident described in the complaint. (DPFOF ¶ 917.) Elkins refused to do so. (DPFOF ¶ 918.) It was explained that the statement was required in accordance with the referenced Administrative Directive. (DPFOF ¶ 919.) Elkins refused to provide the requested statement, stating that there was something "fishy" about the request and investigation procedure. (DPFOF ¶ 920.) In accordance with Administrative Directive 11.6, and in consideration of Elkins' refusal to

provide a signed written statement regarding his allegations of staff misconduct, Muenchow recommended that Offender Complaint WCI-2004-27540 be dismissed for failure to cooperate. (DPFOF ¶ 921.) The reviewing authority, WCI Deputy Warden Michael Thurmer, accepted Muenchow's recommendation and dismissed Offender Complaint WCI-2004-27540 on October 27, 2004. (DPFOF ¶ 922.)

Elkins appealed the reviewing authority's dismissal of Offender Complaint WCI-2004-27540 to the CCE. (DPFOF ¶ 923.) Administrative Directive 11.6 states in pertinent part, "When an ICE receives a complaint that alleges staff misconduct, the inmate should be interviewed as soon as possible. At the interview the inmate should be advised of the provisions of DOC 303.271 (Lying About Staff). If the inmate wishes to proceed with the complaint an in-depth interview must follow, resulting in a detailed written statement signed by the inmate. Refusal of the interview, refusal to provide details, or refusal to sign the statement shall result in dismissal of the complaint for failure to cooperate." (DPFOF ¶¶ 924-27.) On that basis and after considering the report of the ICE, Ray recommended that Offender Complaint WCI-2004-27540 be dismissed on appeal. (DPFOF ¶ 928.) The Deputy Secretary of the DOC accepted Ray's recommendation and dismissed Offender Complaint WCI-2004-27540 on November 4, 2004. (DPFOF ¶ 929.)

### 39. ISSUE 57

Elkins submitted an offender complaint form, dated August 27, 2004, alleging that while he was at recreation, staff entered his cell and destroyed his legal work. (DPFOF ¶ 930.) This submission was accepted by the ICE Office on August 30, 2004, and assigned the number WCI-2004-28147. (DPFOF ¶ 931.) Elkins was contacted in the NWCH regarding the allegations of staff misconduct raised in this complaint. (DPFOF ¶ 932.) In accordance with Administrative Directive 11.6, and in consideration of Elkins' refusal to provide a signed

written statement regarding his allegations of staff misconduct in this complaint, Muenchow recommended that Offender Complaint WCI-2004-28147 be dismissed for failure to cooperate. (DPFOF ¶ 937.) The record reflects that the reviewing authority, Thurmer, accepted Muenchow's recommendation and dismissed Offender Complaint WCI-2004-28147 on October 27, 2004. (DPFOF ¶ 938.)

Elkins appealed the reviewing authority's dismissal of Offender Complaint WCI-2004-28147 to the CCE. (DPFOF ¶ 939.) Administrative Directive 11.6 states in pertinent part, "When an ICE receives a complaint that alleges staff misconduct, the inmate should be interviewed as soon as possible. At the interview the inmate should be advised of the provisions of DOC 303.271 (Lying About Staff). If the inmate wishes to proceed with the complaint an in-depth interview must follow, resulting in a detailed written statement signed by the inmates. Refusal of the interview, refusal to provide details, or refusal to sign the statement shall result in dismissal of the complaint for failure to cooperate." (DPFOF ¶¶ 940-43.) With that in mind and in agreement with and based on the report of the ICE, Ray recommended that Offender Complaint WCI-2004-28147 be dismissed on appeal. (DPFOF ¶ 944.) The Deputy Secretary of the DOC accepted Ray's recommendation and dismissed Offender Complaint WCI-2004-28147 on November 4, 2004. (DPFOF ¶ 945.)

40.    **ISSUE 58**

Elkins submitted an offender complaint form, dated August 29, 2004, complaining that he should be allowed to have copies seized under Adult Conduct Report #1621584-712. (DPFOF ¶ 946.) This submission was accepted by the ICE Office on August 20, 2004, and assigned the number WCI-2004-28166. (DPFOF ¶ 947.) The documents referenced by Elkins in this complaint were seized and used as evidence in the matter of Adult Conduct Report #1621584-712 and are part of the official record. (DPFOF ¶ 948.)

-78-

It is not within the scope of the ICRS to investigate and determine if a conduct report should have been written or if a rule was violated. (DPFOF ¶ 950.) The adjustment committee considers mitigating factors, including the fate of evidence/contraband. (DPFOF ¶ 951.) Therefore, Muenchow rejected Offender Complaint WCI-2004-28166 as out of the scope of the ICRS. (DPFOF ¶ 952.)

Elkins submitted a Request for Review of Rejected Complaint dated October 23, 2004. (DPFOF ¶ 953.) The reviewing authority, Thurmer, noted that Offender Complaint WCI-2004-28166 was rejected by the ICE in accordance with Wis. Admin. Code § DOC 310.11(5) on October 27, 2004. (DPFOF ¶ 954.)

Elkins appealed the reviewing authority's dismissal of Offender Complaint WCI-2004-28166 to the CCE. (DPFOF ¶ 955.) Consistent with Wis. Admin. Code § DOC 310.11(6), rejections of offender complaints may only be appealed to the appropriate reviewing authority. (DPFOF ¶ 956.) Therefore, Ray rejected Offender Complaint WCI-2004-28166. (DPFOF ¶ 957.)

Elkins submitted an offender complaint form, dated March 28, 2004, alleging that he sent out some legal documents to be copied and that either N. Webster, G. McCaughtry, or Sergeant Dykstra was holding the materials or the materials are missing while under staff control. (DPFOF ¶ 958.) This submission was accepted by the ICE Office on March 29, 2004, and assigned the number WCI-2004-10298. (DPFOF ¶ 959.) Elkins had sent an Interview/Information Request written on March 30, 2004, and received on March 31, 2004, stating that the missing documents had been located. (DPFOF ¶ 960.) Based on this information, Offender Complaint WCI-2004-10298 was withdrawn. (DPFOF ¶ 961.)

## 41.  ISSUE 60

Elkins submitted an offender complaint form, dated September 8, 2004, claiming that legal work was missing from his property.  (DPFOF ¶ 962.)  This submission was accepted by the ICE Office on September 14, 2004, and assigned the number WCI-2004-29773.  (DPFOF ¶ 963.)  The issue raised in this complaint had been previously addressed through Elkins' prior use of the ICRS, specifically, WCI-2004-19345.  (DPFOF ¶ 964.)  Consequently, Muenchow rejected Offender Complaint WCI-2004-29773.  (DPFOF ¶ 965.)

Elkins submitted a Request for Review of Rejected Complaint dated November 7, 2004.  (DPFOF ¶ 966.)  The reviewing authority, Thurmer, noted that Offender Complaint WCI-2004-29773 was rejected by the ICE in accordance with Wis. Admin. Code § DOC 310.11(5) on November 9, 2004.  (DPFOF ¶ 967.)  Elkins appealed the reviewing authority's dismissal of Offender Complaint WCI-2004-29773 to the CCE on November 1, 2004.  (DPFOF ¶ 968.) Consistent with Wis. Admin. Code § DOC 310.11(6), rejections of offender complaints may only be appealed to the appropriate reviewing authority.  (DPFOF ¶ 969.) Therefore, Ray rejected Offender Complaint WCI-2004-29773.  (DPFOF ¶ 970.)

## 42.  ISSUE 64

Elkins submitted an offender complaint form, dated September 24, 2004, complaining of procedural errors in Adult Conduct Report #1621584-712.  (DPFOF ¶ 971.) This submission was accepted by the ICE Office on September 27, 2004, and assigned the number WCI-2004-30943.  (DPFOF ¶ 972.)  Because Adult Conduct Report #1621584-712 had not been resolved through DOC 303 at the time of filing, the complaint was deemed outside the scope of the ICRS.  (DPFOF ¶ 973.)  Likewise, because the complaint was submitted before the completion of the appeal process, no procedural review could take

place. (DPFOF ¶ 974.) Therefore, Muenchow rejected Offender Complaint WCI-2004-30943 as outside the scope of the ICRS. (DPFOF ¶ 975.)

Elkins submitted a Request for Review of Rejected Complaint dated October 6, 2004. (DPFOF ¶ 976.) The reviewing authority, McCaughtry, noted that Offender Complaint WCI-2004-30943 was rejected by the ICE in accordance with Wis. Admin. Code § DOC 310.11(5) on October 12, 2004. (DPFOF ¶ 977.)

### 43.    ISSUE 65

Elkins submitted an offender complaint, dated September 24, 2004, asserting that the Business Office would not provide him with a copy of his account statement for the Supreme Court and thus, his case "was dismissed for failure to file the required documents." (DPFOF ¶ 978.) This submission was accepted by the ICE Office on September 27, 2004, and assigned the number WCI-2004-30980. (DPFOF ¶ 979.) From the information provided in the offender complaint, it could not be discerned when Elkins' account statement was not provided and what staff was involved. (DPFOF ¶ 980.) Elkins stated in his complaint that he would not provide any documentation to explain or support his claims. (DPFOF ¶ 981.) Registrar Fuller was contacted, and from her records, it could not be determined what was denied, by whom, or on what date. (DPFOF ¶ 982.) Therefore, Muenchow rejected Offender Complaint WCI-2004-30980. *Id.*

Elkins submitted a Request for Review of Rejected Complaint dated November 5, 2004. (DPFOF ¶ 985.) The reviewing authority, Thurmer, noted that Offender Complaint WCI-2004-30980 was rejected by the ICE in accordance with Wis. Admin. Code § DOC 310.11(5) on November 9, 2004. (DPFOF ¶ 986.)

44.    **ISSUE 66**

Elkins submitted an offender complaint form, dated October 3, 2004, complaining that NCH was not giving out two sheets of paper with each free weekly envelope. (DPFOF ¶ 987.)  This submission was accepted by the ICE Office on October 4, 2004, and assigned the number WCI-2004-31882.  (DPFOF ¶ 988.)  Pursuant to Wis. Admin. Code § DOC 310.11(5)(f), this issue was deemed moot.  (DPFOF ¶ 991.)  Accordingly, Muenchow rejected Offender Complaint WCI-2004-31882.  (DPFOF ¶ 992.)

Elkins submitted a Request for Review of Rejected Complaint dated November 17, 2004.  (DPFOF ¶ 993.)  The reviewing authority, Thurmer, noted that Offender Complaint WCI-2004-31882 was rejected by the ICE in accordance with Wis. Admin. Code § DOC 310.11(5) on November 23, 2004.  (DPFOF ¶ 994.)

45.    **ISSUE 67**

Elkins submitted an offender complaint form, dated October 8, 2004, alleging that the warden back-dated his decision on the appeal of Adult Conduct Report #1621584-712.  (DPFOF ¶ 995.)  Elkins further stated that if the warden's decision was dated September 30, 2004, his complaint was wrongly rejected.  *Id.*  This submission was accepted by the ICE Office on October 11, 2004, and assigned the number WCI-2004-32544.  (DPFOF ¶ 996.)  In accordance with Wis. Admin. Code § DOC 310.11(3), the investigation of a complaint filed under Wis. Admin. Code § DOC 310.08(3) is limited to review of the record. (DPFOF ¶ 997.)  In addition, the ICRS may be used to challenge only the procedure used in the disciplinary process after completion of the appeal process.  (DPFOF ¶ 998.)

Complaints submitted and received prior to the completion of the appeal process are not within the scope of the ICRS.  (DPFOF ¶ 999.)  Arbitrary issues, matters involving acts of discretion on the part of the adjustment committee, and elements outside of

the official hearing record cannot be addressed. (DPFOF ¶ 1000.) There is no procedural requirement governing time limits to deliver the results of the completed appeal to the inmate. (DPFOF ¶ 1001.) Elkins' sole procedurally based allegation of error was that the warden exceeded the sixty-day time limit for rendering a decision on the appeal of Adult Conduct Report #1621584-712 and "back-dated" the decision indicated on the appeal form. (DPFOF ¶ 1002.) Review of the record concerning the matter of the conduct report showed that the warden rendered a decision on the appeal within the time limits. (DPFOF ¶ 1003.) Muenchow recommended that Offender Complaint WCI-2004-32544 be dismissed. (DPFOF ¶ 1004.) The reviewing authority, Thurmer, accepted Muenchow's recommendation and dismissed Offender Complaint WCI-2004-32544 on October 27, 2004. (DPFOF ¶ 1005.)

Elkins appealed the reviewing authority's dismissal of Offender Complaint WCI-2004-32544 to the CCE on November 8, 2004. (DPFOF ¶ 1006.) In agreement with and based on the report of the ICE, Ray recommended that Offender Complaint WCI-2004-32544 be dismissed November 8, 2004. (DPFOF ¶ 1007.) The Deputy Secretary of the DOC accepted Ray's recommendation and dismissed Offender Complaint WCI-2004-32544 on November 12, 2004. (DPFOF ¶ 1008.)

### 46. ISSUE 71

Elkins submitted an offender complaint form, dated October 22, 2004, complaining that he wrote the warden asking him to approve excess legal work per DOC 309 IMP 1. (DPFOF ¶ 1009.) Elkins claimed that his requests were ignored and, that on October 18, 2004, he was forced to destroy some of his legal work, thus denying him access to the courts. *Id.* This submission was accepted by the ICE Office on October 22, 2004, and assigned the number WCI-2004-33556. (DPFOF ¶ 1010.) The issue of contraband legal material had been raised and addressed through the ICRS, specifically, as the subject matter

of Offender Complaint WCI-2004-19345. (DPFOF ¶ 1011.) Therefore, Muenchow rejected Offender Complaint WCI-2004-33556 as previously addressed. (DPFOF ¶ 1012.)

Elkins submitted a Request for Review of Rejected Complaint dated November 23, 2004. (DPFOF ¶ 1013.) The reviewing authority, Thurmer, noted that Offender Complaint WCI-2004-33556 was rejected by the ICE in accordance with Wis. Admin. Code § DOC 310.11(5) on December 1, 2004. (DPFOF ¶ 1014.)

### 47. ISSUE 72

Elkins submitted an offender complaint form, dated October 24, 2004, citing alleged circumstances surrounding the issuance of Adult Conduct Report #1517432. (DPFOF ¶ 1015.) This submission was accepted by the ICE Office on October 25, 2004, and assigned the number WCI-2004-33797. (DPFOF ¶ 1016.) Adult Conduct Report #1517432 had been issued, and Elkins was complaining of matters involved with the alleged incident. (DPFOF ¶ 1017.) Elkins was challenging the factual basis of the conduct report and described mitigating factors to explain his actions and behavior. (DPFOF ¶ 1018.) Those matters are considered during summary disposition or by a hearing officer/committee acting as an independent fact-finding body. (DPFOF ¶ 1019.) Once a conduct report is issued, the disciplinary process is initiated, and complaints of this nature are outside the scope of the ICRS under Wis. Admin. Code § DOC 310.08(2)(a). (DPFOF ¶ 1020.) Accordingly, Muenchow rejected Offender Complaint WCI-2004-33797. (DPFOF ¶ 1021.)

Elkins submitted a Request for Review of Rejected Complaint dated October 28, 2004. (DPFOF ¶ 1022.) The reviewing authority, Thurmer, noted that Offender Complaint WCI-2004-33797 was rejected by the ICE in accordance with Wis. Admin. Code § DOC 310.11(5) on November 7, 2004. (DPFOF ¶ 1023.)

## 48. ISSUE 73

Elkins submitted an offender complaint form, dated October 16, 2004, complaining that he was in constant pain and that Dental continued to place him on the waiting list, denying him dental care. (DPFOF ¶ 1024.) On October 27, 2004, Kroll sent correspondence to Elkins indicating that his complaint materials were received on October 25, 2004, were being returned to him because of failure to meet the filing requirements as stated in Wis. Admin. Code § DOC 310, and that before his complaint would be accepted, he should attempt to resolve the issue with Schrubbe. (DPFOF ¶ 1025.) Elkins responded to Kroll by stating "Read the complaint, I already tried ten (10) times & Schrubbe is ignoring me! Your job is to file the complaint 303.11(1)&(2)." (DPFOF ¶ 1026.)

This submission was received by the ICE Office on October 29, 2004, accepted on November 4, 2004, and assigned the number WCI-2004-34958. (DPFOF ¶ 1027.) Elkins charged that he had needed dental work since 2001 and that he had been ignored despite putting in "dozens of medical slips." (DPFOF ¶ 1028.) Elkins later reported that he had "written no less than 10 requests for medical/dental care." (DPFOF ¶ 1029.) Alsum O'Donovan contacted the Dental Unit at the WCI. (DPFOF ¶ 1030.) The last correspondence on record for Elkins was received in 2002. *Id.* Because Elkins provided no evidence of recent attempts to contact the Dental Unit, his charges could not be substantiated as a timely issue. (DPFOF ¶ 1031.) Pursuant to Wis. Admin. Code § DOC 310.11(5)(d), it was determined that Elkins submitted the complaint beyond fourteen calendar days from the date of the occurrence giving rise to the complaint and provided no good cause for the ICE to extend the time lines. (DPFOF ¶ 1032.) Hence, Alsum O'Donovan rejected Offender Complaint WCI-2004-34958. (DPFOF ¶ 1033.)

Elkins submitted a Request for Review of Rejected Complaint dated December 1, 2004. (DPFOF ¶ 1034.) The reviewing authority, Thurmer, found that Offender Complaint WCI-2004-34958 was rejected by the ICE in accordance with Wis. Admin. Code § DOC 310.11(5) on December 6, 2004. (DPFOF ¶ 1035.)

### 49.    ISSUE 74

Elkins submitted an offender complaint form, dated October 22, 2004, stating that Schrubbe is a liar. (DPFOF ¶ 1036.) On October 22, 2004, Kroll, ICE Program Assistant, sent correspondence to Elkins indicating that his complaint materials were received on October 22, 2004, and were being returned to him because of failure to meet the filing requirements as stated in Wis. Admin. Code § DOC 310, and that complaints should contain only one clearly identified issue. (DPFOF ¶ 1037.) Kroll further requested that Elkins provide an exact issue and the date of its occurrence. (DPFOF ¶ 1038.) Elkins responded to Kroll stating, "Read the complaint it clearly shows the entire procedural history of B. Schrubbe (you've covered for her way too long.). If you're unable to read, ask for help! . . . This is her last lie Look it up! You have the documented history!!" (DPFOF ¶ 1039.)

This submission was accepted by the ICE Office on October 29, 2004, and assigned the number WCI-2004-34959. (DPFOF ¶ 1040.) Muenchow rejected Offender Complaint WCI-2004-34959 pursuant to Wis. Admin. Code § DOC 310.11(5)(a), because Elkins submitted the complaint solely for the purpose of harassing or causing malicious injury to one or more of the department's employees, agents, independent contractors, or any other person. (DPFOF ¶ 1041.)

Elkins submitted a Request for Review of Rejected Complaint dated December 5, 2004. (DPFOF ¶ 1043.) The reviewing authority, Thurmer, noted that Offender Complaint

WCI-2004-34959 was rejected by the ICE in accordance with Wis. Admin. Code § DOC 310.11(5) on December 7, 2004.  (DPFOF ¶ 1044.)

50.    **ISSUE 75**

Elkins submitted an offender complaint form, dated November 1, 2004, offering that staff was using inmate radios for personal benefit and that he wanted his radio returned to him.  (DPFOF ¶ 1045.)  This submission was accepted by the ICE Office on November 1, 2004, and assigned the number WCI-2004-34676.  (DPFOF ¶ 1046.)  The issue of Elkins' contraband radio was addressed in complaint WCI-2004-19345.  (DPFOF ¶ 1047.)  As a consequence, Muenchow rejected Offender Complaint WCI-2004-34676 pursuant to Wis. Admin. Code § DOC 310.11(a).  (DPFOF ¶ 1049.)

Elkins submitted a Request for Review of Rejected Complaint dated December 2, 2004.  (DPFOF ¶ 1050.)  The reviewing authority, Thurmer, found that Offender Complaint WCI-2004-34959 was rejected by the ICE in accordance with Wis. Admin. Code § DOC 310.11(5) on December 6, 2004.  (DPFOF ¶ 1051.)

51.    **ISSUE 76**

Elkins submitted an offender complaint form, dated November 1, 2004, complaining that he was being denied a haircut.  (DPFOF ¶ 1052.)  This submission was accepted by the ICE Office on November 1, 2004, and assigned the number WCI-2004-34677. (DPFOF ¶ 1053.) Muenchow rejected Offender Complaint WCI-2204-34677 pursuant to Wis. Admin. Code § DOC 310.11(5)(a) as a charge that Elkins submitted solely for the purpose of harassing or causing malicious injury to one or more of the department's employees, agents, independent contractors or any other person.  (DPFOF ¶ 1054.)

Elkins submitted a Request for Review of Rejected Complaint dated December 2, 2004.  (DPFOF ¶ 1056.)  The reviewing authority, Thurmer, determined that Offender

Complaint WCI-2004-34677 was rejected by the ICE in accordance with Wis. Admin. Code § DOC 310.11(5) on December 6, 2004.  (DPFOF ¶ 1057.)

### 52.    ISSUES 77 & 78

Elkins submitted an offender complaint form, dated October 24, 2004, complaining that Sergeant McCarthy refused to allow him to send out property through the visiting room.  (DPFOF ¶ 1058.)  Elkins claimed that Sergeant McCarthy stated that the ICE Department would not allow him to send out his property this way.  *Id.*  This submission was accepted by the ICE Office on November 4, 2004, and assigned the number WCI-2004-34960.  (DPFOF ¶ 1059.)  The issue of contraband legal material had been raised and addressed through the ICRS, specifically, Offender Complaint WCI-2004-19345.  (DPFOF ¶ 1060.)  Therefore, Muenchow rejected Offender Complaint WCI-2004-34960 as being previously addressed.  (DPFOF ¶ 1061.)

Elkins submitted a Request for Review of Rejected Complaint dated November 24, 2004.  (DPFOF ¶ 1062.)  The reviewing authority, Thurmer, noted that Offender Complaint WCI-2004-34960 was rejected by the ICE in accordance with Wis. Admin. Code § DOC 310.11(5) on December 1, 2004.  (DPFOF ¶ 1063.)

### 53.    ISSUE 80

Elkins submitted an offender complaint form, dated October 14, 2004, complaining that he was not receiving his weekly free envelope and paper.  (DPFOF ¶ 1064.)  This submission was accepted by the ICE Office on October 18, 2004, and assigned the number WCI-2004-33153.  (DPFOF ¶ 1065.)  The issue of Elkins' complaint had been addressed through his prior use of the ICRS, specifically, complaint WCI-2004-31882.  (DPFOF ¶ 1066.)  Accordingly, Muenchow rejected Offender Complaint WCI-2004-33153.  (DPFOF ¶ 1067.)

Elkins submitted a Request for Review of Rejected Complaint dated November 21, 2004. (DPFOF ¶ 1068.) The reviewing authority, Thurmer, concluded that Offender Complaint WCI-2004-33153 was appropriately rejected by the ICE in accordance with Wis. Admin. Code § DOC 310.11(5) on November 29, 2004. (DPFOF ¶ 1069.)

Elkins submitted an offender complaint form, dated October 14, 2004, asserting that he was not receiving his weekly free envelopes. (DPFOF ¶ 1070.) This submission was accepted by the ICE Office on November 15, 2004, and assigned the number WCI-2004-35930. (DPFOF ¶ 1071.) The date Elkins signed the complaint was noted, as it was one month prior to when the complaint was received. (DPFOF ¶ 1072.) It was further noted that Elkins no longer resided in the NCH. (DPFOF ¶ 1073.) Above all else, the issue that existed in the NCH at the time the complaint was authored had been addressed previously through the ICRS as the subject of Offender Complaint WCI-2004-31882. (DPFOF ¶ 1074.) Hence, Muenchow rejected Offender Complaint WCI-2004-35930. (DPFOF ¶ 1075.)

Elkins submitted a Request for Review of Rejected Complaint dated December 10, 2004. (DPFOF ¶ 1076.) The reviewing authority, Thurmer, observed that Offender Complaint WCI-2004-35930 was rejected by the ICE in accordance with Wis. Admin. Code § DOC 310.11(5) on December 20, 2004. (DPFOF ¶ 1077.)

54.    **ISSUE 82**

Elkins submitted an offender complaint form, dated December 12, 2004, alleging that Correctional Officer Cerny was withholding and/or destroying his legal mail. (DPFOF ¶ 1078.) This submission was accepted by the ICE Office on December 13, 2004, and assigned the number WCI-2004-39212. (DPFOF ¶ 1079.) Muenchow noted that Elkins' allegations were regarding staff actions. (DPFOF ¶ 1080.) Elkins was advised that this complaint would be thoroughly investigated in accordance with the Wis. Admin. Code § DOC

310.  (DPFOF ¶ 1081.)  Because the investigation process was regulated by state law and collective bargaining agreements which protect the privacy and due process rights of staff, Elkins would receive no further information regarding this matter.  (DPFOF ¶ 1082.) Muenchow recommended that Offender Complaint WCI-2004-39212 be dismissed with the modification that the investigation be conducted pursuant to Wis. Admin. Code § DOC 310 and Administrative Directive 11.6.  (DPFOF ¶ 1083.)  The reviewing authority, Thurmer, accepted Muenchow's recommendation and dismissed with modification Offender Complaint WCI-2004-39212 on January 11, 2005.  (DPFOF ¶ 1084.)

Elkins appealed the reviewing authority's dismissal of Offender Complaint WCI-2004-39212 to the CCE on January 14, 2005.  (DPFOF ¶ 1085.)  Inasmuch as the allegations raised concerned possible work rule violations, the complaint was referred for investigation consistent with Administrative Directive 11.6.  (DPFOF ¶ 1086.)  That was done to protect the contractual and personnel privacy rights of staff.  (DPFOF ¶ 1087.)  For that reason, Elkins would not be provided additional information on any action that may be taken.  *Id.*  Ray discussed this matter with the deputy warden at WCI.  (DPFOF ¶ 1088.)  Also, Ray recommended that Offender Complaint WCI-2004-39212 be dismissed on January 21, 2005. (DPFOF ¶ 1089.)  The Deputy Secretary of the DOC accepted Ray's recommendation and dismissed Offender Complaint WCI-2004-39212 on January 21, 2005.  (DPFOF ¶ 1092.)

**55.    ISSUE 83**

Elkins submitted an offender complaint form, dated December 1, 2004, complaining that he was being denied access to the courts because he was not receiving his legal copies and work from the library in a timely fashion.  (DPFOF ¶ 1093.)  On December 2, 2004, Kroll, ICE Program Assistant, sent correspondence to Elkins indicating that his complaint materials were received on December 2, 2004, and were being returned to him

because of his failure to meet the filing requirements as stated in Wis. Admin. Code § DOC 310, and that before his complaint would be accepted, he needed to attempt to resolve this issue by contacting Mark Melcher, Education Director (DOC 310.09(4)). (DPFOF ¶ 1094.) Kroll further instructed Elkins to inform Mr. Melcher that he was instructed to contact him by the Inmate Complaint Department. (DPFOF ¶ 1095.) Elkins responded to Kroll stating, "I've written Melcher on numerous occasions, and he has chosen to turn a blind-eye to Webster's numerous misconduct issues (for which Webster is now a co-defendant in federal lawsuit 04-C-85)." (DPFOF ¶ 1096.)

This submission was accepted by the ICE Office on December 6, 2004, and assigned the number WCI-2004-38221. (DPFOF ¶ 1097.) Librarian Webster was contacted and stated that the blank copies were made in error and that he corrected the copying. (DPFOF ¶ 1098.) Other delays were due to Elkins' improperly submitted materials. (DPFOF ¶ 1099.) Elkins had resubmitted the eligible materials which were copied. (DPFOF ¶ 1100.) Thus, it was determined that the issue was moot and Muenchow rejected Offender Complaint WCI-2004-38221 pursuant to Wis. Admin. Code § DOC 310.11(5)(f). (DPFOF ¶ 1102.)

Elkins submitted a Request for Review of Rejected Complaint dated December 21, 2004. (DPFOF ¶ 1103.) The reviewing authority, Thurmer, found that Offender Complaint WCI-2004-38221 was rejected by the ICE in accordance with Wis. Admin. Code § DOC 310.11(5) on December 27, 2004. (DPFOF ¶ 1104.)

## 56.  ISSUE 85

Elkins submitted an offender complaint form, dated November 28, 2004, complaining that the Business Office should honor his request for copies of the checks going out to the court for filing fees. (DPFOF ¶ 1105.) Elkins claimed that he was being denied the requested copies. *Id.* This submission was accepted by the ICE Office on December 13,

2004, and assigned the number WCI-2004-39227. (DPFOF ¶ 1006.) The Wis. Admin. Code § DOC 310.08(2)(f) prohibits complaints regarding the denial of an open record request. (DPFOF ¶ 1107.) Therefore, Muenchow rejected Offender Complaint WCI-2004-39212. (DPFOF ¶ 1109.)

Elkins submitted a Request for Review of Rejected Complaint dated January 11, 2005. (DPFOF ¶ 1110.) The reviewing authority, Thurmer, concluded that Offender Complaint WCI-2004-39227 was rejected by the ICE in accordance with Wis. Admin. Code § DOC 310.11(5) on January 13, 2005. (DPFOF ¶ 1111.)

## 57.  ISSUE 86

Elkins submitted an offender complaint form, dated December 31, 2004, asserting that his legal mail was being wrongfully denied by the Business Office Staff. (DPFOF ¶ 1112.) Muenchow further requested that Elkins forward any information, including correspondence, regarding this incident to the Inmate Complaint Department. (DPFOF ¶ 1113.) This submission was accepted by the ICE Office on January 3, 2005, and assigned the number WCI-2005-406. (DPFOF ¶ 1114.) As indicated by the Disbursement Request, Elkins submitted a request for indigent legal loan funds under the Wis. Admin. Code § DOC 309.51. (DPFOF ¶ 1115.) The Disbursement Request indicated Elkins wanted these funds to correspond with three DOC employees. (DPFOF ¶ 1118.)

The Wis. Admin. Code § DOC 309.51 states that these funds may be requested to correspond with attorneys, parties in litigation, the ICRS, or the parole board. (DPFOF ¶ 1119.) Elkins did not provide Business Manager Wallintin with information that would justify the grant of an exemption to exceed his yearly legal loan limit to secure postage for the three letters to staff members as indicated on the Disbursement Request. (DPFOF ¶ 1123.)

Muenchow recommended that Offender Complaint WCI-2005-406 be dismissed. (DPFOF ¶ 1131.) The reviewing authority, Thurmer, accepted Muenchow's recommendation and dismissed Offender Complaint WCI-2005-406 on January 31, 2005. (DPFOF ¶ 1132.)

Elkins appealed the reviewing authority's dismissal of Offender Complaint WCI-2005-406 to the CCE on February 4, 2005. (DPFOF ¶ 1133.) In agreement with and based on the report of the ICE, Ray recommended that Offender Complaint WCI-2005-405 be dismissed February 4, 2005. (DPFOF ¶ 1134.) The Deputy Secretary of the DOC accepted Ray's recommendation and dismissed Offender Complaint WCI-2005-406 on February 7, 2005. (DPFOF ¶ 1135.)

58.    ISSUE 88

Elkins submitted an offender complaint form, dated December 30, 2004, alleging that he sent a sweatshirt, a watch and three pairs of boxers to the visiting room on December 16, 2004 for pick-up after the first of the year. (DPFOF ¶ 1136.) On January 4, 2005, Kroll, ICE Program Assistant, sent correspondence to Elkins indicating that his complaint materials were received on January 3, 2005, and were being returned to him for failure to meet the filing requirements as stated in Wis. Admin. Code § DOC 310, and that before this complaint would be accepted, he should attempt to resolve this issue by contacting Lieutenant Wierenga. (DPFOF ¶ 1137.) Kroll further advised Elkins to inform Lieutenant Wierenga that he was instructed to contact him by the Inmate Complaint Department. (DPFOF ¶ 1138.) Elkins responded to Kroll stating "I've written Wierenga & it's been a week w/ no reply, please file this complaint." (DPFOF ¶ 1139.) This submission was accepted by the ICE Office on January 10, 2005, and assigned the number WCI-2005-1515. (DPFOF ¶ 1140.)

Elkins received items from JL Marcus on December 14, 2004, including one gray sweatshirt. (DPFOF ¶ 1141.) The corresponding Property Receipts showed that Elkins wished to exchange one sweatshirt for one sweatshirt and stated "hold per ICI." (DPFOF ¶ 1142.) On another Property Disposition, Elkins wrote "hold sweatshirt for ICI" and "sweatshirt on visit if lost ICI." (DPFOF ¶ 1143.)

The gray sweatshirt was held in the Property Department as indicated by Elkins on the Contraband Notices and the remainder of the property was placed out on a visit, as also indicated by Elkins on the Contraband Notices. (DPFOF ¶ 1146.) Elkins stated in the complaint that he wanted the sweatshirt included in the items placed out for a visit. (DPFOF ¶ 1147.)

The complaint referenced by Elkins was resolved through the ICRS in November 2003 and resulted in compensation to Elkins for a missing sweatshirt. (DPFOF ¶ 1151.) Elkins was documented as having two sweatshirts in when his property was counted on June 7, 2004. Muenchow recommended that Offender Complaint WCI-2005-1515 be dismissed because there was no staff error found, the sweatshirt had been held since December 14, 2004, and because Elkins had three sweatshirts logged on his property inventory, thereby making the third sweatshirt contraband. (DPFOF ¶¶ 1165-1166.) A copy of Elkins' complaint would be sent to Sergeant McCarthy for informational purposes and with the recommendation that an inventory be conducted on Elkins' property to determine rightful ownership of personal property items. (DPFOF ¶ 1170.) The reviewing authority, Thurmer, accepted Muenchow's recommendation and dismissed with modification Offender Complaint WCI-2005-1515 on February 11, 2005. (DPFOF ¶ 1171.)

Elkins appealed the reviewing authority's dismissal of Offender Complaint WCI-2005-1515 to the CCE on February 4, 2005. (DPFOF ¶ 1172.) In agreement with and based

on the report of the ICE, Ray recommended that Offender Complaint WCI-2005-1515 be dismissed February 7, 2005. (DPFOF ¶ 1173.) The Deputy Secretary of the DOC accepted Ray's recommendation and dismissed Offender Complaint WCI-2005-1515 on February 7, 2005. (DPFOF ¶ 1174.)

### 59.    ISSUE 89

Elkins submitted an offender complaint form, dated January 9, 2005, complaining that the new Wis. Admin. Code § DOC 309.51 pertaining to legal loans violated his constitutional right of outgoing mail. (DPFOF ¶ 1175.) This submission was accepted by the ICE Office on January 10, 2005, and assigned the number WCI-2005-1518. (DPFOF ¶ 1176.) The issue stated in the complaint did not exist, voiding Elkins' claim of any merit. (DPFOF ¶ 1178.) Muenchow rejected Offender Complaint WCI-2005-1518 on the ground that it did not raise a viable issue. (DPFOF ¶¶ 1178-1179.)

Elkins submitted a Request for Review of Rejected Complaint dated January 30, 2005. (DPFOF ¶ 1180.) The reviewing authority, Thurmer, noted that Offender Complaint WCI-2005-1518 was appropriately rejected by the ICE in accordance with Wis. Admin. Code § DOC 310.11(5) on February 1, 2005. (DPFOF ¶ 1181.)

### D.    ANALYSIS

The state defendants contend that: 1) Elkins' September 10, 2004, amended complaint fails to state a claim; 2) Elkins failed to exhaust his available administrative remedies prior to bringing this action on several issues and those issues should be dismissed from this action; 3) this action should be dismissed under the "total exhaustion" rule; 4) they were not deliberately indifferent to any serious medical need; 5) they did not fail to protect Elkins from harm; 6) Elkins was not denied access to courts; and 7) they have not denied Elkins any constitutionally protected property interest.

Elkins has not responded to the defendants' motion for summary judgment.

## 1. Failure to State a Claim

The defendants first contend that Elkins fails to state a claim because his amended complaint is simply a listing of names of people he would like to sue. The defendants' argument is based on the premise that the amended complaint consists of two pages containing mainly a list of defendants. However, the September 10, 2004, amended complaint includes the document titled "Amended Complaint" as well as the attached "Amended Memorandum of Law."[4] *See* Fed. R. Civ. P. 10(c). Therefore, the defendants' argument is misplaced and must be denied.

## 2. Exhaustion of Administrative Remedies

Next, the defendants contend that Elkins has failed to exhaust his administrative remedies on the claims found in the following proposed findings of fact: 223; 238; 249; 265-67; 287-89; 309-311; 323-25; 338-340; 348-351; 361-62; 371-73; 384-88; 423-27; 446-48;

---

[4]       The court stated as follows when it granted Elkins' motion to file an amended complaint:

> The proposed amended complaint asserts Elkins' Eighth Amendment failure to protect and deliberate indifference claims. These claims are alleged with greater specificity and name the following additional defendants: Gary McCaughtry, Sgt. Knapp, Sgt. Smith, Sgt. Huelsman, Lt. Clugth, Lt. Wriengas, Capt. Muranski, G. Waltz, and Nurse Jane Doe. Elkins' proposed amended complaint also realleges his retaliation claim, and he adds allegations concerning retaliation that has occurred since he filed this lawsuit. The retaliation claim names the following additional defendants: D. Bushweiler, P. Knick, Aldrich, W. Borner, J. McDonald, Capt. O'Donovan, N. Webster, Capt. Tetzlaff, Sgt. McCarthy, C/O II Weigel, C/O II Rohke, C/O II Spurgeon, C/O Debouton, S. Wallintin, W. Schultz, S. Tonn, J. Muenchow, J. Ray, Gary McCaughtry, John Doe Deputy Sheriff, T. Nehl, D. Polinski, and J. Fuerstenberg. Elkins also alleges denial of access to the courts and due process claims.

(Order of October 17, 2004, at 2.)

The court notes that on December 30, 2004, it inadvertently and erroneously stated that Elkins was not proceeding on a due process claim, in support of its decision denying Elkins' motion to file a supplemental pleading naming two additional defendants who violated his due process rights by failing to file inmate grievances. However, this error did not and does not prejudice Elkins because the due process claim, along with the proposed additional parties, are addressed in the state defendants' proposed findings of fact.

462-66; 477-481; 494-498; 509-513; 530-34; 545-550; 557-559; 566-570; 597-600; 621-24; 636-39; 732-36; 743-46; 755-59; 769-71; 776-79; 784-87; 798-802; 822-28; 835-37; 885-88; 893-900; 909-13; 952-56; 957-61; 965-67; 975-77; 985-86; 990-94; 1,011-14; 1,021-23; 1,034-35; 1,036-44; 1,045-1,051; 1,052-57; 1,058-63; 1,064-77; 1,093-1,104; 1,105-11; and 1,175-81.

The Prison Litigation Reform Act of 1995 (PLRA), Pub.L. 104-134, 110 Stat. 1321 (1996), provides in pertinent part that:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is a condition precedent to suit. *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002) (citing *Perez v. Wis. Dep't of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999)). Section 1997e applies to "all inmate suits, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

A review of the record reveals that Elkins failed to exhaust his available administrative remedies with respect to the following issues:

1. Second Part of Issue C, WCI-2003-38472, DPFOF 150-53, appeal to CCE rejected because untimely;

2. Second Part of Issue F, WCI-2003-35870, DPFOF 238, appeal to CCE rejected because untimely;

3. Issue 14, WCI-2004-7686, DPFOF 287-89, appeal to CCE rejected because untimely;

4. Issue 15, WCI-2004-8179, DPFOF 309-11, appeal to CCE rejected because untimely;

5.   Second Part of Issue 16, WCI-2004-12069, DPFOF 338-40, appeal to CCE rejected because untimely;

6.   Fourth Part of Issue 16, WCI-2004-21088, DPFOF 361-62, appeal to CCE rejected because untimely;

7.   Issue 20, WCI-2004-12089, DPFOF 374-88, appeal to CCE rejected because untimely;

8.   Issue 25, WCI-2004-13793, DPFOF 446-48, appeal to CCE rejected because untimely;

9.   Issue 26, WCI-2004-13798, DPFOF 462-66, appeal to CCE rejected because untimely;

10.  Issue 27, WCI-2004-14611, DPFOF 477-81, appeal to CCE rejected because untimely;

11.  First Part of Issue 28, WCI-2004-14898, DPFOF 494-98, appeal to CCE rejected because untimely;

12.  Issue 29, WCI-2004-15680, DPFOF 530-34, appeal to CCE rejected because untimely;

13.  Issue 32, WCI-2004-17603, DPFOF 557-59, § DOC 310.08(2)(a), inmate grievance not resolved through disciplinary process;

14.  Issue 35, WCI-2004-18636, DPFOF 597-600, appeal to CCE rejected because untimely;

15.  Issue 39, WCI-2004-20427, DPFOF 732-36, appeal to CCE rejected because untimely;

16.  Issue 40, WCI-2004-21088, DPFOF 743-46, appeal to CCE rejected because untimely;

17.  Issue 41, WCI-2004-21102, DPFOF 755-59, appeal to CCE rejected because untimely;

18.  Issue 44, WCI-2004-22922, DPFOF 776-79, § DOC 310.08(3), appeal process not completed on conduct report;

19.  Issue 45, WCI-2004-23574, WCI-2004-23574, § DOC 310.08(3), appeal process not completed on conduct report;

20. Issue 46, WCI-2004-23620, DPFOF 798-802, appeal to CCE rejected because untimely;

21. Issue 48, WCI-2004-24852, DPFOF 822-28, appeal to CCE rejected because untimely;

22. Issue 49, WCI-2004-25259. DPFOF 835-37, § DOC 310.03(3), appeal process not completed on conduct report.

23. Issue 54, WCI-2004-26863, DPFOF 893-900, inmate grievance rejected because untimely filed;

24. Second Part of Issue 58, WCI-2004-10298, DPFOF 958-61, inmate grievance withdrawn;

25. Issue 65, WCI-2004-30980, DPFOF 985-86, insufficient facts for redress;

26. Issue 73, WCI-2004-34958, DPFOF 1034-35, inmate grievance rejected because untimely filed; and

27. Issue 74, WCI-2004-34959, DPFOF 1036-44, inmate grievance filed for improper purpose.

Accordingly, those issues or portions thereof will be dismissed for failure to exhaust administrative remedies.

However, the court cannot conclude that Elkins failed to exhaust administrative remedies with respect to all of the issues set forth by the defendants. Several of these inmate grievances were rejected because they were outside the scope of the ICRS. In other words, the ICRS was not an available administrative remedy for a particular grievance. An inmate must exhaust only those administrative remedies that are available to him. 42 U.S.C. § 1997e(a); *Johnson v. Litscher*, 260 F.3d 826, 829 (7th Cir. 2001). Other inmate grievances that the defendants contend Elkins failed to exhaust were rejected as moot because the issue had already been resolved in his favor in that he received the requested relief. If a grievance is rejected as moot because the issue has been resolved and there is no relief that can be

provided through the grievance system, then there is no "available" administrative remedy to exhaust. *Thornton v. Snyder*, 428 F.3d 690, 695-97 (7th Cir. 2005). Finally, the defendants argue that Elkins is proceeding on claims respecting events that occurred after he commenced this action and, therefore, did not exhaust his administrative remedies before filing this suit. The Seventh Circuit's recent decision in *Barnes v. Briley*, 420 F.3d 673, 678 (7th Cir. 2005), requires this court to reject this argument because Elkins was authorized to amend his complaint and to pursue claims that had no remedies because they were rejected as moot or as the subject of earlier decisions that Elkins pursued fully. *Barnes* held that such prisoner claims are not improperly exhausted § 1983 claims. Therefore, the following issues/claims, which the defendants argue Elkins failed to exhaust, will not be dismissed for failure to exhaust administrative remedies:

1. First Part of Issue F, WCI-2003-31289, DPFOF ¶ 223, grievance rejected by decision of the PRC is not within the scope of the ICRS;

2. Issue G, WCI-2004-2171, DPFOF ¶ 249, inmate grievance rejected as moot because already addressed;

3. Issue 12, WCI-2004-5248, DPFOF ¶¶ 265-67, inmate grievance rejected because issues previously addressed in the ICRS;

4. First Part of Issue 16, WCI-2004-9386, DPFOF ¶ 323-25, CCE appeal dismissed;

5. Second Part of Issue 16, WCI-2004-16811, DPFOF ¶¶ 348-51, inmate grievance rejected because fell outside the scope of the ICRS;

6. Issue 17, WCI-2004-9920, DPFOF ¶¶ 371-73, inmate grievance rejected as moot;

7. Issue 23, WCI-2004-12924, DPFOF ¶¶ 423-27, inmate grievance rejected because not a "significant issue";

8.  Second Part of Issue 28, WCI-2004-12114, DPFOF ¶¶ 509-13, inmate grievance rejected as moot;

9.  Issue 30, WCI-2004-15971, DPFOF ¶¶ 545-50, inmate grievance rejected because not a "significant issue";

10. Issue 33, WCI-2004-17645, DPFOF ¶¶ 566-70, inmate grievance rejected because PRC decisions not appealable through ICRS;

11. Second Part of Issue 21, WCI-2004-22765, DPFOF ¶¶ 621-24, inmate grievance rejected because outside the scope of the ICRS;

12. Issue 43, WCI-2004-22879, DPFOF ¶¶ 769-71, inmate grievance rejected as moot;

13. Issue 53, WCI-2004-26547, DPFOF ¶¶ 885-88, inmate grievance rejected as contrary to Wis. Admin. Code § DOC 310.11(5)(g);

14. Issue 55, WCI-2004-26866, DPFOF ¶¶ 909-13, inmate grievance rejected because matters already addressed;

15. Issue 58, WCI-2004-28166, DPFOF ¶¶ 952-56, inmate grievance rejected as outside the scope of the ICRS;

16. Issue 60. WCI-2004-29773, DPFOF ¶¶ 965-67, inmate grievance rejected as previously addressed through the ICRS;

17. Issue 66, WCI-2004-31882, DPFOF ¶¶ 990-94, inmate grievance rejected as moot;

18. Issue 71, WCI-2004-33556, DPFOF ¶¶ 1011-14, inmate grievance rejected as previously addressed;

19. Issue 72, WCI-2004-33797, DPFOF ¶¶ 1021-23, inmate grievance rejected as outside the scope of the ICRS;

20. Issue 75, WCI-2004-34676, DPFOF ¶¶ 1045-51, inmate grievance rejected because previously addressed in ICRS;

21. Issue 76, WCI-2004-34677, DPFOF ¶¶ 1052-57, inmate grievance rejected pursuant to Wis. Admin. Code § DOC 310.11(5)(a);

22. Issue 77 and 78, WCI-2004-34960, DPFOF ¶¶ 1058-63, inmate grievance rejected because previously addressed in ICRS;

23. First Part of Issue 80, WCI-2004-33153, DPFOF ¶¶ 1064-67, inmate grievance rejected as previously addressed in ICRS;

24. Issue 83, WCI-2004-38221, DPFOF ¶¶ 1093-1104, inmate grievance rejected as moot;

25. Issue 85, WCI-2004-39227, DPFOF ¶¶ 1105-11, inmate grievance rejected because an open records request; and

26. Issue 89, WCI-2005-1518, DPFOF ¶¶ 1175-1181, inmate grievance rejected because issue void, did not exist.

**3.  Total Exhaustion**

The defendants further contend that the total exhaustion doctrine mandates dismissal of this entire action, citing *Graves v. Norris*, 218 F.3d 884 (8th Cir. 2000).  In *Graves*, the court held that when an inmate fails to exhaust some of his claims, 42 U.S.C. § 1997e(a) requires dismissal of the entire action, including any exhausted claims.

However, this court has rejected the total exhaustion requirement.  *See Gidarisingh v. McCaughtry*, 2005 WL 2428155, at *12 (E.D. Wis. 2005); *see also Ortiz v. McBride*, 380 F.3d 649 (2d Cir. 2004) (total exhaustion is not necessary); *Henderson v. Sebastian*, 2004 WL 1946398 (W.D. Wis. 2004) (same); *Blackmon v. Crawford*, 305 F. Supp. 2d 1174, 1178 (D. Nev. 2004); *Alexander v. Davis*, 282 F. Supp. 2d 609, 612 (W.D. Mich. 2003).  Moreover, the Seventh Circuit Court of Appeals has impliedly rejected the total exhaustion requirement in several cases.  *See, e.g., Lewis v. Washington*, 300 F.3d 829 (7th Cir. 2002) (affirming dismissal of one claim for failure to exhaust and remanding for exhaustion determination about another); *Dixon v. Page*, 291 F.3d 485 (7th Cir. 2002) (affirming partial dismissal for failure to exhaust).

-102-

Based on the foregoing, this court will not apply the total exhaustion doctrine. Consequently, Elkins will be allowed to proceed on those claims which he has exhausted his administrative remedies and the court will address the merits of those claims.

**4.** **Eighth Amendment Deliberate Indifference to a Serious Medical Need Claim**

This claim involves Issues A, B, 12, 22, 24, and 47. The defendants submit that Elkins' first medical related claim (Issue A), that he was denied pain medication for a twenty-five-day period, must fail because it does not qualify as a serious medical need and because the defendants were not deliberately indifferent to him. The defendants also contend that Elkins' second claim (Issue B), based on his placement in a cell with a smoker for approximately one month, cannot stand because they were not deliberately indifferent to him.

To establish liability under the Eighth Amendment, a prisoner must show: (1) that his medical need was objectively serious; and (2) that the official acted with deliberate indifference to the prisoner's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001); *see also Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Zentmyer v. Kendall County, Ill.*, 220 F.3d 805, 810 (7th Cir. 2000).

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)). Factors that indicate a serious medical need include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Gutierrez*, 111 F.3d at 1373 (citations omitted). A medical condition

need not be life-threatening to qualify as serious and to support a § 1983 claim, providing the denial of medical care could result in further significant injury or unnecessary infliction of pain. *See Reed v. McBride*, 178 F.3d 849, 852-52 (7th Cir. 1999); *Gutierrez*, 111 F.3d at 1371.

A prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Prison officials act with deliberate indifference when they act "intentionally or in a criminally reckless manner." *Tesch v. County of Green Lake*, 157 F.3d 465, 474 (7th Cir. 1998). Neither negligence nor even gross negligence is a sufficient basis for liability. *See Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir. 1991). A finding of deliberate indifference requires evidence "that the official was aware of the risk and consciously disregarded it nonetheless." *Chapman*, 241 F.3d at 845 (citing *Farmer*, 511 U.S. at 840-43).

In determining whether an official's conduct rises to the deliberate indifference standard, a court may not look at the alleged acts of denial in isolation; it "must examine the totality of an inmate's medical care." *Gutierrez*, 111 F.3d at 1375. In *Gutierrez*, isolated incidents of delay, during ten months of prompt, extensive treatment did not amount to deliberate indifference. *Id.* Similarly, in *Dunigan v. Winnebago County*, 165 F.3d 587, 591 (7th Cir. 1999), "factual highlights" of neglect over a month and a half of otherwise unobjectionable treatment were insufficient to avoid summary judgment. "[A]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996).

It is undisputed that Elkins' complaint that he was being denied pain medication was resolved promptly. Although his prescription for Propoxy was not renewed in a timely fashion, once HSM Schrubbe became aware of the situation, she took appropriate action to

correct the error in Elkins' prescription.  (Muenchow Aff. ¶ 16, Ex. 1001; DPFOF ¶¶ 38-45.)
In addition, Elkins was celled briefly with a smoker, he complained about it, and shortly
thereafter he was transferred to a cell with a nonsmoker.  (Tonn Aff. ¶ 14, Ex. 1002; DPFOF
¶¶ 49-89.)  The undisputed facts reveal that the defendants were not deliberately indifferent
to Elkins' medical needs with respect to Issues A and B.

Similarly, the undisputed facts as set forth in Issues 12, 22, 24, and 47 fall short
of establishing a constitutional violation.  In Issue 12, Elkins complained that Dr. Larson did
not adequately address his health concerns.   However, disagreement with medical
professionals about treatment needs does not state a cognizable Eighth Amendment claim
under the deliberate indifference standard of *Estelle v. Gamble*, 429 U.S. 97 (1976).
*Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).  Issue 22 does not identify a serious
medical need or allege that any defendant acted with deliberate indifference.  In Issue 24,
Elkins merely expressed his disagreement with Dr. Larson's decision to terminate his pain
medications.  Finally, in Issue 47, Elkins complains that he was not receiving medical care,
such as prescription refills, in a timely manner.  The uncontroverted evidence establishes:

> Elkins received Nasacort and Azmacort on July 23, 2004.
> On July 22, 2004, Elkins received Tseuodoethedrine [sic] and
> chlortheniramine [sic].  Schrubbe reviewed the chain of events.
> She surmised that the initial review and response of the medical
> chart by HSU staff was in error.  It appeared the issues had been
> rectified since that point, considering the numerous medications
> that were received by Elkins since he spoke with staff on July 22,
> 2004, and the fact that he had cited no adverse effects resulting
> from the events outlined.  However, considering the apparent
> error, Muenchow recommended that Offender Complaint WCI-
> 2004-24824 be affirmed with modification that a copy of the
> complaint be sent to Schrubbe for follow-up with staff on record
> review practice.

(DPFOF ¶¶ 805-809.)  These actions display, if anything, negligence on the part of prison
officials.  However, they do not rise to the level of deliberate indifference inasmuch as Elkins'

medical needs were all attended to and he did not suffer at the hands of the defendants. Based on the foregoing, the defendants' motion for summary judgment with respect to Elkins' Eighth Amendment medical care claim will be granted.

### 5. Eighth Amendment Failure to Protect Claim

This claim involves the first part of Issue F, as well as Issues G and 11. The defendants contend that this claim must be dismissed because there is no allegation that Elkins was ever injured by another inmate. The defendants cite to *Babcock v. White*, 102 F.3d 267, 272 (7th Cir. 1996), in support of their argument.

The Eighth Amendment's Cruel and Unusual Punishment Clause imposes upon prison officials the duty to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). This duty requires prison officials "to protect prisoners from violence at the hands of other prisoners." *Id.* at 81 (internal quotations omitted). To state a failure to protect claim, a plaintiff-inmate must allege that (1) "he is incarcerated under conditions posing a substantial risk of serious harm," and (2) defendant officials acted with "deliberate indifference" to that risk. *Id.* at 834.

To satisfy the first prong of a failure to protect claim, the objective prong, a plaintiff must allege "not only that he or she experienced, or was exposed to, a serious harm, but also that there was a substantial risk beforehand that that serious harm might actually occur." *Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005). A beating suffered at the hands of a fellow inmate "clearly constitutes serious harm." *Id.* The substantial risk standard is "very high"; however, "it is not insurmountable." *Id.* In speaking of the "relative dearth of case law" regarding the point at which a risk of inmate assault becomes sufficiently substantial for purposes of a failure to protect claim, the Seventh Circuit recently stated:

In *Billman v. Indiana Department of Corrections* . . . we suggested that a 'substantial risk' could exist where prison officials place a detainee in a cell in which 'they know that there is a cobra there or at least that there is a high probability of a cobra there.' *Billman*, 56 F.3d at 788. Expanding upon this hypothetical, we found that, similarly, the assignment of a detainee without warning to a cell with an HIV positive inmate with a known 'propensity' of raping his cell mates would also constitute a substantial risk. *Id.* In other cases, we have noted that 'it is possible to state a claim on the basis of a guard's knowledge that a particular inmate poses a heightened risk of assault to the plaintiff.' *Weiss*, 230 F.3d at 1032.

When our cases speak of 'substantial risk' that makes a failure to take steps against it actionable under the Eighth or Fourteenth Amendment, they also have in mind risks attributable to detainees with known 'propensities' of violence toward a particular individual or class of individuals; to 'highly probable' attacks; and to particular detainees who pose a 'heightened risk of assault to the plaintiff.' Drawn from the particular pronouncements upon which the *Delgado* court formulated its general standard, these, too, are 'risks so great that they are almost certain to materialize if nothing is done,' and thus are themselves sufficient to establish a 'substantial risk.'

*Id.* at 911.

To meet the second prong of a failure to protect claim, the subjective prong, a plaintiff must establish his custodian's deliberate indifference to that substantial risk of serious harm. *Id.* at 913. "[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which an inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quoting *Farmer*, 511 U.S. at 838). Typically, such a claim asserts that a defendant-custodian failed to take protective action after a plaintiff-prisoner complained of a feared threat posed by rival gang members or a specific person. *Brown*, 398 F.3d at 914. However, deliberate indifference in failure to protect claims can also be "predicated upon knowledge of a victim's

particular vulnerability (though the identity of the ultimate assailant is not known in advance of attack), or, in the alternative, an assailant's predatory nature (though the identity of the ultimate victim is not known in advance of the attack)." *Id.* at 915.

In the first part of Issue F, Elkins filed an inmate grievance on September 9, 2003, requesting a transfer from Waupun Correctional Institution to Dodge Correctional Institution because he felt threatened by an inmate at the former institution. Issue G states that on January 12, 2004, Elkins complained that the security director was not answering correspondence. In Issue 11, Elkins filed an inmate grievance on January 26, 2004, complaining that he requested to be placed in voluntary confinement but his requests were ignored.

"[I]t is the reasonably preventable assault itself, rather than any fear of assault, that gives rise to a compensable claim under the Eighth Amendment." *Babcock v. White*, 102 F.3d 267, 272 (7th Cir. 1996). An allegation that prison officials exposed a prisoner to a "risk of violence at the hands of other inmates" does not implicate the Eighth Amendment Cruel and Unusual Punishments Clause. *Id.* at 273. Elkins has not established, or even alleged, that he was actually injured.[5] Accordingly, the defendants' motion for summary judgment based on failure to prevent harm to Elkins will be granted.

### 6. Denial of Access to the Court Claim

This claim involves Issues 16, 17, 28, 37, 57, 58, 60, 64, 66, 67, 71, 75, 77 and 78, 80, 82, 83, 85, 86, and 89. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). This right "requires

---

[5]In Issue 35, Elkins filed an inmate grievance regarding a request to be transferred to another cell because of his cell mate's alleged unstable condition and also that he was attacked by his cell mate on June 2, 2004. However, Issue 35 was dismissed for failure to exhaust administrative remedies.

prison authorities to assist inmates in preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828.

To establish a denial of his constitutional right an inmate must show that the prison had deficient legal facilities and that he was hindered in his efforts to pursue a particular legal claim. *See Lewis v. Casey*, 518 U.S. 343, 351 (1996); *see also Alston v. DeBruyn*, 13 F.3d 1036, 1040-41 (7th Cir. 1994) (holding that inmate must establish (1) the failure of prison officials to assist in the preparation and filing of meaningful legal papers and (2) some quantum of detriment caused by the challenged conduct). Even if the inmate can establish an "absolute deprivation of access to all legal materials," his claim will fail absent identification of some injury linked to the deprivation. *Lewis*, 518 U.S. at 353 n.4. Moreover, the injury requirement is not satisfied by all types of frustrated legal claims.

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmate need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Id.* at 355.

However, to establish injury an inmate need not show that if he had been provided with adequate legal facilities he would have prevailed in a lawsuit. *Walters v. Edgar*, 163 F.3d 430, 434 (7th Cir. 1998); *see also Hoard v. Reddy*, 175 F.3d 531, 533 (7th Cir. 1999). Rather, he need only show that he was prevented "from litigating a nonfrivolous case." *Walters*, 163 F.3d at 434.

-109-

Elkins' submissions do not demonstrate that he was prevented from litigating a nonfrivolous claim attacking his sentence or challenging the conditions of his confinement. Moreover, a proper showing of prejudice is essential to establishing an access to the courts claim. *See Ortloff v. United States*, 335 F.3d 652, 656 (7th Cir. 2003) (to state a right of access to the courts claim, a prisoner must make specific allegations as to the prejudice suffered because of the defendants' alleged conduct). Therefore, the defendants' motion for summary judgment will be granted as to Elkins' claim that he was denied access to the courts.

### 7. Property Interest

The aforementioned claim involves the first and third parts of Issue C and Issue D. The defendants assert that they have not deprived Elkins of any constitutionally protected property interest and that Elkins fails to state a claim.

Procedural due process claims require a two-step analysis. First, the court determines whether the plaintiff was deprived of a constitutionally-protected interest in life, liberty, or property. *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982)). If so, the next step is to consider what process was due. *Id.*

Property interests "are not created by the Constitution." *Ledford*, 105 F.3d at 357 (quoting *Shango v. Jurich*, 681 F.2d 1091, 1097 (7th Cir. 1982)). "Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. . . ." *Id.* "In order to give rise to a constitutionally-protected property interest, a statute or ordinance must go beyond mere procedural guarantees to provide some substantive criteria limiting the State's discretion. . . ." *Ledford*, 105 F.3d at 357 (quoting *Cain v. Larson*, 879 F.2d 1424, 1426 (7th Cir. 1989)). Prison regulations, even if they contain mandatory language, do not automatically engender property

interests commanding procedural due process. *Colon v. Schneider*, 899 F.2d 660, 669 (7th Cir. 1990). A state-created procedural right or policy is not itself a property interest within the confines of the Fourteenth Amendment. *See Shango*, 681 F.2d at 1101.

The Wisconsin Administrative Code provides in relevant part:

**DOC 309.20 Personal property.** (1) Policy. The department shall permit inmates to have personal property in their possession in an institution subject to this section and the policies and procedures established under this section by the administrator or by the warden, relating to the acquisition, possession, use and disposal of inmate property.

(2) Inventory. Each institution shall monitor and control authorized property in an inmate's possession. A written inventory shall be maintained of all authorized personal property in an inmate's possession. An inmate is responsible for notifying the institution property department immediately if a discrepancy exists between the inventory and the property in the inmate's possession.

. . .

(7) Contraband. The institution shall consider items not permitted at an institution or permitted but not on an inmate's property list under sub. (2) contraband and subject the items to seizure and disposition under s. DOC 303.10. The institution may subject an inmate to discipline for possessing contraband under ss. DOC 303.43 through 303.48.

Wis. Admin. Code § DOC 309.20. The Code further provides:

**DOC 303.10 Seizure and disposition of contraband.** (1) Definition. 'Contraband' means any of the following:

(a) Any item which inmates may not possess under this chapter or is not authorized by the institution.

(b) Any item which is not state property and is on the institution grounds but not in the possession of any person.

(c) Any allowable item which comes into an inmate's possession through unauthorized channels or which is not on the inmate's property list and is required to be.

-111-

(d) Stolen property.

(e) Property that is damaged or altered.

(f) Anything used as evidence for a disciplinary hearing deemed contraband by the adjustment committee or hearing officer.

(2) Seizure. Any staff member who believes that an item is contraband may seize the item. The institution shall return property which is not contraband to the owner or dispose of the property in accordance with division Internal Management Procedures.

(3) Disposition. The hearing officer, adjustment committee, or security director shall dispose of items in accordance with institution policies and procedures. If the inmate files a grievance regarding the seizure or disposition of the property, the institution shall retain property until the warden makes a final decision on the grievance.

(4) Inmate Reporting. Inmates shall immediately report to staff any property item that becomes damaged.

Wis. Admin. Code § DOC 303.10.

In the first part of Issue C, Elkins filed an inmate grievance dated September 3, 2003, complaining that various property items were missing or deemed contraband following his transfer from Racine Correctional Institution. It is undisputed that his television was found to have an electrical short and, therefore, was properly deemed contraband. Further, it is uncontroverted that Elkins received a new television on September 23, 2003. With regard to Elkins' law book claim, an incident report was written at Green Bay Correctional Institution after another inmate took the book and perhaps scratched out Elkins' name. However, Elkins could not prove ownership of the book. Moreover, Green Bay Correctional Institution was contacted but was unable to find any evidence of an incident report or any evidence that Elkins possessed the law book. Also, Elkins apparently maintains that he owned more than three T-shirts. When trying to substantiate this claim, it was determined that he left his former

-112-

correctional institution with three T-shirts and came in with three. No further investigation was done with regard to the T-shirts. Finally, Elkins did provide documentation that he was missing a sweatshirt. Therefore, defendant Tonn recommended reimbursement of $8.00 after applying the DOC Depreciation Schedule to the documented sweatshirt. Based on this information, defendant Tonn recommended that Offender Complaint WCI-2003-30333 be dismissed with modification. The only matter that could be considered with regard to that offender complaint was Elkins' desire to be reimbursed for one sweatshirt. Also, Elkins is required to notify the Property Department with a request that it not dispose of his unattended personal property.[6]

In Claim D, Elkins filed an inmate grievance complaining that Waupun Correctional Institution returned an order for headphones and "boxers" to J.L. Marcus for no reason and that he wanted his order. The undisputed facts establish that originally, the package from J.L. Marcus was delivered inappropriately because Elkins' name was misspelled. However, "[i]t was learned that J.L. Marcus issued credit fo the mistake they made. In addition, Sergeant McCarthy advised that the items that were included in the prior order were received as of today's date." (DPFOF ¶¶ 181-82.)

Because the Constitution does not create property interests, Elkins must identify a state statute or regulation that creates the entitlement. *Castaneda v. Henman*, 914 F.2d 981, 983 (7th Cir. 1990). Elkins does not identify, and the court has not found, a statute or regulation that entitles him to relief. Hence, the defendants' motion for summary judgment as to this claim will be granted.

---

[6]The second part of Issue C deals with the destruction of Elkins' contraband property before he could send it out of the institution. However, this inmate grievance, WCI-2003-38472, was dismissed for failure to exhaust administrative remedies.

### 8.    Retaliation

This claim involves Issues C, 13, 37, 43, 51, 52, 53, 55, 56, 60, 64, 67, 71, 72, 75, 76, 77, and 78.  The defendants did not address this claim in their summary judgment brief.

Prisoners have a Fourteenth Amendment due process right to adequate, effective, and meaningful access to the court to challenge violations of their constitutional rights.  *Bounds v. Smith*, 430 U.S. 817, 821-22 (1977).  Prison officials cannot hinder prisoners from this access or retaliate against prisoners who attempt to exercise their constitutional rights.  *Williams v. Lane*, 851 F.2d 867, 878 (7th Cir. 1988).  Prison officials may not retaliate against an inmate for exercising his First Amendment rights, even if their actions would otherwise be permissible.  *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000).  Retaliation against a prisoner for his use of the court or of the administrative complaint system may give rise to a valid cause of action under § 1983.  *See Black v. Lane*, 22 F.3d 1395, 1401 (7th Cir. 1994).

To establish retaliation at the summary judgment stage, the plaintiff must demonstrate:  1) a chronology of events from which retaliation could be inferred; and 2) that retaliation was a motivating factor behind the defendants' conduct.  *Babcock v. White*, 102 F.3d 267, 276 (7th Cir. 1996).  Retaliatory motive may be inferred from the chronology of events.  *Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988); *Murphy v. Lane*, 833 F.2d 106, 108-09 (7th Cir. 1987).  However, at the summary judgment stage, the plaintiff must submit evidence that his grievances were "a substantial or motivating factor" in the prison official's conduct.  *Brookins v. Kolb*, 990 F.2d 308, 315 (7th Cir. 1993); *Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987).

The retaliation inquiry should be undertaken "in light of the 'general tenor' of *Sandin*, which 'specifically expressed its disapproval of excessive judicial involvement in day-to-day prison management.'" *Babcock*, 102 F.3d at 275 (quoting *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). Thus, courts should "afford appropriate deference and flexibility" to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory. *Babcock*, 102 F.3d at 275.

The inmate grievances that Elkins filed contain allegations that he is the victim of unconstitutional retaliation. However, even though the defendants did not specifically address this claim, a review of the undisputed facts reveal that Elkins has not carried his burden of demonstrating that retaliation was a motivating factor behind the defendants' conduct. Accordingly, this claim must be dismissed.

**9.    Other Due Process Issues**

This claim involves Issues E, 23, 30, 33, 36, 43, 51, 52, 55, 56, 72, 82, 83, 85, and 86. The defendants do not address this claim in their summary judgment brief.

To establish a procedural due process violation, a prisoner must demonstrate that the state deprived him of a liberty or property interest created either by state law or the Due Process Clause itself. *See Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). "[T]oday, a prisoner's liberty interest, and incumbent entitlement to procedural due process protections, generally extends only to freedom from deprivations that 'impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Lekas v. Briley*, 405 F.3d 602, 608 (7th Cir. 2005) (quoting *Sandin*, 515 U.S. at 483-84). "In the absence of such 'atypical and significant' deprivations, the procedural protections of the Due Process Clause will not be triggered." *Lekas*, 405 F.3d at 608. Discipline in segregated confinement does not present the type of atypical, significant deprivation in which a State might conceivably create

Case 2:04-cv-00085-CNC    Filed 06/15/06    Page 115 of 117    Document 181

a liberty interest. *Sandin*, 515 U.S. at 485; *see also Thomas v. Ramos*, 130 F.3d 754, 760-62 (7th Cir. 1997) (prison inmate's 70-day confinement in disciplinary segregation was not "atypical and significant" deprivation of prisoner's liberty and thus did not implicate liberty interest protectable under due process clause; prisoner has no liberty interest in remaining in the general prison population).

In Issue E, Elkins offered that the Inmate Complaints Department was not accepting/acknowledging his complaint. In Issue 23, he maintained that his issues were not responded to in a timely fashion. Issue 30 alleges that McCaughtry denied Elkins legal copies/postage on the basis that someone at the DOJ advised the warden to discontinue this practice. Elkins contested his PRC review in Issue 33. In the second part of Issue 36, Elkins alleged procedural errors in a conduct report. In Issue 43, he complained that he felt there were inconsistencies with the policies and procedures regarding his TLU placement. Issues 51 and 52 complain of procedural errors in conduct reports. In Issue 55, Elkins charged that staff members were not responding to his request for information or his requests to return his papers to him. Issue 56 contended that four correctional officers destroyed his legal work. Elkins complained of the circumstances surrounding the issuance of a conduct report in Issue 72. In Issue 82, he asserted that a correctional officer was withholding and/or destroying is legal mail. In Issue 83, Elkins stated that he was not receiving legal copies and work from the library in a timely fashion. Issue 85 complained that the Business Office should honor his request for copies of the checks going out to the court for filing fees. In Issue 86, Elkins complained that his legal mail was wrongfully denied by Business Office staff.

The issues that Elkins identified as due process violations do not implicate a liberty interest. "[A] plaintiff cannot under Section 1983 complain of procedural due process violations unless the state has first deprived him or her of such a constitutionally protected

-116-

interest." *Lekas v. Briley*, 405 F.3d at 607 (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). Therefore, this claim will be dismissed.

Now, therefore,

**IT IS ORDERED** that the county defendants' motion for summary judgment (Doc. #141) is **GRANTED**.

**IT IS FURTHER ORDERED** that the state defendants' motion for summary judgment (Doc. #144) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment dismissing Elkins' claims and this action.

Dated at Milwaukee, Wisconsin, this 15th day of June, 2006.

BY THE COURT

s/ C. N. CLEVERT, JR.
C. N. CLEVERT, JR.
U. S. District Judge